**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURA CICCARELLO, Individually and On Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>     v.<br><br>ALIBABA GROUP HOLDING LIMITED, DANIEL ZHANG, and MAGGIE WU,<br><br>                 Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Laura Ciccarello ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Alibaba Group Holding Limited ("Alibaba" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Alibaba; and (c) review of other publicly available information concerning Alibaba.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Alibaba securities between October 21, 2020 and November 3, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Alibaba is an online and mobile commerce company. Alibaba owns a 33% equity interest in Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Group"), a financial technology company that is best known for operates Alipay, one of the largest mobile and online payments platforms.

3.      On July 20, 2020, Ant Group announced that it had begun the process of a concurrent initial public offering ("IPO") on the Shanghai and Hong Kong stock exchanges. On October 26, 2020, Ant Group priced its IPO and was set to raise $34.5 billion, making it the largest public offering in history.

4.      On November 2, 2020, *Financial Times* reported that Chinese regulators had met with Ant Group's controller Jack Ma, executive chairman Eric Jing, Chief Executive Officer

Simon Hu. The article stated that, though regulators did not provide details, "the Chinese word used to describe the interview – *yuetan* – generally indicates a dressing down by authorities." The article also included a statement from Ant Group that it will "implement the meeting opinions in depth."

5.      On November 3, 2020, the IPO was suspended because Ant Group "may not meet listing qualifications or disclosure requirements due to material matters" related to the meeting with regulators the previous day and "the recent changes in the Fintech regulatory environment."

6.      On this news, the Company's share price fell $25.27, or 8%, to close at $285.57 per share on November 3, 2020, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Ant Group did not meet listing qualifications or disclosure requirements for certain material matters; (2) that certain impending changes in the Fintech regulatory environment would impact Ant Group's business; (3) that, as a result of the foregoing, Ant Group's IPO was reasonably likely to be suspended; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.      Plaintiff Laura Ciccarello, as set forth in the accompanying certification, incorporated by reference herein, purchased Alibaba securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.      Defendant Alibaba is incorporated under the laws of Cayman Islands with its principal executive offices located in Hong Kong. Alibaba's American Depositary Shares ("ADSs" or "shares") trades on the New York Stock Exchange ("NYSE") under the symbol "BABA."

15.     Defendant Daniel Zhang ("Zhang") was the Company's Chief Executive Officer ("CEO") at all relevant times.

16.     Defendant Maggie Wu ("Wu") was the Company's Chief Financial Officer ("CFO") at all relevant times.

17.     Defendants Zhang and Wu (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Alibaba is an online and mobile commerce company. Alibaba owns a 33% equity interest in Ant Group, a financial technology company that is best known for operates Alipay, one of the largest mobile and online payments platforms.

19.     On July 20, 2020, Ant Group announced that it had begun the process of a concurrent IPO on the Shanghai and Hong Kong stock exchanges.

**Materially False and Misleading**
**Statements Issued During the Class Period**

20.     The Class Period begins on October 21, 2020. On that day, Alibaba filed a Form

6-K with the SEC. Attached as Exhibit 99.1 was a statement entitled "Ant Group has announced

its arrangements for initial public offering and listing," stating in relevant part:

