UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| LAURA CICCARELLO, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-09568-GBD |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ALIBABA GROUP HOLDING LIMITED, DANIEL ZHANG, and MAGGIE WU, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ROBERT ROMNEK, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-10267-GBD |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ALIBABA GROUP HOLDING LIMITED, DANIEL ZHANG, and MAGGIE WU, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | x | |

[Caption continued on following page.]

THE PENSION FUND'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS

4810-8188-3352.v1

---

ELISSA HESS, AS TRUSTEE FOR THE EH :    Civil Action No. 1:21-cv-00136-GBD
LIVING TRUST, Individually and on Behalf :
of All Others Similarly Situated,         :    CLASS ACTION
                             :
                 Plaintiff,    :
                             :
    vs.                      :
                             :
ALIBABA GROUP HOLDING LIMITED,    :
DANIEL ZHANG and MAGGIE WU,      :
                             :
                 Defendants.    :
                             :

---

4810-8188-3352.v1

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................2

    A.   Mr. Gharsalli's Post-Disclosure Purchases Will Subject the Class to
        Unique Defenses ...........................................................................................2

    B.   The Makadia Group Cannot Trigger the PSLRA's "Most Adequate
        Plaintiff" Presumption .................................................................................6

        1.   The Makadia Group Is A Lawyer-Driven Amalgamation Formed
            Solely to Achieve the Largest Financial Interest Designation....................6

        2.   The Makadia Group's Assignments Will Further Subject It to
            Unique Defenses that May Jeopardize the Entire Class ............................13

    C.   The Pension Fund Is the Presumptive Lead Plaintiff Candidate ............................14

III. CONCLUSION.....................................................................................................15

4810-8188-3352.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Batter v. Hecla Mining Co.*,
  2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ............................................................6

*Baydale v. Am. Express Co.*,
  2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ...........................................................14

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
  2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) .........................................................13

*Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*,
  _ U.S. _, 137 S. Ct. 2042 (2017)................................................................................4

*Chauhan v. Intercept Pharm.*,
  2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ..............................................................12

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) ...........................................................................2, 15

*Elstein v. Net1 UEPS Techs., Inc.*,
  2014 WL 3687277 (S.D.N.Y. July 23, 2014) .............................................................7

*Erickson v. Snap, Inc.*,
  2017 WL 11592635 (N.D. Cal. Sept. 18, 2017) .........................................................5

*Faris v. Longtop Fin. Techs. Ltd.*,
  2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ...............................................................5

*Franchi v. SmileDirectClub, Inc.*,
  No. 3:19-cv-00962, (M.D. Tenn. Jan. 27, 2020) ......................................................15

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)................................................................7, 8, 10

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
  917 F. Supp. 2d 246 (S.D.N.Y. 2013)......................................................................5, 6

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
  927 F. Supp. 2d 88 (S.D.N.Y. 2013),
  *aff'd*, 838 F.3d 214 (2d Cir. 2016)............................................................................6

*Gordon v. Sonar Capital Mgmt. LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015) ..........................................................................6

4810-8188-3352.v1

**Page**

*In re Bally Total Fitness Sec. Litig.*,
  2005 WL 627960 (N.D. Ill. Mar. 15, 2005)................................................................6

*In re Bard Assocs., Inc.*,
  2009 WL 4350780 (10th Cir. Dec. 2, 2009) ............................................................13

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...........................................................................2, 7, 11

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) .....................................................................14

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) .....................................................................11

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. 2005) .......................................................................12, 14

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001) .......................................................................8

*In re Silicon Storage Tech., Inc.*,
  2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ...........................................8

*In re SLM Corp. Sec. Litig.*,
  258 F.R.D. 112 (S.D.N.Y. 2009) .............................................................................13

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
  2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)....................................................10, 11

*Jakobsen v. Aphria, Inc.*,
  2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ................................................ *passim*

*Juliar v. Sunopta Inc.*,
  2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ..........................................................14

*Kaltman v. Petroleo Brasileiro S.A. – Petrobras*,
  No. 1:14-cv-09662-JSR (S.D.N.Y. Feb. 13, 2015) .................................................12

