**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURA CICCARELLO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALIBABA GROUP HOLDING LIMITED, DANIEL ZHANG, and MAGGIE WU, <br><br> Defendants. | Case No. 1:20-cv-09568-GBD <br><br> **SALEM GHARSALLI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** |
| ROBERT ROMNEK, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALIBABA GROUP HOLDING LIMITED, DANIEL ZHANG, and MAGGIE WU, <br><br> Defendants. | Case No. 1:20-cv-10267-GBD |
| ELISSA HESS, AS TRUSTEE FOR THE EH LIVING TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALIBABA GROUP HOLDING LIMITED, DANIEL ZHANG, and MAGGIE WU, <br><br> Defendants. | Case No. 1:21-cv-00136-GBD |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ALL MOVANTS CONCEDE THAT GHARSALLI IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF .................................................................................... 2

III.  THE PRESUMPTION THAT GHARSALLI IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED .............................................................................. 2

      A.    Gharsalli is Not Subject to Unique Defenses Merely Because He Purchased After the First Partial Disclosure .................................................................. 3

      B.    Gharsalli Is Not Conflicted ................................................................ 8

      C.    Gharsalli Is Amenable to Adding and Additional Plaintiff .................................. 10

IV.   GHARSALLI'S SELECTION OF COUNSEL SHOULD BE APPROVED ................... 10

V.    CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)................................................................................................ 3

*Christian v. BT Grp. PLC*,
2017 WL 3705804 (D.N.J. Aug. 28, 2017) ............................................................ 10

*Constance Sczesny Tr. v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) .......................................................................... 2, 3

*Erickson v. Snap, Inc.*,
2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ...................................................... 6

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................. 2

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
917 F. Supp. 2d 246 (S.D.N.Y. 2013)...................................................................... 6

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)...................................................................... 4

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) ............................................................................. 6

*In re Comverse Tech., Inc. Sec. Litig.*,
2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).......................................................... 8, 9

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................... 9

*In re Sanofi-Aventis Sec. Litig.*,
293 F.R.D. 449 (S.D.N.Y. 2013) ............................................................................ 3

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................ 4

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................ 10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...................................................................... 9

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019).................................................................................. 10

*Lundy v. Ideanomics, Inc.*,
    2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ..................................................................... 6, 7

*Murphy v. JBS S.A.*,
    2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017)............................................................................ 2

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*,
    552 U.S. 148 (2008).................................................................................................................. 3

*Vladimir v. Bioenvision, Inc.*,
    2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ......................................................................... 3

## STATUTES

15 U.S.C. § 78u–4(a)(3)(B) ..................................................................................................... 2, 10

Lead Plaintiff Movant Salem Gharsalli ("Gharsalli") respectfully submits this memorandum of law in further support of his motion for consolidation of related actions, appointment as lead plaintiff, and approval of lead counsel, and in reply to the oppositions filed by competing lead plaintiff movants (Dkt. Nos. 26, 27).

## I.    INTRODUCTION

Only two of the three competing movants filed opposition memoranda to Gharsalli's lead plaintiff motion: Pension Fund[1] (Dkt. No. 27, "Fund Opp."); and the Makadia/Tongbiao Group (Dkt. No. 26, "Group Opp.").[2]  The Makadia/Tongbiao Group concedes that Gharsalli is the most adequate plaintiff, but requests to be considered for appointment as lead plaintiff only if Gharsalli is eliminated from consideration. *See* Group Opp. at 1. As such, only the Pension Fund truly opposes Gharsalli's lead plaintiff motion.

While the Pension Fund concedes – as they must – that Gharsalli has the largest financial interest in the relief sought by the class and is the presumptively most adequate plaintiff, it claims that Gharsalli is subject to unique defenses because he has losses stemming from the second and third corrective disclosures alleged in this action, but not the first corrective disclosure. *See* Fund Opp. at 2-5. This attack is meritless because the full fraud was not revealed by the first partial disclosure, as the Pension Fund's own counsel concedes.  Therefore, the presumption that Gharsalli is most adequate plaintiff has not been rebutted.

Accordingly, Gharsalli should be appointed lead plaintiff, and his selection of counsel should be approved.

