# EXHIBIT B

Filing # 20458362 Electronically Filed 11/12/2014 10:18:26 AM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION DIVISION

SALEM GHARSALLI and PAMELA
GHARSALLI d/b/a "SALEM'S GYROS
AND SUBS",

       Plaintiffs,

vs.

NABIL H. BOUREHLA and HATEM G.
HAJRI d/b/a "GYROS AND SEAFOOD
EXPRESS", and ST. PETE GYRO INC., a
Florida corporation,

       Defendants.

vs.

SALEM GHARSALLI, PAMELA
GHARSALLI, MOHAMED GHARSALLI
AND MG 18TH AVE S., INC. D/B/A
"SALEM'S GYROS AND SUBS"

_____/

Case No. 11-06846
Division: L

## DEFENDANTS'/COUNTER-PLAINTIFFS' AMENDED MOTION FOR SANCTIONS

    Defendants/Counter-Plaintiffs, Nabil H. Bourehla ("Bourehla") and Hatem G. Hajri ("Hajri") (together as "Counter-Plaintiffs") and St. Pete Gyro, Inc., hereby file the following Amended Motion for Sanctions against Salem Gharsalli ("S. Gharsalli") and Pamela Gharsalli ("P. Gharsalli"), Mohamed Gharsalli ("M. Gharsalli") and MG 18th Ave S., Inc. d/b/a "Salem's Gyros and Subs" for deliberately putting into action a scheme to commit fraud upon this Court and ask the Court to strike their pleadings and enter a default judgment on all claims in their favor for the following reasons:

## FACTUAL BACKGROUND

Throughout this case Plaintiffs/Counter-Defendants and Third Party Defendants have perpetrated a scheme to hide information, commit fraud on this Court, have given what at best can be described as inconsistent testimony, but what is now clear perjury when considering the recent Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment filed on November 3, 2014, and the Affidavits of Salem Gharsalli and Mohamed Gharsalli contemporaneously filed with and relied upon in the motions, in order to unnecessarily prolong litigation and avoid liability.

**I.      Salem Gharsalli's and Mohamed Gharsalli's previous deposition testimony throughout this case directly contradicts their sworn affidavits filed contemporaneously with Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment filed on November 3, 2014.**

Salem Gharsalli's affidavit in paragraphs 3 and 4 filed on November 3, 2014, in support of Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment, state:

> 3.      In 2011, I made the business decision to open another Salem's restaurant in the same area of St. Petersburg, in order to preserve market share and market presence in light of the Defendants' having opened their Gyros and Seafood Express restaurant.
>
> 4.      To do so, I asked my brother, Mohamed Gharsalli, to be the operator of the new restaurant.  If he had not wanted to be involved, I would have looked for someone else to do it.  Mohamed Gharsalli did not persuade or induce me in any way to open the Salem's that was constructed on 18th Avenue South in St. Petersburg.

This directly contradicts and is the opposite of Salem Gharsalli's below excerpted deposition testimony in this case taken on May 20, 2014 (and previous testimony at first part of the injunction hearing on December 9, 2011), where Salem Gharsalli testified as follows:

2

Q   Do you remember who decided to build Mohamed's Salem's Gyros and Subs at the current location that it sits in St. Petersburg?

A   I don't know.

Q   You don't --

A   Who decided to build it?

Q   No, no.  Who made the decision to locate Mohamed Gharsalli's Salem's Gyros and Subs at its current location of 1605 18th Avenue South, St. Petersburg?

A   I think Mohamed.

Q   So Mohamed found that property on his own; is that your testimony?

A   He's a good boy.  He's capable.

Q   So he found that property on his own, which was four blocks from a Salem's Gyros and Subs that you already owned and were already being paid rent and monthly partnership payments on; correct?

A   I think so.

Q   And you approved the building of the Salem's Gyros and Subs at that spot?

A   He asked me, I believe I said yeah.

(Salem Gharsalli Deposition, May 20, 2014, Pages 106 – 107)

As shown above, Salem Gharsalli testified that it was Mohamed Gharsalli's idea to build the Salem's Gyros and Subs located at 1605 18th Ave. S., St. Petersburg, Florida, which is the opposite of his filed affidavit.

Mohamed Gharsalli's Affidavit in paragraph 2 filed on November 3, 2014, in support of Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment, states:

> 2.     It was not my idea to open the 18th Ave. S. Salem's Gyros and Subs restaurant.  It was the idea of and independent decision of my brother, Salem Gharsalli.  He approached me with the idea.  I did not ask or suggest to him that he open another restaurant in St. Petersburg, much less persuade or induce him to do it.

3

This directly contradicts Mohamed Gharsalli's below excerpted deposition testimony taken on June 18, 2014 (and previous testimony at first part of the injunction hearing on December 9, 2011), where Mohamed Gharsalli testified as follows:

Q.   Let me ask you this.  Did you have discussions with Salem Gharsalli prior to opening up the 1605 18th Avenue South, St. Petersburg store about where the location of the restaurant would be?
A.   Sorry, can you repeat?
Q.   At what point did you start discussing with Salem Gharsalli opening up a possible Salem's Gyros and Subs location in St. Petersburg, Florida?
A.   Please can you repeat one more time?
Q.   Prior to opening up the 1605 18th Avenue South, St. Petersburg, Florida, Salem's Gyros and Subs, what discussions did you have with Salem Gharsalli about the restaurant's location?
A.   After I find the property, I ask him.
Q.   How did you find the property located at 1605 18th Avenue South, St. Petersburg?
A.   I have a friend of my family, his name Mekal Haneef, told him long time ago I want to open business.  Especially when I work in 50th Avenue, I have experience.  I can run my own business.
      So I told him, can you find for me good location, not too much money.  Some location is too expensive.  So he find for me that one.

