# EXHIBIT OO

Free Newsletter Sign Up

Securities Law

# What's Ahead for Ant Group's Now-Delayed IPO?

By Mark D. Wood and Brian J. Hecht

Nov. 18, 2020, 1:01 AM

Ant Group's proposed IPO, expected to be the largest in history, was suspended just days before the listing was scheduled to be completed in Shanghai and Hong Kong. Katten Muchin Rosenman LLP corporate partners Mark D. Wood and Brian J. Hecht dissect the causes for the delay and explain what could happen next with the fintech giant.

Ant Group's proposed IPO, expected to be the largest in history, was suspended on Nov. 3, just days before the listing was scheduled to be completed. The IPO seeking to raise over $34 billion in a dual listing on the Shanghai Stock Market's STAR Board and Hong Kong Stock Exchange was dramatically oversubscribed, as strong investor demand for shares spanned the globe, leading to an expected valuation in excess of $300 billion.

As has been widely reported, in the final days leading up to the planned IPO, Jack Ma, the Alibaba founder and controlling shareholder of Ant Group, made remarks critical of Chinese financial regulators and their oversight of Ant's industry at a conference. Following these comments, Ma and Ant executives were summoned by banking authorities to a multi-agency meeting and the planned IPO was then suspended by securities regulators.

While Ma's remarks may have served as a final catalyst for China's delaying the IPO, these developments highlight the complicated and evolving Chinese regulatory framework applicable to Ant, and the struggle over the extent to which its business is treated more like a bank or a technology company in China.

The delay also puts a spotlight on Ant's decision to choose the Shanghai Stock Market as one of the markets for its IPO, and raises questions about the impact it may have on future investor demand for Shanghai-listed offerings.

**Ant Group's IPO Background**

Previously known as Ant Financial, Ant's core business was spun out of Alibaba Group in 2011. Both Ma and Alibaba continue to hold large equity stakes in the company, and the businesses of Ant and Alibaba remain intertwined through significant commercial arrangements.

Ant Group, perhaps best known for its Chinese digital payment service app, Alipay, notably also has a significant direct lending business, originating short-term loans to consumers and businesses through the app. It is this lending business that is thought to have attracted scrutiny from banking regulators in the lead-up to Ant's planned IPO.

Unlike Alibaba, which went public on the New York Stock Exchange (NYSE) in 2014 and added a secondary listing in Hong Kong in 2019, Ant Group sought to list in Shanghai and Hong Kong, marking an important turn for a prominent Chinese company.

Since Alibaba's IPO, the Shanghai exchange has relaxed certain listing standards, making a Chinese listing more appealing to a large company like Ant Group. The process for completing an IPO on the Shanghai exchange has been streamlined in recent years, and securities regulators fast-tracked Ant's IPO, limiting the number of rounds of comments.

It is also understood that the Chinese government has become more active in encouraging Chinese companies to list in Shanghai, instead of other global markets.

Ant's decision to list in Shanghai and Hong Kong, and not on the NYSE, also came at a time of rising political and economic tensions between the U.S. and China.

Among other issues, in recent years, there has been renewed focus from the Securities and Exchange Commission and certain congressional leaders over U.S. access to the audit work of U.S.-listed Chinese companies' accounting firms, which Chinese law generally prohibits these companies from providing.

It is possible that future U.S. legislation or rulemaking may make it difficult, or impossible, for certain Chinese companies to maintain a U.S. listing, if Chinese law prohibits them from furnishing such required audit work to U.S. authorities.

**The IPO Regulatory Framework in U.S. and China**

In the U.S., the federal securities laws governing IPOs are "disclosure"-based and not "merit"-based. That is, though the SEC will review a company's IPO prospectus and provide comments as to the disclosures and form requirements, the SEC will not approve or disapprove of an IPO or address the merits of investing in a specific company.

Regulators in Shanghai use an "approval"-based system. Accordingly, the review of Ant's IPO appears to ultimately have considered such issues as whether Ant's direct lending business is too highly levered and undercapitalized and whether the valuation that Ant Group is seeking from the public markets is too high.

Ant Group will need to navigate China's regulatory hierarchy, escalating from securities regulators, to banking authorities and to the central bank, before a final outcome can be achieved. Jack Ma's prior critical remarks and global profile may further complicate matters.

In addition, new draft rules setting heightened lending standards for financial technology (fintech) firms and aiming to limit the amounts that can be lent were quickly announced following the suspension of Ant's IPO, so their potential impact on Ant's operating results and equity valuation will need to be considered.

**Possible Next Steps for Ant**

It is generally expected that the Ant Group IPO will recommence in the coming months following discussions with regulators and updated securities filings.

What a revised IPO will look like remains to be seen, but it may include an Ant Group with an updated capital structure and lending framework, subject to a new regulatory regime applicable to online lending, and with a valuation reduced from the sky-high numbers that Ant Group appeared poised to achieve as of October of this year.

*This column does not necessarily reflect the opinion of The Bureau of National Affairs, Inc. or its owners.*

*Write for Us: Author Guidelines*

**Author Information**

*Mark D. Wood is head of the corporate securities practice at Katten Muchin Rosenman LLP. He represents public companies and investment banks in ongoing and transactional matters including IPOs and other public offerings of equity and debt securities, as well as mergers, acquisitions and other strategic transactions. He also advises institutional investors in private investment in public equity transactions and on crossborder deals with Canadian and other non-U.S. companies.*

*Brian J. Hecht is a corporate partner at Katten Muchin Rosenman LLP in capital markets transactions, mergers and acquisitions, and corporate governance matters. He has extensive experience in high stakes transactions and complex securities matters including IPOs and high-yield offerings. He has advised issuers on billions of dollars in capital markets transactions and mergers and acquisitions.*

## Law Firms

Katten Muchin Rosenman

Case 1:20-cv-09568-GBD-JW    Document 64-53    Filed 07/21/22    Page 5 of 5

## Topics

non-U.S. securities regulation
fintech
initial public offerings
attorney suspension
international banking
stock market

## Companies

Alibaba Group Holding Ltd

© 2022 The Bureau of National Affairs, Inc.   All Rights Reserved