> Ant Group Co., Ltd. ("Ant Group"), an unconsolidated related party of Alibaba
> Group Holding Limited ("Alibaba"), today published an announcement on the
> Shanghai Stock Exchange regarding the arrangements for its initial public
> offering and listing on the Shanghai Stock Exchange STAR board (the "A Share
> Offering") and certain information regarding its concurrent initial public offering
> and listing on The Stock Exchange of Hong Kong Limited (the "H Share
> Offering" and together with the A Share Offering, the "Offering").
>
> Alibaba currently holds ordinary shares of Ant Group and Class C shares of Ant
> International Co., Limited ("Ant International"), a subsidiary of Ant Group, that
> together represent 33% of the equity interest in Ant Group, assuming the
> completion of the redemption and subscription arrangement described below.
>
> The A Share Offering and H Share Offering will initially comprise 1,670,706,000
> A shares and 1,670,706,000 H shares, respectively. Pursuant to a redemption and
> subscription arrangement, Ant International will redeem all Class B and Class C
> shares of Ant International and Ant Group will issue 3,256,446,324 H shares to
> holders of Class B shares and Class C shares of Ant International (including
> 1,158,572,686 H shares to Alibaba). In addition, for each of the A Share Offering
> and the H Share Offering, Ant Group expects to grant the underwriters an over-
> allotment option to purchase additional shares representing no more than 15.00%
> of the number of shares initially offered.
>
> Alibaba has agreed to subscribe for 730 million A shares as part of the placement
> to strategic investors in the A Share Offering, subject to receipt of required
> regulatory approvals and fulfillment of other customary conditions precedent.
>
> We understand that the final structure, price and timing of the Offering will be
> contingent upon market conditions and other factors, and there can be no
> assurance as to if and when the Offering will be completed.

21.     On October 26, 2020, Alibaba filed a Form 6-K with the SEC. Attached as

Exhibit 99.1 was a statement entitled "Ant Group has announced the launch of its concurrent

initial public offerings in Shanghai and Hong Kong," stating in relevant part:

Ant Group Co., Ltd. ("Ant Group"), an unconsolidated related party of Alibaba Group Holding Limited ("Alibaba"), today announced the launch of its concurrent initial public offerings in Shanghai (the "A Share Offering") and Hong Kong (the "H Share Offering" and together with the A Share Offering, the "Offering"), in each case with a fixed price. The offer prices for the A Share Offering and H Share Offering have been set at RMB68.80 per share and HK$80.00 per share, respectively.

As previously announced on October 21, 2020, Alibaba has agreed to subscribe for 730 million A shares as part of the placement to strategic investors in the A Share Offering (the "Subscription"). Based on the offer price of RMB68.80 per share, the total consideration for the Subscription would be approximately RMB50.2 billion. The Subscription is subject to receipt of required regulatory approvals and fulfillment of other customary conditions precedent. Based on the subscription of 730 million A shares, Alibaba expects to hold approximately 31.8% of the equity interest in Ant Group following the Offering, or 31.2% of the equity interest in Ant Group if the underwriters exercise in full their options to purchase additional shares in both the A Share Offering and H Share Offering.

22.    The above statements identified in ¶¶ 20-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Ant Group did not meet listing qualifications or disclosure requirements for certain material matters; (2) that certain impending changes in the Fintech regulatory environment would impact Ant Group's business; (3) that, as a result of the foregoing, Ant Group's IPO was reasonably likely to be suspended; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

23.    On November 2, 2020, *Financial Times* reported that Chinese regulators had met with Ant Group's its controller Jack Ma, executive chairman Eric Jing, Chief Executive Officer Simon Hu. The article stated that, though regulators did not provide details, "the Chinese word used to describe the interview – *yuetan* – generally indicates a dressing down by authorities."

The article also included a statement from Ant Group that it will "implement the meeting opinions in depth."

24.     On November 3, 2020, Ant Group's IPO was suspended. Ant Group issued a statement, which stated:

> Ant Group Co., Ltd. ("Ant Group"), an unconsolidated related party of Alibaba Group Holding Limited, announced that it was notified by the relevant regulators in the PRC today that its proposed A share listing on the Shanghai Stock Exchange STAR board is suspended as Ant Group *may not meet listing qualifications or disclosure requirements due to material matters* relating to the regulatory interview of its ultimate controller, executive chairman and chief executive officer by the relevant regulators and *the recent changes in the Fintech regulatory environment.* Consequently, Ant Group's concurrent proposed H share listing on the Main Board of The Stock Exchange of Hong Kong Limited is also suspended.