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019) .....................................................................10

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
  2020 WL 3396660 (S.D. Ohio June 19, 2020) ........................................................15

4810-8188-3352.v1

**Page**

*Lundy v. Ideanomics, Inc.*,
   2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ................................................................. *passim*

*Micholle v. Ophthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ........................................................................10

*Nakamura v. BRF S.A.*,
   2018 WL 3217412 (S.D.N.Y. July 2, 2018) ............................................................................7

*Nasin v. Hongli Clean Energy Techs. Corp.*,
   2017 WL 5598214 (D.N.J. Nov. 21, 2017 ........................................................................9, 13

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ..........................................................................................10

*Randall v. Fifth Street Fin. Corp.*,
   2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ............................................................................14

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...........................................................................14

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................................12, 13, 14

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) .............................................................................6, 7, 8

*Xianglin Shi v. Sina Corp.*,
   2005 WL 1561438 (S.D.N.Y. July 1, 2005) ..........................................................................11

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(iii)(I) ...................................................................................................2, 6, 15

28 U.S.C.
   §1746 ........................................................................................................................................9

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................................................2, 14

4810-8188-3352.v1

**Page**

## SECONDARY AUTHORITIES

Ryan McMorrow, Henry Sender, *Beijing summons Jack Ma over $37bn Ant IPO*,
    Financial Times (Nov. 3, 2020) ............................................................................................2, 3

4810-8188-3352.v1

## I.      INTRODUCTION

Four lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) 1199 SEIU Health Care Employees Pension Fund (the "Pension Fund"), a New York-based institutional investor;[1] (2) Salem Gharsalli; (3) Dineshchandra Makadia and Yan Tongbiao (the "Makadia Group"); and (4) Thomas J. Popovich.  ECF Nos. 6, 9, 13, 16.[2]

While two of the remaining movants claim to have suffered a greater loss than the Pension Fund, neither satisfy *all* of the PSLRA's requirements for appointment.  Indeed, as this Court recently recognized, Mr. Gharsalli "may be subject to [] unique defense[s] because he purchased *all* his class period shares after the" first alleged corrective disclosure and "[t]here is no need to subject the class to these potential issues where there is another appropriate movant readily available." *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (Daniels, J.) (emphasis in original).  Similarly, the Makadia Group (an amalgamation of unrelated investors with no asserted pre-existing relationship) has clearly failed to carry its burden of showing that it was not "'assembled as makeshift by attorneys' to claim the greatest financial interest in the litigation." *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (Daniels, J.).

In contrast, the Pension Fund suffered more than $2 million in losses on its purchases of Alibaba Group Holding Limited ("Alibaba" or the "Company") American Depositary Shares ("ADSs"), is both typical and adequate, and, as an institutional investor, is the quintessential lead

---

[1]    The Pension Fund is a multi-employer Taft-Hartley defined benefit plan that provides benefits to hundreds of thousands of current or former health care workers and their beneficiaries, in New York City and the surrounding areas.  *See* ECF No. 17 at 7.

[2]    On January 26, 2021, Mr. Popovich filed a notice of non-opposition to the competing lead plaintiff motions, recognizing that he "does not possess the largest financial interest in the relief sought by the class."  *See* ECF No. 25 at 2.  All emphasis is added and all citations are omitted herein unless otherwise indicated.

- 1 -

plaintiff candidate.  *See, e.g.*, *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) (Buchwald, J.) ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors.").  Because none of the movants claiming a larger financial interest than the Pension Fund satisfy the PSLRA's other requirements for appointment as lead plaintiff, their motions should be denied.

## II.    ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001).  In this regard, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The only movant before the Court that meets all of these criteria is the Pension Fund.

### A.    Mr. Gharsalli's Post-Disclosure Purchases Will Subject the Class to Unique Defenses

As this Court recently ruled, "[w]hile post-disclosure purchases are not a per se bar to an appointment as lead plaintiff, [Mr. Gharsalli] may be subject to [] unique defense[s] because he purchased ***all*** his class period shares after the [first] partial corrective disclosure[]." *Lundy*, 2020 WL 7389027, at *3 (emphasis in original).