---

[1] Capitalized terms have the same definitions as in Gharsalli's Opposition memorandum (Dkt. No. 28).

[2] Popovich filed a notice informing the Court that he does not oppose Gharsalli's lead plaintiff motion. *See* Dkt. No. 25.

## II.    ALL MOVANTS CONCEDE THAT GHARSALLI IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

No movant contests the fact that Gharsalli satisfies all three requirements to be the presumptively most adequate plaintiff. Popovich concedes that he does not have the largest financial interest. *See* Dkt. No. 25. The Makadia/Tongbiao Group concedes that Gharsalli has the largest financial interest, stating: "having alleged a loss of approximately $2.93 million in connection with the Defendants' alleged fraud and having made a *prima facie* showing that he is adequate and typical within the meaning of Rule 23, Gharsalli appears to be the presumptive Lead Plaintiff in this Action." Group Opp. at 3.[3] The Pension Fund also admits that Gharsalli "suffered a greater loss than the Pension Fund." Fund Opp. at 1. Since Gharsalli also filed a timely motion and made the required preliminary showing that he satisfies the requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

## III.   THE PRESUMPTION THAT GHARSALLI IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that Gharsalli is the most adequate plaintiff may be rebutted only upon "proof" that Gharsalli "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation and conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004); *see also Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."). Proof demands "specific support" and "evidence" of the "actual or potential conflict of

---

[3] All loss figures herein are from the figures provided in the respective movants' lead plaintiff filings.

interest or a defense." *Constance*, 223 F.R.D. at 324-25; *Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same).

**A.    Gharsalli is Not Subject to Unique Defenses Merely Because He Purchased After the First Partial Disclosure**

The Pension Fund argues that Gharsalli is subject to unique defenses because he started purchasing his shares after the first (but before the second) of three partial corrective disclosures alleged in this action. *See* Fund Opp. at 2-6. The Pension Fund argues on this basis that Gharsalli may not have relied on the defendants' misrepresentations when he purchased his shares. *Id.* at 5.

First, this argument is a red herring because, as counsel for the Pension Fund has already admitted, "positive proof of reliance is not a prerequisite to recovery." *Elissa Hess, as Trustee for the EH Living Trust v. Alibaba Group Holding Ltd.*, Case No. 1:21-cv-136, Dkt. No. 1 ("*Hess* Complaint"), at ¶47. Specifically, as the Pension Fund's counsel's own complaint acknowledged, "this action involves defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that defendants were obligated to disclose." *Id.* As such, a "Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)." *Id.* Thus, Gharsalli would not even need to demonstrate specific reliance, negating the Pension Fund's argument. *In re Sanofi-Aventis Sec. Litig.,* 293 F.R.D. 449, 456 n.8 (S.D.N.Y. 2013) ("[I]f there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance.") (quoting *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 159 (2008)).

Moreover, as the Pension Fund admits, it purchased a substantial number of shares after the first corrective disclosure. *See* Fund Opp. at 4 n.3. The Pension Fund claimed in its lead plaintiff motion papers that these purchases were in reliance on the defendants' fraud, and claims

3

losses stemming from these purchases. *See* Dkt. No. 17 at 12 ("As its Certification and loss chart evidence, the Pension Fund purchased Alibaba ADSs during the Class Period and suffered harm when defendants' alleged misconduct was revealed."); Dkt. No. 18-3 (Loss Chart). The Pension Fund now repudiates its own claimed reliance and losses in an attempt to disqualify Gharsalli. The Court should reject the Pension Fund's about-face and accept the Pension Fund's original position—that shares purchased during the class period but after the first partial corrective disclosure were made in reliance on the defendants' false statements and omissions.

Second, the Pension Fund's argument is meritless on its face since the fraud was not fully revealed by the first partial corrective disclosure. The two subsequent disclosures revealed facts concealed by the defendants that were not revealed either explicitly or implicitly.  Gharsalli purchased his shares in reliance on the defendants' misrepresentations and alleges losses of nearly $3 million when the truth came to light. As such, there is no plausible claim (much less a unique defense) that Gharsalli did not rely on the defendants' misrepresentations. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 245-48 (S.D.N.Y. 2009) (appointing presumptive plaintiff who first purchased after company "announced earnings losses related to environmental charges" because it did not "sufficiently correct Tronox's prior false and misleading statements or make LaGrange, or any other class member, actually aware of the fraud"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 354-55 (S.D.N.Y. 2011) (holding that stock purchases following an article reporting a company's fraud did not render a lead plaintiff movant atypical since the report "remained unconfirmed by [the company] itself").