(Mohamed Gharsalli Deposition, June 18, 2014, Pages 16 – 17)

Q.   So you had discussions with Mekal Haneef, hey, start looking in St. Pete about opening up my own shop.  I feel like at this point I can do it on my own.  Correct?
A.   Yes.
Q.   He comes to you at some point, it's your testimony that he found the 1605 18th Avenue South location?
A.   Yes.

4

(Mohamed Gharsalli Deposition, June 18, 2014, Page 23)

Q.    How many times did you visit the property prior to purchasing it?
A.    Before I buy?
Q.    Before you buy it.
A.    Like two time.
Q.    Were you with Mekal Haneef?
A.    Yes.
Q.    Did Salem Gharsalli go with you?
A.    First time, no.
Q.    Did he go with you the second time?
A.    Yes.
Q.    That was prior to you purchasing it, correct?
A.    Before I buy it I want to ask him, too, if it was too much money.
Q.    So you had -- let me ask you this. Salem went with you the second time you went to visit the property prior to you purchasing it. And we've heard testimony -- tell me if you would agree with this statement. Would you agree that you needed Salem Gharsalli's permission to build a Salem's Gyros and Subs on that location?
A.    I need his permission?
Q.    Correct.
A.    Of course I need his permission.
Q.    If you're going to build a Salem's Gyros and Subs, you need Salem's permission, correct?
A.    Of course, yes.

(Mohamed Gharsalli Deposition, June 18, 2014, Pages 24 – 25)

Q.    So Mekal Haneef, it's your testimony, located that property for you, you visited with Salem. And at that point, the second time you visited it, you wanted to bring Salem because you were going to have to borrow money from him to build the location, correct?
A.    Yes.
Q.    And he agreed to loan you the money to build the Salem's Gyros and Subs at that location, correct?

5

A.   Yes.
Q.   And to buy the land, correct?
A.   Yes.

(Mohamed Gharsalli Deposition, June 18, 2014, Page 27)

As a matter of fact, Plaintiffs/Counter-Defendants' and Third Party Defendants' attorney Jesse Skipper on the record stated the following in C. Kenneth Zook's deposition taken on July 11, 2014, which directly contradicts the argument made in the motions for summary judgment filed by Jesse Skipper:

MR. SKIPPER:  You know as well as I do it is a
matter of record it is in Mohamed and we've never
disputed for one second that it's Mohamed's idea to
put the 18th Avenue and that Mohamed was to open the
store.  So how is that relevant to your lawsuit?

(C. Kenneth Zook Deposition, July 11, 2014, Page 19)

Plaintiffs/Counter-Defendants' and Third Party Defendants' attorney Jesse Skipper in fact argued during that deposition that whose idea to locate the Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, Florida, was irrelevant to the case, when now it is a central theme in the Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment.  The undersigned counsel stated it was a material fact at the time, in response to the above objection by Jesse Skipper:

MR. CREED:  It's relevant to my lawsuit to show that
-- who actually owns the store.  Obviously he's
acting as the owner.*  These finances have everything
to do with this lawsuit.

(C. Kenneth Zook Deposition, July 11, 2014, Page 19)(*Speaking
of Salem Gharsalli.)

The testimony as outlined above is clearly contradictory, and so both Salem Gharsalli and Mohamed Gharsalli perjured themselves in their depositions or in their

6

affidavits, but clearly perjury has been committed.  Furthermore, Plaintiffs/Counter-Defendants' and Third Party Defendants' attorney Jesse Skipper makes an argument in the Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment that he stated earlier was as a matter of record not supported by the testimony and evidence.  Plaintiffs/Counter-Defendants' and Third Party Defendants' attorney Jesse Skipper also objected vehemently and would not allow this line of questioning to continue in the deposition of C. Kenneth Zook, because he argued it was irrelevant, but now argues it is a material fact in the Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment.  This type of fraud and abuse should not be allowed to continue in this Court.

**II.**     **Salem Gharsalli's and Mohamed Gharsalli's attempted to hide how the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, was financed and testimony throughout this case has been inconsistent and at numerous points demonstratively false, while they have sought to hide the truth throughout the discovery process.**

All of the testimony in this case shows that Salem Gharsalli gave MG 18th Ave S., Inc. and Mohamed Gharsalli most, if not all, of the money to open up the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712.  Defendants/Counter-Plaintiffs have had to go through extraordinary investigatory lengths to track down evidence of the financing and ownership of the Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, all of which should have been provided in discovery.  This Court earlier this year on January 18, 2014, after a hearing on December 16, 2013, ordered Plaintiffs/Counter-Defendants and Third Party Defendants to respond to discovery, produce all documents withheld and pay sanctions of $2,500.00.  Thereafter Plaintiffs/Counter-Defendants and Third Party Defendants produced documents they claimed were all the documents they possessed responsive to Defendants/Counter-

7

Plaintiffs requests.    Clearly though Plaintiffs/Counter-Defendants and Third Party Defendants chose to ignore the Court's order and continue to hide relevant documents requested by Defendants/Counter-Plaintiffs, as is shown below.