25.     According to the Shanghai Stock Exchange, Ant Group had "reported significant issues such as the changes in financial technology regulatory environment," which "may result in [the] company not meeting the conditions for listing or meeting the information disclosure requirements."

26.     According to an article by *Bloomberg*, "Chinese authorities didn't give much detail about the issues behind the suspension, beyond saying that the much-anticipated debut couldn't go ahead because there had been 'significant change' in the regulatory environment."

27.     On this news, the Company's share price fell $25.27, or 8%, to close at $285.57 per share on November 3, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Alibaba securities between October 21, 2020 and November 3, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Alibaba's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Alibaba shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Alibaba or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Alibaba; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

33.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

34.      The market for Alibaba's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Alibaba's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Alibaba's securities relying upon the integrity of the market price of the Company's securities and market information relating to Alibaba, and have been damaged thereby.

35.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Alibaba's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Alibaba's business, operations, and prospects as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Alibaba's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

37.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.     During the Class Period, Plaintiff and the Class purchased Alibaba's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

39.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Alibaba, their control over, and/or receipt and/or modification of Alibaba's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Alibaba, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

40.     The market for Alibaba's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Alibaba's securities traded at artificially inflated prices during the Class Period.  On October 27, 2020, the Company's share price closed at a Class Period high of $317.14 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Alibaba's securities and market information relating to Alibaba, and have been damaged thereby.

41.     During the Class Period, the artificial inflation of Alibaba's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Alibaba's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Alibaba and its business, operations, and prospects, thus causing the price of the Company's securities to be

artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

42.     At all relevant times, the market for Alibaba's securities was an efficient market for the following reasons, among others:

(a)     Alibaba shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Alibaba filed periodic public reports with the SEC and/or the NYSE;

(c)     Alibaba regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Alibaba was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

43.     As a result of the foregoing, the market for Alibaba's securities promptly digested current information regarding Alibaba from all publicly available sources and reflected such information in Alibaba's share price. Under these circumstances, all purchasers of Alibaba's

securities during the Class Period suffered similar injury through their purchase of Alibaba's securities at artificially inflated prices and a presumption of reliance applies.

44.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

CLASS ACTION COMPLAINT

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Alibaba who knew that the statement was false when made.

## **FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

46.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Alibaba's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

48.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Alibaba's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Alibaba's financial well-being and prospects, as specified herein.

CLASS ACTION COMPLAINT
14

50.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Alibaba's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Alibaba and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

51.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Alibaba's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Alibaba's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Alibaba's securities during the Class Period at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

and the other members of the Class and the marketplace known the truth regarding the problems

that Alibaba was experiencing, which were not disclosed by Defendants, Plaintiff and other

members of the Class would not have purchased or otherwise acquired their Alibaba securities,

or, if they had acquired such securities during the Class Period, they would not have done so at

the artificially inflated prices which they paid.

55.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange

Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if

fully set forth herein.

58.     Individual Defendants acted as controlling persons of Alibaba within the meaning

of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions

and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with

the SEC and disseminated to the investing public, Individual Defendants had the power to

influence and control and did influence and control, directly or indirectly, the decision-making of

the Company, including the content and dissemination of the various statements which Plaintiff

contends are false and misleading. Individual Defendants were provided with or had unlimited

access to copies of the Company's reports, press releases, public filings, and other statements

alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, Alibaba and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 13, 2020

By:   */s/ Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Laura Ciccarello*

# SWORN CERTIFICATION OF PLAINTIFF

# ALIBABA GROUP HOLDING LIMITED SECURITIES LITIGATION

I, Laura Ciccarello, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Alibaba Group Holding Limited securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Alibaba Group Holding Limited securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:


6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


11/10/2020                                              *Laura Ciccarello*
_____                         CA794EEBB1FF463...
_____
Date                                                         Laura Ciccarello

**Laura Ciccarello's Transactions in Alibaba Group Holding Limited (BABA)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 10/30/2020 | Bought | 70 | $301.85 |