On November 2, 2020 – just days before the much-anticipated Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Group") $34 billion Initial Public Offering ("IPO") – the *Financial Times* reported that the People's Bank of China and three other Chinese regulators had "summoned" Ant Group controller and Alibaba founder Jack Ma, its executive chairman and

4810-8188-3352.v1

Alibaba director Eric Jing, and its Chief Executive Officer Simon Hu for what were described as "regulatory interviews." *Elissa Hess, as Trustee for the EH Living Trust*, ECF No. 1 at ¶¶3, 5, 31; *see also* Ryan McMorrow, Henry Sender, *Beijing summons Jack Ma over $37bn Ant IPO*, Financial Times (Nov. 3, 2020), https://www.ft.com/content/ea298d72-aa5d-4c4b-b74d-e255f579ab98. As the article explained, "China's regulatory crackdown on financial risk in recent years has forced Ant to change its business model several times." The regulator's meeting was a continuation of this precise crackdown, with the *Financial Times* further reporting that the executives received a "dressing down by authorities." *Elissa Hess, as Trustee for the EH Living Trust*, ECF No. 1 at ¶31. In response, Ant Group issued a public statement that it would "'implement the meeting opinions in depth.'" *Id.* at ¶5.

The following day, on November 3, 2020, Alibaba and Ant Group's illicit attempts to circumvent Chinese laws and regulations were further revealed when Ant Group's IPO was scrapped because, as Ant Group admitted, it "may not meet listing qualifications or disclosure requirements due to material matters relating to the regulatory interview of its ultimate controller, executive chairman and chief executive officer by the relevant regulators and the recent changes in the Fintech regulatory environment." *Id.* at ¶33. According to the Shanghai Stock Exchange, Ant Group reported "significant issues such as the changes in financial technology regulatory environment," which "may result in [the] company not meeting the conditions for listing or meeting the information disclosure requirements." *Id.* at ¶34. It thus became evident that Ant Group was in reality a financial company subject to onerous Chinese banking regulations, with *Bloomberg* explaining that "[i]f the Ant IPO gets back on track, analysts are predicting a much lower valuation with multiples closer to banks, as the regulatory risks show it's more 'fin' than 'tech.'" *Id.* at ¶35. As a response to

- 3 -

4810-8188-3352.v1

these revelations, the price of Alibaba's ADSs fell more than 8% – corresponding to billions of dollars in investor losses.  *See id.*

Here, Mr. Gharsalli purchased *100%* of his Alibaba ADSs *after* the first corrective disclosure alleged in the *Elissa Hess, as Trustee for the EH Living Trust* action.[3]  *See* ECF Nos. 8-2, 8-3; *Elissa Hess, as Trustee for the EH Living Trust*, ECF No. 1 at ¶2-¶3.  Indeed, Mr. Gharsalli's opening brief expressly acknowledged the corrective nature of the November 3, 2020 disclosure.  ECF No. 6 at 2-3 ("*On [the November 2 and 3, 2020] news*, the Company's share price fell $25.27, or 8% . . . on unusually heavy trading volume.").  In fact, this announcement was the *only* disclosure alleged in the first complaint Mr. Gharsalli's own counsel filed.  *See* ECF No. 1.  As a result, while Mr. Gharsalli claims large losses in connection with his transactions in Alibaba securities, the timing of his transactions is fatal to his lead plaintiff candidacy as it creates unique defenses that undermine both his adequacy and typicality.

The Court recently addressed this precise issue in *Lundy*.  There, despite movant Gary Sons asserting the largest financial loss, this Court declined to appoint Mr. Sons because he purchased *all* of his shares "*after* the June 25, 2020 partial corrective disclosures but *before* the" final corrective disclosure.  2020 WL 7389027, at *2-*3.  The competing movant argued that defendants would likely assert that such post-disclosure purchases would undermine Sons' ability to rely on the fraud-on-the-market presumption of reliance.  *See id.* at *2.  This Court thus held that "if Defendants are later successful in any opposition to class certification or Sons as the class representative as a result of Sons' unique defense, class members may be subject to statute of repose concerns."  *Id.* at *3 (citing *Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, _ U.S. _, 137 S. Ct. 2042, 2051 (2017)).  There