On November 2 and 3, 2020, media reports and an announcement by Ant Group revealed that Ant Group's IPO was suspended following a meeting with Chinese regulators about its business model. Dkt. No. 1 at 2-3. Though the Pension Fund recharacterizes these as revelations

of "Alibaba *and* Ant Group's illicit attempts to circumvent Chinese laws and regulations," Fund Opp. at 3, in fact, they related only to *Ant Group's* compliance with Chinese *financial* regulations. *See* Dkt. No. 1 at ¶¶ 24-25 (revealing that Ant Group may not meet disclosure requirements due to "recent changes in the Fintech regulatory environment"). Though Alibaba holds a 33% stake in Ant Group, the suspension of Ant Group's IPO following a meeting with regulators did not disclose *Alibaba's* potential violations of antitrust regulations.

As the Pension Fund's own counsel clearly acknowledges, regulatory scrutiny of Alibaba's antitrust violations were first revealed on November 10, 2020 (when China's anti-monopoly regulator published draft rules to curtail Alibaba's coercive cooperation pacts) and further revealed on December 23, 2020 (when Chinese authorities launched an antitrust investigation into Alibaba), *i.e.* after Gharsalli began purchasing Alibaba ADSs. *See Hess* Complaint, at ¶¶ 7-8. The Pension Fund's counsel filed the *Hess* Complaint alleging these disclosures on November 10 and December 23, 2020 and adding that they revealed "that Alibaba illicitly sought to circumvent Chinese laws and regulations, including laws . . . prohibiting anticompetitive behavior" and "that Alibaba had forced merchants using its Tmall platform to sign coercive exclusivity agreements and had engaged in anticompetitive behavior." *Id.* at ¶ 9. By contrast, the two prior complaints focused on the regulatory meeting with Ant Group's executives and the suspension of Ant Group's IPO and were devoid of Alibaba's antitrust violations. *See* Dkt. No. 1 at ¶¶ 4-7 (alleging that the November 2 and 3 disclosures revealed "Ant Group did not meet listing qualifications," "that certain impending changes in the Fintech regulatory environment would impact Ant Group's business," and that as a result "Ant Group's IPO was reasonably likely to be suspended"); *Romnek v. Alibaba Group Holding Ltd., et al.*, Case No. 1:20-cv-10267, Dkt. No. 1 at ¶¶ 4-7 (same). As such, the

5

Pension Fund's counsel clearly concedes that the November 2 and 3, 2020 disclosures were not fully corrective.

That is, when Gharsalli began purchasing his Alibaba ADSs on November 5, 2020, he was not on notice that Alibaba could be violating antitrust regulations, and therefore can still assert the fraud-on-the market presumption of reliance. The fact that Alibaba's ADS price fell 8% and 13% following the November 10 and December 23 disclosures, respectively, underscores that the entire market had relied on misstatements that had not been corrected by the November 2 and 3, 2020 disclosures. *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 540 (E.D. Va. 2006) (certifying plaintiff as class representative where it purchased after first corrective disclosure because "the sharp drop" following the final disclosure "confirms the conclusion that the prior disclosures had not cured . . . early misrepresentations, and further that not only [plaintiff], but the entire market had continued to rely on the erroneous financial statements").

In both cases cited by the Pension Fund, the first partial disclosure revealed the substance of the fraud and the later disclosures merely provided additional details regarding the already disclosed fraud. *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *2 & n.5 (S.D.N.Y. Dec. 16, 2020) (a "series of tweets" and a report on June 25, 2020 were supplemented by "additional information" on June 26, 2020); *Erickson v. Snap, Inc.*, 2017 WL 11592635 at *1, 3 (C.D. Cal. Sept. 18, 2017) (initial report of unexpected decline in user growth supported by subsequent reports that the company had previously been overstating user growth).[4]

---

[4] The Pension Fund's reliance on *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246 (S.D.N.Y. 2013) is also misplaced. A jury had already found in favor of the certified class in a separate action, and "the current posture . . . involve[d] Vivendi's challenge to GAMCO's reliance." *Id.* at 260. While post-disclosure purchases were "probative," GAMCO's employees had also testified that GAMCO invested regardless of, and thus did not rely on, the misstatements. *Id.* at 259-62.