In Defendants/Counter-Plaintiffs First Requests for Production to Mohamed Gharsalli and Salem Gharsalli, the following identical requests were posed to both:

> 5.    All documents related to Plaintiffs' relationship with the Salem's Gyros and Subs located at 1605 18th Avenue South St. Petersburg, FL 33712 ("18th Street Location"), including any documents regarding funding for the building or operation of the 18th Street Location.

> 9.    All documents related to leases or property ownership of the Salem's Gyros and Subs located at 1605 18th Avenue South St. Petersburg, FL 33712 ("18th Street Location"), including any documents regarding funding for the building or operation of the 18th Street Location.

> (Defendant St. Pete Gyros, Inc.'s First Request For Production To Counter-Defendant Mohamed Gharsalli, Dated December 31, 2012 and responded to December 13, 2013, and documents produced on January 23, 2014)

> 17.    All documents related to Plaintiff's relationship with the Salem's Gyros and Subs located at 1605 18th Avenue South St. Petersburg, FL 33712 ("18th Street Location"), any documents regarding funding for the building or operation of the 18th Street Location.

> 21.    All documents related to leases or property ownership of the Salem's Gyros and Subs located at 1605 18th Avenue South St. Petersburg, FL 33712 ("18th Street Location"), including any documents regarding funding for the building or operation of the 18th Street Location.

> (Defendant St. Pete Gyros, Inc.'s First Request For Production To Plaintiff/Counter-Defendant Salem Gharsalli Dated December 31, 2012 and responded to December 13, 2013, and documents produced on January 23, 2014)

Two extremely relevant documents to the ownership and financing of the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, were withheld by Plaintiffs/Counter-Defendants    and    Third    Party    Defendants,    but    found    by

8

Plaintiffs/Counter-Defendants through meticulous investigation into public records. Exhibit 12 to Mohamed Gharsalli's Deposition of June 18, 2014, is a Notice of Commencement for construction signed by Salem Gharsalli (signed on November 14, 2013, immediately before response to the requests for production on December 13, 2013) as the owner of the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, and this document was never produced by either Plaintiffs/Counter-Defendants or Third Party Defendants. Composite Exhibit 11 to Mohamed Gharsalli's Deposition of June 18, 2014, is a Second Mortgage (signed by Mohamed Gharsalli on June 7, 2013) in the Amount of $600,000.00 from a C. Kenneth Zook and a Promissory Note to pay $4,000.00 a month on the mortgage of $600,000.00, with an interest rate of 8% per annum, and this document was never produced by either Plaintiffs/Counter-Defendants or Third Party Defendants. Both of these documents were the subject of lengthy questioning at Mohamed Gharsalli's deposition as outlined below, wherein Mohamed Gharsalli at first denied any additional financing or loans from C. Kenneth Zook, and only after being confronted admitted to such a loan, but then continued to be untruthful throughout his testimony as shown by C. Kenneth Zook's own testimony. The excerpts are lengthy but necessary to show the extent to which Plaintiffs/Counter-Defendants or Third Party Defendants have gone to hide evidence and provide deceptive testimony in this case.

Salem Gharsalli testimony taken on May 20, 2014:

    Q  You know, we had a hearing about this.  I know
it's been a couple of years.  During the hearing, I
think you testified that you loaned your brother,
Mohamed Gharsalli, the money to open up that store; is
that correct?
    A  Yes.

9

Q    And how much money did you loan him?

A    I think about 360, $370,000, something like that.

Q    Did you have a written loan agreement with him?

A    No, sir.

(Salem Gharsalli Deposition, May 20, 2014, Pages 48 – 49)

Q    Okay.  Now, at the hearing we had a couple of years ago, you -- I think you testified that you had loaned Mohamed about 250 for the build out.  You're saying today it's 360 to 370.  Did you loan him money after that hearing?

A    You know, I do not remember.

(Salem Gharsalli Deposition, May 20, 2014, Page 52)

Q    So we had spoken about you had made a loan to your brother Mohamed so he could open up the store at 1605 18th Avenue in St. Petersburg; is that correct?

A    Yes, I did.

Q    Okay.  Has he paid you back for that loan, or is he making payments?

A    He's been paying me.

Q    Okay.  Is there -- do you now have a written agreement for payment back on that loan or no?

A    No.

Q    Okay.  Does he pay you every month or just whenever he can?

A    Sometimes every month.  Sometimes every other month.  Whenever he can, as he can.  Whenever he can.

(Salem Gharsalli Deposition, May 20, 2014, Pages 122 – 123)

Mohamed Gharsalli testimony taken on June 18, 2014:

Q.    (By Mr. Creed) Have you ever borrowed any money from Kenneth Zook?

A.    No.

Q.    Have you or any of your businesses ever borrowed money from Kenneth Zook?

A.    No.

Q.    No?  Is that a no?

A.    No.

(Exhibit-11, Second Mortgage, marked

10

for identification.)

Q.    (By Mr. Creed) I'm going to hand you what I'm marking as Exhibit 11.

You just testified that Kenneth Zook has never lent you or any of your businesses any money.  I would purport to you this is a publicly filed document in the name of MG Florida INV LLC, which you have previously testified you own; do you see that?