---

[3]   By contrast, the Pension Fund purchased nearly 88% of its Class Period Alibaba ADSs *before* the first partial disclosure.  *See* ECF No. 18-3.

was, therefore, "no need to subject the class to these potential issues where there is" – as the Pension Fund is here – "another appropriate movant readily available." *Id.*

The magnitude of Mr. Gharsalli's post-partial disclosure purchases will surely subject him to an additional typicality challenge by defendants. For example, in *Erickson v. Snap, Inc.*, 2017 WL 11592635 (N.D. Cal. Sept. 18, 2017), lead plaintiff movant Shinu Gupta asserted the largest financial loss by more than three times the amount claimed by the competing movant. *See id.* at \*3. However, as here, "Gupta significantly increased his purchase of Snap stock by purchasing 150,000 shares—out of his total 250,000 shares" after the first of three alleged disclosures. *See id.* The court recognized that such "post-corrective trading might expose Gupta to unique defenses regarding whether Gupta actually relied on any alleged misrepresentations by Snap" because "Defendants may argue that the ***magnitude*** of Mr. Gupta's 'postdisclosure purchases suggest that [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions'" and thus undermine "'the ability of [Mr. Gupta] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate.'" *Id.* (quoting *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at \*3 (S.D.N.Y. Oct. 4, 2011) (Scheindlin, J.)). And like this Court's ruling in *Lundy*, the *Snap* court further reasoned that "[t]here is no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court." *Id*. at \*4.

Underscoring the wisdom of the *Snap* decision and this Court's *Lundy* decision, in *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246 (S.D.N.Y. 2013), Judge Scheindlin held at the summary judgment stage that there was a material question of fact as to whether GAMCO even relied on the market price of Vivendi's securities where it purchased less than one-third of its total class period shares "after the date of the first partial corrective disclosure," which is far less than the percentage of shares Mr. Gharsalli purchased after the first alleged disclosure here. *Id.* at 261-62. In

doing so, the court recognized that "post-disclosure purchases" – like those here – "are probative of . . . reliance, or the lack thereof." *Id.* at 261. And Judge Scheindlin later found that defendants rebutted the fraud on the market presumption, in part, because GAMCO "doubled or tripled their holdings in Vivendi securities" after the fraud began to be revealed. *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 102 (S.D.N.Y. 2013), *aff'd*, 838 F.3d 214 (2d Cir. 2016).

Importantly, "'[t]he defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to "devote considerable time to rebut [it].'"" *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015) (Rakoff, J.). Here, based on the timing of his investment, "'there is at least a potential that[Mr. Gharsalli] will be subject to unique defenses.'" *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (Carter, Jr., J.); *see also In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("Our concern is that the time and attention [the proposed lead plaintiff] would be required to devote [to its unique defense] . . . would distract it from the claims of the rest of the class."). Consequently, Mr. Gharsalli's motion should be denied because he "may be subject to [] unique defense[s]" given that "he purchased *all* his class period shares after the [first] partial corrective disclosure[]." *Lundy*, 2020 WL 7389027, at *3 (emphasis in original).

**B.      The Makadia Group Cannot Trigger the PSLRA's "Most Adequate Plaintiff" Presumption**

**1.      The Makadia Group Is A Lawyer-Driven Amalgamation Formed Solely to Achieve the Largest Financial Interest Designation**

While the PSLRA allows a "group of persons" to be appointed as lead plaintiff, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), it does so "*under very limited circumstances*" and "*only* 'if such a grouping would best serve the class.'" *Jakobsen,* 2019 WL 1522598, at *2 (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (Marrero, J.)); *see also*

- 6 -

*Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 493 (D. Conn. 2017) ("courts look skeptically at whether the grouping operates to circumvent the purposes of the PSLRA"). Specifically, courts do not permit aggregation of several individuals' financial interests if a proposed lead plaintiff was assembled "'by attorneys' to claim the greatest financial interest in the litigation." *Jakobsen*, 2019 WL 1522598, at *2 (quoting *Varghese*, 589 F. Supp. 2d at 392-93). Accordingly, courts routinely require plaintiffs lacking a pre-litigation relationship to "'present *a more compelling showing* as to their fitness for the position' to abate any 'concern that [the] group has simply been "cobbled together" for the purpose of achieving the lead plaintiff designation.'" *Id.* (quoting *Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014) (Ramos, J.)); *see also Cendant*, 264 F.3d at 267 ("If . . . a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude . . . that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner.").