6

Even in this Court's recent decision in *Lundy*, a "series of tweets" and a report on June 25, 2020 alleged "misrepresentations by Ideanomics in connection with its Mobile Energy Global Division," and the very next day, "[o]n June 26, 2020, Hindenburg Research and Ideanomics issued additional information regarding the alleged misrepresentations." 2020 WL 7389027, at *2 n.5. In rejecting Sons, the movant who purchased "*all* his class period shares after the June 25, 2020 partial corrective disclosures but before the June 26, 2020 final corrective disclosure," this Court found that the "June 25, 2020 disclosures mention the alleged fraudulent conduct," distinguishing it from cases in which the "initial disclosure . . . did not mention 'fraud or government investigation,'" which were revealed by subsequent disclosures. *Lundy*, 2020 WL 7389027, at *3. Here, each partial corrective disclosure reveals new information over the course of several weeks, and Gharsalli purchased Alibaba ADSs before the full fraud was revealed. On November 2 and 3, 2020, reports emerged that Ant Group's IPO was suspended following a meeting with Chinese regulators because, among other things, "recent changes in the Fintech regulatory environment." Dkt. No. 1 at ¶¶ 23-26. Two days later, on November 5, 2020, Gharsalli began purchasing Alibaba ADSs. Dkt. No. 8-2 (Gharsalli's Certification). Five days later, on November 10, 2020, Chinese regulators "published draft rules aimed at curtailing Alibaba's exclusive cooperation pacts." *Hess* Complaint at ¶ 36. Then, on December 23, 2020—nearly two months after Gharsalli's first purchase—Chinese authorities "launched an antitrust investigation into Alibaba's monopolistic practices." *Id.* at ¶ 38.

If the Court accepts the Pension Fund's argument that the November 3, 2020 disclosure is fully corrective and rejects Gharsalli on this basis, there is a significant risk that class members who purchased Alibaba securities in the 51 days between November 3, 2020 and the end of the Class Period are precluded from recovery. But the same risk was not present in *Lundy*; given that

7

the disclosures occurred on consecutive days and disclosed substantially the same information, there are few investors who purchased only after the June 25, 2020 disclosure who could somehow, if at all, still claim they were misled by misstatements that had been corrected by the June 25, 2020 disclosure, which is why Sons was susceptible to a "unique defense." Here, the November 2 and 3, 2020 disclosures neither mention nor suggest that regulatory scrutiny of Ant Group's financial compliance would expand into an investigation of Alibaba's antitrust violations. As such, the first disclosures do not disclose the full fraud.

Thus, any attack on Gharsalli on this basis is not "strong enough to create a real conflict between [him] and the members of the class" who purchased prior to the first partial disclosure. *In re Comverse Tech., Inc. Sec. Litig.*, 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (reasoning that corrective disclosure "significantly stronger" than first partial disclosure was still insufficient to "effectively" correct prior misstatements). Nor would such an attack present a "unique defense" against Gharsalli because there are "undoubtedly many members of the class" who similarly purchased Alibaba ADSs only after the first disclosure. *Id.* Therefore, Gharsalli is not subject to a defense, much less a "unique" one, against his ability to assert the fraud-on-the-market presumption of reliance. Since the Pension Fund failed to rebut the presumption that Gharsalli is the most adequate plaintiff, Gharsalli should be appointed as lead plaintiff, and no other movant is entitled to consideration.