A.    Yes.

Q.    Do you see that Kenneth Zook is a mortgagee and MG FL INV LLC is the mortgagor?

A.    I see that.

Q.    Do you see that this is a loan allegedly that your company took out from Kenneth Zook personally for $600,000; do you see that?

A.    Yes.

Q.    And if you go to the signature page on page 5 of 6 at the bottom, is that your signature on page 5?

A.    Yes.

Q.    Do you see that's also signed by -- that was also notarized by a Sally Morris; do you see that?

A.    Yes.

Q.    And you still don't know who Sally Morris is?

A.    Many name.  I don't know.

Q.    This document appears it was executed on June 7, 2013 by yourself; is that correct?

A.    Yes.

Q.    And then if you go to the next page, attached to this is a promissory note to the second mortgage; do you see that?

Are you making $4,000 a month payment to Kenneth Zook?

A.    Where you have in the document?  I don't know exactly how much.

MR. SKIPPER:  Mohamed, are you making a $4,000 a month payment to Kenneth Zook?

THE WITNESS:  Yes.

(Mohamed Gharsalli Deposition, June 18, 2014, Pages 65 – 67)

Q.    You just said you had never borrowed

11

money from Kenneth Zook. This is proof that there's a $600,000 loan to your company from Kenneth Zook. What -- strike that.

What was the $600,000 loan for?

A. That's just my business.

Q. Well, the loan is taken out of MG FL INV LLC. You took a $600,000 loan, that's the business that owns the land at 1605 18th Avenue South, which is part of this dispute; is that correct?

A. (No answer.)

Q. So I'm going to ask you again, unless your attorney is instructing you not to answer, I'd ask you to answer.

What was the $600,000 loan for?

A. I don't have to answer.

Q. You don't have to answer. You're refusing to answer? You're refusing to answer the question?

A. Yes.

Q. So along with that $600,000, there was approximately $350,000 borrowed from your brother, Salem Gharsalli; you testified $250,000 from yourself put into the business; and then a $200,000 mortgage from Moses; is that correct?

A. Yes.

Q. So that's 1.4 million dollars in debt on that business, correct?

A. Yes.

Q. Do you have a record of receiving that $600,000 from Kenneth Zook?

A. Yes.

Q. And what bank did you deposit that $600,000 in?

A. That's my business.

Q. Are you refusing to answer?

A. Yes.

(Mohamed Gharsalli Deposition, June 18, 2014, Pages 68 – 70)

Q. Previously, we discussed a $600,000 loan that your company took from Kenneth Zook. You stated that you're making payments on that loan. Do you have any evidence of your making payments and what bank those payments are coming from?

12

A.   All of them in the document.  I will bring to you if you need.
Q.   What bank are you making those payments out of?
A.   I'm not answering this question.

(Mohamed Gharsalli Deposition, June 18, 2014, Page 73)

A.   I took 600,000 from Ken Zook.  Salem helped me before, he gave me 350,000, so I took this mortgage and he paid for that mortgage too. So he paid for this mortgage.
MR. CREED:  Salem Gharsalli pays for this mortgage?
THE WITNESS:  Yeah, he's paying for that 600,000.  I took for him to help.

(Mohamed Gharsalli Deposition, June 18, 2014, Page 77)

Q.   And previously you testified that you were making the $4,000 payment on this $600,000 loan, but that's not true, is it?
A.   No, Salem, he make that.

(Mohamed Gharsalli Deposition, June 18, 2014, Page 81)

After Mohamed Gharsalli, obfuscated and perjured himself throughout his deposition, the deposition of C. Kenneth Zook taken on July 11, 2014, shows that Mohamed Gharsalli's testimony was false even after a lengthy meeting during his deposition with his counsel, Jesse Skipper, so he could "correct" the record:

Q.  Okay.  What was the $600,000 for?
A.  It was -- my $600,000 is secured by the property on 18th Avenue in St. Pete.
Q.  Okay.  And who -- is anybody making payments on the $600,000 to you?
A.  No.
Q.  So they still owe the full $600,000 to you?
A.  Correct.
Q.  Okay.  If I purported to tell you that Mohamed Gharsalli in his deposition said they were making payments to you, would that be untrue?
A.  That's untrue.

13

Q.  Okay.  So this $600,000 is still owed to you in full?

A.  Correct.

Q.  With interest?

A.  According to the document, yes.

(C. Kenneth Zook Deposition, July 11, 2014, Page 15)

BY MR. CREED:

Q.  So as of today on the $600,000 for the 18th Avenue Salem's Gyros and Subs in St. Petersburg, Florida you've received no payments.  Correct?