This Court recently denied the motion of a similarly-constructed artificial amalgamation of unrelated investors midwifed by counsel. In *Jakobsen*, the lead plaintiff movant asserting the largest financial loss was a multi-person group of individual investors providing no sound evidence of a pre-litigation relationship. 2019 WL 1522598, at *2. Instead, the group offered "mere one-line statements" asserting, in a "wholly conclusory" fashion, that some members had a relationship with each other that predated the litigation. *Id.* This Court observed that such "statements 'offer[ed] no specifics as to their history of business collaboration and how it positions them to advance the interests of the class.'" *Id.* at *2 (quoting *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (Castel, J.)). The group's failure to provide sufficient evidence of a pre-litigation relationship, in turn, "*strongly* suggest[ed] that their lawyers arranged the group." *Id.* The

4810-8188-3352.v1

group's joint declaration also failed to meet the "'more compelling showing as to [the group members'] fitness'" as it, *inter alia*, "barely allege[d] any involvement in the litigation thus far," asserted that members "apparently 'reviewed *a* complaint'" despite the existence of four separate complaints at the time, "the 'plans for cooperation' described in the . . . joint declaration [were] vague and conclusory," and "most importantly, the joint declaration [was] silent on whether [the group members] 'formed this group independent of counsel.'" *Id.* at *3-*4 (emphasis in original).

Here, as in *Jakobsen*, the Makadia Group – with members living on opposite sides of the world – is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'" *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001) (Rakoff, J.).

First, the Makadia Group did not provide *any* evidence of a pre-litigation relationship – a failure that "strongly suggests that their lawyers arranged the group." *Jakobsen*, 2019 WL 1522598, at *2. "Absent such evidence, one must assume that they were introduced by the two law firms." *Galmi*, 302 F. Supp. 3d at 495; *see also Varghese*, 589 F. Supp. 2d at 392-94 (rejecting proposed lead plaintiff group that failed to describe "how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members . . . [or] whether its members have ever communicated").[4]

Second, the Makadia Group's "involvement in the litigation thus far appears to be minimal," at best. *Jakobsen*, 2019 WL 1522598, at *3. As in *Jakobsen*, the Makadia Group members put forth hollow representations that they have "discussed this case with our counsel," are "aware of the

---

[4]  Importantly, "[a]ny subsequent relationship that the members of these groups may have developed, after being introduced to each other by their lawyers, is insufficient in the court's view to qualify them as 'most adequate' lead plaintiff." *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *6-*8, *33 (N.D. Cal. May 3, 2005).

4810-8188-3352.v1

current status of this litigation," and "understand . . . the Lead Plaintiff role." *Compare* ECF No. 20-6 at ¶4 *with Jakobsen*, 2019 WL 1522598, at *3. In fact, like in *Jakobsen*, the Makadia Group members claim they "review[ed] the allegations pleaded in *the* complaint" – without clarifying which of the *three* complaints they examined, let alone recognizing the existence of multiple actions. *Compare* ECF No. 20-6 at ¶8 *with Jakobsen*, 2019 WL 1522598, at *3.