### B.      Gharsalli Is Not Conflicted

The Pension Fund also claims that Gharsalli is "conflicted" with respect to the other class members based on the timing of his purchases. *See* Fund Opp. at 5. The Pension Fund offers that, since it purchased nearly 88% of its Alibaba ADSs before the first partial disclosure, it is somehow better-suited to lead this litigation. Fund Opp. at 4 n.3. The Court should reject this clear attempt to circumvent the PSLRA, which provides that, once the presumptive lead plaintiff has been

8

identified, "the court conducts a second inquiry in which members of the class have the opportunity to rebut the designation" through "proof." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-98 (S.D.N.Y. 2005). Thus, the Pension Fund is not entitled to consideration unless the presumption that Gharsalli is the most adequate plaintiff has been rebutted (which it has not). *See id.* at 98 ("If the presumptive lead plaintiff is disqualified on these grounds, the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff."); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) ("Once the court 'identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.").[5]

There is no conflict between Gharsalli and the remaining members of the class. There are likely many class members who purchased after the November 2 and 3, 2020 disclosures but before the December 23, 2020 revelation of Alibaba's potential violations of antitrust regulations. Moreover, counsel for the Pension Fund filed the complaint that expanded the allegations to include the November 10 and December 23, 2020 disclosures, thus conceding that they are related to the earlier partial disclosures. *See Hess* Complaint. There is no conflict in such instances. *See Comverse*, 2008 WL 820015, at *3 (purchase after first partial disclosure "does not suggest that

---

[5] Likewise, the Pension Fund improperly compares its losses to Gharsalli, making it seem like their losses are comparable by using a disfavored loss calculation. However, Gharsalli's loss that is many times greater than the Pension Fund's. The Pension Fund's reported loss of $2,055,371 is overstated by nearly $1.4 million in that it employs a first-in, first-out ("FIFO") methodology, while the remaining movants reported losses using the method preferred by courts, the last-in, first-out ("LIFO") methodology. *See also* Dkt. No. 28 at 4 & n.4 (Gharsalli's chart comparing movants' LIFO losses and calculating the Pension Fund's $692,802.67 LIFO loss). As such, the Pension Fund fails to alert the Court that its reported loss is not an apples-to-apples comparison with the remaining movants' losses. *See generally* Fund Opp. But, regardless of whether the Pension Fund's LIFO or FIFO loss is considered, Gharsalli still claims a larger loss of $2,934,323. Dkt. No. 28 at 4.

[movant] will not vigorously represent the interests of plaintiffs who purchased Comverse shares only before that" first disclosure).

### C.      Gharsalli Is Amenable to Adding and Additional Plaintiff

Gharsalli's purchase history is not a basis to disqualify him. However, Gharsalli is willing to add an additional plaintiff in the amended complaint to assuage any concerns that the Court may have. Gharsalli's counsel already represents the investor, Laura Ciccarello, that filed the initial complaint in this action, and she is willing to serve as additional plaintiff going forward.[6]  *See Christian v. BT Grp. PLC*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) ("I take some comfort in the Pension Fund's offer to 'include an additional class representative who held shares of BT group through the final disclosure' in an amended complaint.") (citing *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) (PSLRA permits the addition of named plaintiffs)).

## IV.      GHARSALLI'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to effectively conduct this litigation. *See* Dkt. No. 8-5. Accordingly, Gharsalli's selection of lead counsel for the class should be approved. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) (approving Glancy Prongay & Murray LLP as lead counsel and finding the firm "competent and experienced")

## V.      CONCLUSION

For the foregoing reasons, Gharsalli respectfully requests that the Court grant his motion.

---

[6] As demonstrated by her certification that has already been filed with the Court, Ciccarello purchased before and held during the first disclosure. *See* Dkt No. 1. Therefore, her inclusion would completely negate any potential statute of repose concerns since there would be a single plaintiff that held during the partial disclosure throughout the entirety of the litigation.

Respectfully submitted,

DATED: February 2, 2021                **GLANCY PRONGAY & MURRAY LLP**

By:  _/s/ Gregory B. Linkh_
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

            and

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Lead Plaintiff Movant Salem Gharsalli*
*and Proposed Lead Counsel for the Class*

**THE PORTNOY LAW FIRM**
Lesley Portnoy (LP-1941)
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
Email: lesley@portnoylaw.com

*Additional Counsel*

11

**<u>PROOF OF SERVICE</u>**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On February 2, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 2, 2021, at New York, New York.


*/s/ Gregory B. Linkh*
Gregory B. Linkh