A.  That's correct.

Q.  And your understanding when that mortgage was taken out that was for the benefit of Salem Gharsalli.  Correct?

A.  That's not correct.

Q.  He asked you to do that though.  Correct?

A.  He asked me if I was willing to place that money on the 18th Avenue property which was owned by his brother.

Q.  He asked you.  Mohamed Gharsalli did not ask you.

A.  That's correct.

(C. Kenneth Zook Deposition, July 11, 2014, Pages 22 – 23)

At the deposition of Mohamed Gharsalli, the undersigned counsel went through numerous questions regarding the financing of new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, and has never gotten any consistent answers.  Salem Gharsalli throughout this case, up to filing his affidavit in support of his summary judgment has denied he had anything to do with new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, other than helping his brother Mohamed Gharsalli, but consistently testified, as did Mohamed Gharsalli, that it was Mohamed Gharsalli's idea to open new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712.  The total amount of money used to finance the new Salem's Gyros and Subs was approximately $1,400,000.00.  Mohamed Gharsalli testified that he financed only $250,000.00 of the new restaurant, but has never shown where he obtained

14

that money from, or how he obtained that amount of cash. Mohamed Gharsalli testified that he borrowed $350,000.00 from his brother, but has no record of receipt of the monies or payments made on the loan, with no loan agreement. Mohamed Gharsalli testified that he took out a mortgage on the property for $200,000.00 and put $50,000.00 cash down. The remaining balance came from Salem Gharsalli, or by his facilitation due to the relationship he has with C. Kenneth Zook.

The testimony also shows that Salem Gharsalli and Mohamed Gharsalli have actively attempted to deceive Defendants/Counter-Plaintiffs throughout discovery as to how much money was loaned and by whom, in regards to the Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712. Allegedly a loan was made by a friend of Salem Gharsalli, C. Kenneth Zook, to Mohamed Gharsalli in the amount of $600,000.00, on Salem Gharsalli's word alone. As shown above, when Mohamed Gharsalli was asked about the loan, he at first denied that such a loan was made, then when confronted with public filings he admitted to the loan and stated he was making payments. When C. Kenneth Zook was asked about the loan of $600,000.00, he stated it was a favor to Salem Gharsalli and that no payments had been made. When asked where the $600,000.00 came from, C. Kenneth Zook stated from a previous loan he made to Salem Gharsalli on a different property was transferred by request of Salem Gharsalli. When C. Kenneth Zook was asked where the money came from before that transfer of interest, opposing counsel Jesse Skipper objected and would not allow C. Kenneth Zook to answer, and C. Kenneth Zook refused to answer. Furthermore, Salem Gharsalli testified the extent of his financial assistance to Mohamed Gharsalli was $370,000.00, when clearly that is not true, as he facilitated a $600,000.00 loan from C. Kenneth Zook who was Salem Gharsalli's

15

neighbor after he purchased some of Salem Gharsalli's property.  (C. Kenneth Zook Deposition, July 11, 2014, Pages 5 – 6)

Salem Gharsalli has testified numerous times that he was not an owner of the property, when he has signed a public document stating he was the owner of the property. (Mohamed Gharsalli Deposition, June 18, 2014, Exhibit 12) Lastly, there exists no documents ever produced regarding loans from Salem Gharsalli to Mohamed Gharsalli, or any obligation under which Mohamed Gharsalli had to pay to run the business in 2011, when the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712 opened.  The above testimony when taken as a whole shows the absolute disregard the Plaintiffs/Counter-Defendants and Third Party Defendants have for the authority of this Court and the civil litigation process.  Plaintiffs/Counter-Defendants and Third Party Defendants testimony throughout has been deceitful, they have withheld documents that were relevant and that they were ordered to produce by this Court.

**III.     Mohamed Gharsalli has falsified responses to discovery and disingenuously testified throughout the case that Salem Gharsalli had little to do with the construction of the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, but now in the Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment, Salem Gharsalli affirms that he directly referred Mohamed Gharsalli to contractors and suppliers.**

Salem Gharsalli's affidavit paragraph 5 filed on November 3, 2014, in support of Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment, states:

> 5.      I provided a portion of the financing for the development of the new restaurant, and referred Mohamed Gharsalli to the contractors and suppliers who have experience with the construction and appointments of Salem's brand restaurants in Florida.

16

Eric L. Wise, a plumber with long time association with Plaintiffs, testified that he was introduced to M. Gharsalli by S. Gharsalli:

Q. Let me ask you this:  Who introduced you to Mohamed Gharsalli?
A. Would we Salem.
Q. Salem introduced you?
A. Yes.
Q. And that's how Mohamed found you as a plumber?
A. Yes.  I do -- when something breaks, I'm their man.
Q. So would you have met Mohamed Gharsalli without the help of Salem Gharsalli?
A. No

(C. Kenneth Zook Testimony at January 18, 2012, Injunction Hearing Part II, Page 19)

But in Mohamed Gharsalli's below testimony and responses to requests for admissions, Mohamed denied that Salem Gharsalli had introduced him to the trade people who worked on the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712.

Q.   Do you know who A Step Above Plumbing is?
A.   Yes.
Q.   Who is that?
A.   Eric, the plumber.
Q.   Did he do the plumbing work for the 1605 18th Avenue South Salem's Gyros and Subs?
A.   Yes.
Q.   And who introduced you -- his name is Eric Wise, correct?
A.   Eric.  I don't know his last name but I know he's Eric.
Q.   Who introduced you to Eric?
A.   Nobody because I know him long time. Always he come to 50th Street and he come to all the shop.

(Mohamed Gharsalli Deposition, June 18, 2014, Page 43)

17

2.      Admit that Salem Gharsalli introduced you, Mohamed Gharsalli, to Richard Regel of Regel Brothers to perform services at the Salem's Gyros location at 1605 18th Ave. S., St. Petersburg, FL 33712.