Third, the Makadia Group's rote recitations regarding how they intend to cooperate are even more skeletal than the "vague and conclusory" representations made in *Jakobsen*. 2019 WL 1522598, at *3. For example, in *Jakobsen*, the group declared that it "discussed further *on a conference call* the respective responsibilities of counsel and the lead plaintiff, including a protocol for maintaining in regular contact with each other and with counsel." *Id.* And although this Court recognized that representations regarding "joint conference calls" are "insufficient evidence of planned cooperation," here, the Makadia Group members apparently failed to even speak to each other before they purportedly decided to "pool[ their] respective resources and experience." *Id.*; ECF No. 20-6 at ¶8. Indeed, the Makadia Group's joint declaration is conspicuously silent as to why its members failed to speak, even if for a few minutes. *See generally* ECF No. 20-6. Presumably, it was the 16-hour time difference between Shanghai, China and Corona, California, where each of the Makadia Group members purportedly reside, or a language barrier between the two members.[5] This glaring omission, coupled with the Makadia Group's remaining boilerplate assurances like the

---

[5] By all appearances, Yan Tongbiao's Certification was executed outside the United States and is thus legally defective because it lacks the necessary "penalty of perjury under the laws of the United States of America" language required by 28 U.S.C. §1746. *See* ECF No. 20-5. That defect provides a sufficient independent basis to deny the motion. *See Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (denying lead plaintiff application where movants' PSLRA certifications lacked the required language under 28 U.S.C. §1746, rejecting contention that "the missing language in the PSLRA certifications as a technicality that was cured with its amended filing" because "it still stands that such filing was late").

- 9 -

4810-8188-3352.v1

members' purported "ability to engage in joint decision-making" (*id.* at ¶8) are "insufficient proof that a group of unrelated investors will be able to effectively manage the litigation." *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (Wood, J.).[6]

Moreover, the Makadia Group's purported mechanism to oversee the litigation further demonstrates that its sole purpose is to achieve the largest financial interest designation. According to the Makadia Group's joint declaration, once the inevitable disagreement arises, Dineshchandra Makadia and Yan Tongbiao "agree[d] to resolve such disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our class period purchases of Alibaba securities, calculated in terms of U.S. dollars." ECF No. 20-6 at ¶9. In other words, by electing to resolve all disagreements by a majority vote based on "losses incurred," the Makadia Group has effectively relinquished all control to Yan Tongbiao (the group member with the largest individual alleged loss), thus significantly, if not entirely, subverting Dineshchandra Makadia's role while conveniently taking full advantage of his claimed losses.

"Fourth, and ***most importantly***, the joint declaration is silent on whether '[the Makadia Group's members] formed this group independent of counsel.'" *Jakobsen*, 2019 WL 1522598, at *4

---

[6]    *See also Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (Pauley, J.) (denying group's motion because "[v]ague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (Broderick, J.) (denying group's motion where declaration provided only "'conclusory assurances' that call into question whether it can manage this litigation effectively"); *Galmi*, 302 F. Supp. 3d at 494-95 ("Conclusory statements such as 'each group member shares a common purpose or goal in obtaining a recovery in the lawsuit' are not evidence of a group's cohesiveness."); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (Pauley, J.) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation.").

- 10 -

(quoting *Int'l Union of Operating Eng'rs*, 2015 WL 7018024, at *4).  If anything, the Makadia Group's joint declaration implicitly acknowledges that it was cobbled together by attorneys because it was only "*[a]fter* . . . consulting with our counsel" that each member "determined to seek joint appointment as Lead Plaintiff."  ECF No. 20-6 at ¶8; *see Jakobsen*, 2019 WL 1522598, at *4 (joint declaration suggested that the group was created by counsel "when it states that the Wan Group's members consulted their counsel '*before* the Motion was filed on [their] behalf'") (emphasis in original).

In fact, not only is there no evidence to dispel the inference that counsel hand-picked the individuals to create the Makadia Group, there is evidence *supporting* this inference.  In addition to its choice to serve as lead counsel, Pomerantz LLP, the Makadia Group's opening brief identifies a second law firm in its signature block as "Additional Counsel for Dineshchandra Makadia" *alone*, rather than Dineshchandra Makadia and Yan Tongbiao jointly.  ECF No. 15 at 14.  Moreover, Dineshchandra Makadia and Yan Tongbiao's Certifications are in entirely different formats – yet another fact clearly illustrating the Makadia Group's "wholly artificial" nature along with its single purpose of "ensur[ing] that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation."  *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015) (Rakoff, J.).[7]

Ironically, the Makadia Group's own counsel previously argued, successfully, before Judge Rakoff that the identical information missing from the joint declaration here warrants the appointment of a single institutional investor represented by a single law firm:

---

[7]    Notwithstanding its artificial amalgamation, the Makadia Group also attempts to sidestep the general presumption "'that groups with more than five members are too large to work effectively'" by purportedly assigning the interest of two separate individuals and two distinct entities to its two existing members (ECF Nos. 15 at 1; 20-1; 20-2).  *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (quoting *Cendant*, 264 F.3d at 267).