**ANSWER**: Denied.

3.      Admit that Salem Gharsalli introduced you, Mohamed Gharsalli, to Eric L. Wise of Step Above Plumbing, Inc. to perform services at the Salem's Gyros location at 1605 18th Ave. S., St. Petersburg, FL 33712.

**ANSWER**: Denied.

4.      Admit that Salem Gharsalli introduced you, Mohamed Gharsalli, to contacts at T.I. Sheet Metal, Inc. to perform services at the Salem's Gyros location at 1605 18th Ave. S., St. Petersburg, FL 33712.

**ANSWER**: Denied.

5.      Admit that Salem Gharsalli introduced you, Mohamed Gharsalli, to Mekal S. Haneef.

**ANSWER**: Denied.

(Defendant St. Pete Gyros, Inc.'s First Request For Admission To Counter-Defendant Mohamed Gharsalli Dated December 31, 2012 and responded to November 22, 2013)

This instance with Eric L. Wise was not the only issue Defendants/Counter-Plaintiffs had in conducting discovery in regards to contractors and suppliers for the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712. Prior to the second hearing on January 18, 2012, for Counter-Plaintiffs Motion for Preliminary Injunction, Richard Regel of Regel Brothers stated to the undersigned counsel that Salem Gharsalli directed the build out of the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712. Undersigned counsel subpoenaed Richard Regel for the hearing, but Mr. Regel called the undersigned a second time and stated he had spoken

18

with Salem Gharsalli and that he would not be attending the hearing for numerous reasons. (See Motion for Contempt and Hearing Transcript from April 10, 2012)

Furthermore, Mekal Haneef also failed to attend the second hearing on January 18, 2012, for Counter-Plaintiffs Motion for Preliminary Injunction, after being served a subpoena. (See Motion for Contempt and Hearing Transcript from April 10, 2012) Throughout this case the undersigned has attempted to serve Mekal Haneef a second time to take his deposition as he was cited by Mohamed Mohammed as the person who identified the current location of the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712. In fact, Mekal Haneef filed the original documents for MG 18th Ave S., Inc. (Mohamed Gharsalli Deposition, June 18, 2014, Pages 37 – 39) The undersigned counsel has never been able to locate Mekal Haneef again to obtain his testimony, though Mohamed Gharsalli testified that he was in contact with Mekal Haneef.

Q. All right. So getting back to -- so you asked Mekal Haneef, who is a family friend -- do you still have Mekal Haneef's phone number or address?
A. Yes.
Q. Would you be able to supply that today?
A. His phone number, yes.
Q. What's his phone number?
A. (727) 410-9283.
Q. Do you still talk to Mekal Haneef?
A. Yes.
Q. When was the last time you talked to him?
A. Last week.

(Mohamed Gharsalli Deposition, June 18, 2014, Pages 21 – 22)

19

Furthermore, the undersigned counsel learned that Plaintiffs' attorneys at the law firm of Rahdert, Steele, Reynolds & Driscoll, P.L., have actually represented Mekal Haneef on a number of matters, as admitted by Anne Arsenault when the undersigned counsel happened to be present when Rahdert, Steele, Reynolds & Driscoll, P.L. received a call from Mr. Haneef.  Regardless of this fact, opposing counsel never brought this fact up, even at the hearing for contempt against Mr. Haneef.  The above facts show that the Plaintiffs/Counter-Defendants and Third Party Defendants have attempted to hide the truth from Defendants/Counter-Plaintiffs throughout this case, and restrict access to witnesses and information known to be material by Plaintiffs/Counter-Defendants and Third Party Defendants.

### IV. Salem Gharsalli through an agent attempted to tamper with Monsef Bouazizi's unfavorable deposition testimony through threats of financial pressure.

M. Bouazizi is a co-owner with Salem Gharsalli in a number of businesses and commercial properties.  The businesses are as follows:

1. M. Bouazizi is a shareholder with S. Gharsalli of Gharsalli, Inc. d/b/a "Salem's Gyros and Subs" a Florida corporation with a principle place of business located at 4004 W. Hillsborough Ave., Tampa FL 33610.

2. M. Bouazizi is a member with S. Gharsalli of SP/MN Investments II, LLC a Florida limited liability corporation that owns the property located at 4004 W. Hillsborough Ave., Tampa FL 33610.

3. M. Bouazizi is a member with S. Gharsalli of SP/MN Investments III, LLC a Florida limited liability corporation that owns the property located at 1611 N. Nebraska Ave., Tampa FL 33602, where Amani, Inc. d/b/a "Salem's Gyros and Subs."

4. M. Bouazizi is a shareholder with S. Gharsalli of SG & MB, Inc. d/b/a "Salem's Gyros and Subs" is a Florida corporation with a principle place of business located at 101 Memorial Blvd., Lakeland, FL 33801.

5.      M. Bouazizi is a member with S. Gharsalli of SP/MN Investments, LLC a Florida limited liability corporation that owns the property located at 101 Memorial Blvd., Lakeland, FL 33801.