4810-8188-3352.v1

> [W]hile the members of both the [competing] groups submitted joint declarations with their motions, the declarations merely include a handful of makeweight justifications for the aggregation, yet fail to demonstrate **when** the groups were joined together, **how** they intend to conduct discovery, or **how** they will coordinate litigation efforts and strategy.

*Kaltman v. Petroleo Brasileiro S.A. – Petrobras*, No. 1:14-cv-09662-JSR, ECF No. 69 at 5 (S.D.N.Y. Feb. 13, 2015) (Rakoff, J.) (emphasis in original).

And just yesterday, Judge Liman refused to appoint a similarly constructed group of two individual investors asserting more than three times the collective losses than the individual competing movant with the second largest alleged loss because the group members "provide no evidence that they had a pre-litigation relationship and every indication is that they did not." *Chauhan v. Intercept Pharm.*, 2021 WL 235890, at *4 (S.D.N.Y. Jan. 25, 2021). One such indication, as Judge Liman highlighted, was the fact that the group's joint declaration was signed, as here, on "the very date lead plaintiff applications were due." *See id.*; ECF No. 20-6. Judge Liman also declined to credit similar platitudes as those made in the Makadia Group's joint declaration – such as their "shared interest in prosecuting the case in a collaborative and likeminded manner" and intent "to ensure that the Class's claims will be zealously and efficiently litigated" – as "boilerplate language," noting that "'[t]he Court would expect no less from **any** person or persons proposing to be lead counsel.'" *Compare Chauhan*, 2021 WL 235890, at *5 *with* ECF No. 20-6 at ¶5 (emphasis in original).

Simply put, nothing before the Court indicates that the Makadia Group is "anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (Owen, J.).[8]

---

[8]    The Court should also deny any Makadia Group members' request to reformulate their motion and appoint them lead plaintiff separately. *See Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL

- 12 -

### 2.     The Makadia Group's Assignments Will Further Subject It to Unique Defenses that May Jeopardize the Entire Class

While the Makadia Group attempts to inflate its claimed losses through purported assignments from two individuals and two entities, the Makadia Group failed to timely evidence the validity of these assignments under either Chinese or California law.  *See* ECF No. 20-1; 20-2; *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *5 (N.D. Ohio Nov. 28, 2017) (applying German law in assessing the validity of foreign assignment because "German law has the most significant relationship to the assignments and to the parties who executed those assignments").  Such evidence is crucial.  *See generally id.* (holding under applicable foreign law that "a person may assign his or her claim to another via contract" which, in turn, required "that the document contain the signatures of ***all contracting parties***").  Any *post hoc* attempt to cure assignment deficiencies would be futile.  *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (Pauley, J.) (holding investment advisor lacked standing to bring claims assigned to it ***after*** it was appointed lead plaintiff); *In re Bard Assocs., Inc.*, 2009 WL 4350780, at *3 (10th Cir. Dec. 2, 2009) (finding no abuse of district court's discretion in adopting a "bright line rule requiring lead plaintiff movants to establish Article III standing by the time the lead plaintiff motions are due").[9]

It is, therefore, a virtual certainty that defendants will attempt to exploit this issue – the Makidia Group's potential lack of standing – which will become a "needless litigation sideshow" "rais[ing] complex and novel issues of law which would require extensive factual and foreign legal

---

942273, at *4 (D. Ariz. Apr. 7, 2008) ("The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such.").

[9]     Similar to Yan Tongbiao's Certification, the purported assignment by Peaktop Holdings Limited to Yan Tongbiao was also not properly executed as it omits the necessary phrase "under penalty of perjury of the laws of the United States of America" given that Yan Tongbiao is outside the United States.  *Id.*  This fatal defect renders this purported assignment invalid.  *See Nasin*, 2017 WL 5598214, at *3.