Monsef Bouazizi's affidavit executed on November 3, 2014, in paragraph 20, states:

20.      On May 23, 2014, I gave a deposition in the case pending In The Circuit Court Of The Thirteenth Judicial Circuit, In And For Hillsborough County, styled Salem Gharsalli, et al v. Nabil H. Bourehla, et al, Case Number 11-06846.  The day after the deposition Raouf Saidi, contacted me on behalf of Salem Gharsalli and asked me to sign the attached letter, Exhibit 9, for Salem Gharsalli and send it to his attorney Jesse Skipper at his e-mail address of jesse.skipper@skipperlaw.net (See attached Exhibit 10 – text messages from Raouf Saidi).  Raouf Saidi wanted me to falsely tell Salem Gharsalli's attorney I had not told the truth during my deposition, when I had testified truthfully.  Raouf Saidi stated that if I refused to cooperate with Salem Gharsalli's request in this matter, that Salem Gharsalli would take the same steps he had taken against Hatem Hajri and Nabil Bourehla to destroy me and my family financially.

On May 23, 2014, Monsef Bouazizi gave a deposition in this case, in which he gave testimony that was supportive of the Defendants/Counter-Plaintiffs' factual positions in this case.  The day after the deposition an agent of Salem Gharsalli, Raouf Saidi, contacted Monsef Bouazizi on behalf of Salem Gharsalli and asked him to sign a letter for Salem Gharsalli and send it to his attorney Jesse Skipper at his e-mail address of jesse.skipper@skipperlaw.net.  (See September 4, 2014, Affidavit of M. Bouazizi, exhibit 10)  Raouf Saidi wanted Monsef Bouazizi to falsely tell Salem Gharsalli's attorney that he had not told the truth during his deposition, when he had testified truthfully.  Raouf Saidi stated that if Monsef Bouazizi refused to cooperate with Salem Gharsalli's request in this matter, that Salem Gharsalli would take the same steps he had taken against Defendants/Counter-Plaintiffs in this case and destroy him and his family financially. (See September 4, 2014, Affidavit of M. Bouazizi)

21

In a deposition taken on August 18, 2014, of Salem Gharsalli in the *K. Gonzalez v. Salem Gharsalli, et al,* Case No. 12-CA-000519, in the County Court of the Thirteenth Judicial Circuit In and For Hillsborough County, Florida, Salem Gharsalli testified under oath that he had no other co-owners other than his wife of properties currently running businesses.  (Salem Gharsalli Deposition, August 18, 2014, Page 10)  While Salem Gharsalli's August 18, 2014, deposition testimony is clearly false, it also shows Salem Gharsalli's willingness to testify untruthfully when he believes it will to his benefit. Jesse Skipper is also the attorney of record for Salem Gharsalli in the case of *K. Gonzalez v. Salem Gharsalli, et al,* Case No. 12-CA-000519, in the County Court of the Thirteenth Judicial Circuit In and For Hillsborough County, Florida.

Currently Monsef Bouazizi has brought the action styled *Monsef Bouazizi, et al v. Salem Gharsalli, et al*, Case No. 14-CA-10969, in the County Court of the Thirteenth Judicial Circuit In and For Hillsborough County, Florida, against Salem Gharsalli and others for fraudulent business practices relating to the businesses they own together. Salem Gharsalli's behavior in this matter is most upsetting and again shows his contempt for the judicial process.

**MEMORANDUM OF LAW**

I.      **Dismissal of Claims for Fraud on the Court on Core Issue Permeating the Entire Proceeding**

        a.  **Core Issue**

The ownership, financing and motivation behind building the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, is a core central issue of this case as admitted by Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment filed on November 3, 2014, and the Affidavits of Salem Gharsalli

22

and Mohamed Gharsalli contemporaneously filed with and relied upon in the motions. Thus, the fraud on a core issue that goes to the heart of the case.

### b. Ongoing Lack of Candor by Salem Gharsalli and Mohamed Gharsalli

Rather than being candid with the Court and cooperate in discovery, Salem Gharsalli and Mohamed Gharsalli have provided misleading and deceitful testimony throughout this case, withheld key documents even after the Court ordered those documents produced. The above factual dissertation shows that Salem Gharsalli's and Mohamed Gharsalli's activities throughout the litigation evidence clear and convincing fraud. This ongoing fraud has permeated the entire proceeding, and made it impossible to allow Plaintiffs/Counter-Defendants, Third Party Defendants and their current counsel to continue in this case.

First, it is clear that Plaintiffs/Counter-Defendants' and Third Party Defendants' have perjured themselves throughout this litigation and withheld key documents. Second, it is clear that their attorney Jesse Skipper was aware at the very least of the deceitful testimony, but chose to go forward with drafting and filing Plaintiffs/Counter-Defendants' and Third Party Defendants' Motions for Summary Judgment filed on November 3, 2014, and the Affidavits of Salem Gharsalli and Mohamed Gharsalli contemporaneously filed with and relied upon in the motions, knowing the affidavits and motions were directly contrary to his clients' testimony throughout this case.

### c. Courts Have Dismissed For Fraud Based on Less Evidence

This Court has the inherent authority to dismiss this action when a party has perpetrated a fraud on the Court because "no litigant has a right to trifle with the courts."

23

*Morgan v. Campbell*, 816 So.2d 251 (Fla. 2d DCA 2002). As held in *Morgan*, even half truths "directly related to the central issue in the case" justify dismissal:

> [A]s the Fifth District has stated, "the integrity of the civil litigation process depends on truthful disclosure of facts." *Cox v. Burke*, 706 So.2d 43, 47 (Fla. 5th DCA 1998). Revealing only some of the facts does not constitute "truthful disclosure." *See Metro. Dade County v. Martinsen*, 736 So.2d 794 (Fla. 3d DCA 1999) (reversing jury verdict for the plaintiff and remanding for dismissal of the plaintiff's case because she had not revealed full and complete information to clear and unambiguous questions during discovery despite the fact that the plaintiff provided some truthful information about her treating doctors and was impeached with her misrepresentations and omissions at trial)....
>
> Based on the half-truths Kelly Morgan told during discovery, the Morgans have not shown that the trial court abused its discretion by imposing an unreasonable sanction.