- 13 -

analysis." *Baydale v. Am. Express Co.*, 2009 WL 2603140, at \*3 (S.D.N.Y. Aug. 14, 2009) (Pauley, J.). As such, only by denying the Makadia Group's motion can the Court "ensure that the lead plaintiff will not prejudice the class by subjecting the class to the delay, expense, and uncertainty of litigating unique defenses." *Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, 2012 WL 3638629, at \*11, \*13 (D.N.J. Aug. 22, 2012) (adopting Magistrate Judge's report and recommendation declining to appoint as lead plaintiff entities subject to standing challenges based on imperfect assignments "when the Court must decide whether standing is a unique defense that is likely to play a major role in litigation, regardless of the outcome" and the court was "not persuaded . . . that the presence of entities that have standing will cure other entities' standing deficiencies").[10]

### C.       The Pension Fund Is the Presumptive Lead Plaintiff Candidate

The Pension Fund not only suffered a substantial, seven-figure loss, it satisfies the Rule 23 requirements and is not subject to the PSLRA's presumptive bar on repeat litigants. "[O]ther than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against the Pension Fund's appointment. *Tsirekidze*, 2008 WL 942273, at \*5 (appointing pension fund as lead plaintiff despite the fact that it did not suffer the greatest financial interest because it "is the first [movant] to meet [the PSLRA's] standards").

---

[10]   Even if the Makadia Group was not an artificial amalgamation and not subject to unique defenses, the Pension Fund would remain the most adequate plaintiff because "[g]iven the probable margin of error involved in the damage estimates before the Court, [the Pension Fund] and [the Makadia Group] have roughly equal damages [approximately 8% difference]. However, [the Pension Fund] is the more adequate of the two [movants]." *Pfizer*, 233 F.R.D. at 338; *see also Randall v. Fifth Street Fin. Corp.*, 2016 WL 462479, at \*2-\*3 (S.D.N.Y. Feb. 1, 2016) (Kaplan, J.) (holding alleged losses between institutional and individual investor was "approximately equal" despite more than 17% difference given "the Congressional preference for institutional lead plaintiffs in private securities class actions"); *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at \*1-\*2 (S.D.N.Y. Jan. 30, 2009) (Crotty, J.) (describing loss difference of less than 13% as "minimal"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (Owen, J.) (finding losses of $2.3 million and $1.9 million to be "roughly equal").

And as outlined in its opening brief (ECF No. 17 at 6-8), the Pension Fund is precisely the type of movant whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA.  *See, e.g.*, *City of Monroe*, 269 F.R.D. at 294 ("The drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors.").  The 1199 SEIU Health Care Employees Pension Fund – a multi-employer Taft-Hartley defined benefit plan based in New York City that provides benefits to hundreds of thousands of current or former health care workers, and their beneficiaries (ECF No. 17 at 7) – is familiar with the requirements and responsibilities of overseeing complex class action litigation and is the only movant before the Court that has discharged those duties as a lead plaintiff before.  *See, e.g.*, *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660 (S.D. Ohio June 19, 2020) (appointing the Pension Fund as lead plaintiff); *Franchi v. SmileDirectClub, Inc.*, No. 3:19-cv-00962, ECF No. 68 (M.D. Tenn. Jan. 27, 2020) (same).

The Pension Fund is the only movant that meets all statutory requirements that govern the Court's choice of the presumptive lead plaintiff and its motion should thus be granted.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

## III.   CONCLUSION

None of the competing movants satisfy the PSLRA's lead plaintiff requirements.  As such, their motions should all be denied.

DATED:  January 26, 2021                      ROBBINS GELLER RUDMAN
                                                              & DOWD LLP
                                                     SAMUEL H. RUDMAN
                                                     DAVID A. ROSENFELD


                                                            *s/ David A. Rosenfeld*
                                                      DAVID A. ROSENFELD

- 15 -

4810-8188-3352.v1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
BRIAN E. COCHRAN
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
bcochran@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

- 16 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 26, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

4810-8188-3352.v1