Orders of dismissal for falsehoods relating to the central issue of the case have been upheld in numerous cases. In *Morgan*, the evidence of fraud was that while the plaintiff admitted in deposition being treated for scoliosis, she denied being treated for neck and low back pain – medical records reflected a number of treatments for neck and low back pain. Similarly, in *Ramey v. Haverty Furniture, Inc.*, 993 So.2d 1014 (Fla. 2d DCA 2008), the plaintiff testified to no prior neck problems or pain or headaches but medical records showed 13 entries about neck pain and headaches. The Second District found that the misrepresentations of plaintiff were "blatant" and constituted clear and convincing evidence of fraud on the court.

Here, the evidence also shows that the falsehoods are blatant, and it is worse because opposing counsel has filed affidavits and motions that are completely opposite of previous testimony and argument made by counsel. Plaintiffs/Counter-Defendants and Third Party Defendants have engaged in fraud and an unconscionable scheme to interfere

24

with the judicial system's ability to impartially adjudicate the matter, and their counsel has furthered this scheme by filing motions for summary judgment and affidavits that are demonstrably false, or prove previous systematic perjury.

### d. Dismissal is Proper Because Fraud Goes to the Heart of the Case and Permeates the Proceeding

Plaintiffs/Counter-Defendants and Third Party Defendants have provided misleading and deceitful testimony throughout this case, and caused much unnecessary expense. Plaintiffs/Counter-Defendants' and Third Party Defendants' fraud on the Court clearly warrants dismissal of its action. In *Savino v. Florida Drive-In Theatre Management, Inc.*, 697 So.2d 1011 (Fla. 4th DCA 1997), the plaintiff lied about his educational background in a suit to recover damages for an injury. The court held that a lie "which went to the heart of his claim" was "a fraud on the court which permeates the entire proceeding, [and] dismissal of the entire case is proper." Similarly, Plaintiffs/Counter-Defendants' and Third Party Defendants' false statements as to the new Salem's Gyros and Subs at 1605 18th Ave. S., St. Petersburg, FL 33712, goes to the heart of this case. Plaintiffs/Counter-Defendants' and Third Party Defendants' false statements have permeated the entire proceeding and warrant dismissal of the entire case and default judgments in favor of Defendants/Counter-Plaintiffs.

### II.    Conclusion

As stated in *Sky Development, Inc., Appellant, vs. Vistaview Development, Inc., et al.*, 41 So. 3d 918 (Fla. 3rd DCA 2010):

> On this record, we cannot conclude that the dismissal, and entry of final judgment thereafter, was an abuse of discretion. The plaintiff's misconduct was certainly a "blatant showing of fraud, pretense, collusion or other similar wrongdoing." *Laurore v. Miami Auto. Retail, Inc., 16 So. 3d 862, 864 (Fla. 3d DCA 2009)*.

25

The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense."

*Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998)* [**3] (quoting *Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st. Cir. 1989))*. There was ample evidence for the trial court to conclude that just such an unconscionable scheme was underway here. This is not a case where the dismissal was unreasonably harsh. *Compare Ibarra v. Izaguirre, 985 So. 2d 1117 (Fla. 3d DCA 2008)* (finding abuse of discretion in dismissing complaint where no clear and convincing evidence of fraud was presented).

Plaintiffs/Counter-Defendants and Third-Party Defendants have set into motion a scheme by which they have attempted to thwart the Defendants/Counter-Plaintiffs from ascertaining the truth of matters throughout the litigation. Plaintiffs/Counter-Defendants and Third-Party Defendants have shown they are willing to do anything to avoid the truth in the material matters in this litigation.

For the foregoing reasons, the Defendants/Counter-Plaintiffs move this Court for an order striking the Plaintiffs/Counter-Defendants' and Third-Party Defendants' pleadings, entry of a default judgments in favor of Defendants/Counter-Plaintiffs on all claims for and against them, for reasonable attorney's fees and expenses, and any and all other relief this Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2014 a true and correct copy of the foregoing has been served by electronic mail upon: Anne Arsenault, Esq., Jesse L. Skipper, Esq. and George K Rahdert, Esq. (jesse.skipper@skipperlaw.net; aarsenault@rahdertlaw.com: TBisnett@rahdertlaw.com; grahdert@rahdertlaw.com; ccoates@rahdertlaw.com; service@rahdertlaw.com) Rahdert, Steele, Reynolds &

26

Driscoll, P.L., 535 Central Avenue St. Petersburg, FL 33701, Attorneys for the Plaintiffs/Counter-Defendants.

/s/ Dennis A. Creed III
DENNIS A. CREED, III
Florida Bar No.: 0043618
FELDMAN MORGADO, P.A.
501 North Reo Street
Tampa, Florida 33609
Phone: 813.639.9366
Fax: 813.639.9376
Attorneys for Defendants/Counter-Plaintiffs

27