**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: ALIBABA GROUP HOLDING LTD.
SECURITIES LITIGATION

No.: 1:20-cv-09568-GBD-JW

## ALIBABA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Jonathan K. Youngwood
jyoungwood@stblaw.com
425 Lexington Avenue
New York, New York    10017
Telephone: (212) 455-3539
Facsimile: (212) 455-2502

James G. Kreissman
jkreissman@stblaw.com
Stephen P. Blake
sblake@stblaw.com
Bo Bryan Jin (*pro hac vice*)
Bryan.jin@stblaw.com
2475 Hanover Street
Palo Alto, California    94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Counsel for Defendants Alibaba Group Holding
Limited, Daniel Yong Zhang, Maggie Wei Wu,
and Jack Yun Ma*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.    PLAINTIFFS FAIL TO STATE A CLAIM REGARDING THE ANT IPO......................... 3

    A.  Plaintiffs Abandon The Ant Investor Claim Against Alibaba. ........................ 3

    B.  Alibaba Had No Duty To Disclose Ant's Alleged *FHC Rules* Violation. ...................... 3

    C.  Plaintiffs Fail To Plead Scienter In Connection With The Ant IPO. .............. 4

II.   PLAINTIFFS FAIL TO STATE A CLAIM RELATED TO ANTITRUST
RISK. ..................................................................................................................... 6

    A.  Plaintiffs Fail To Plead Any Actionable Misstatement Or Omission
       Related to Antitrust Risk. ........................................................................ 6

        1.  Alibaba Fairly Disclosed Regulatory Scrutiny And Risks Related To
           Its Business Practices. ......................................................................... 6

        2.  Alibaba Did Not Mislead Investors About Its Business Practices. .......... 8

        3.  Plaintiffs Fail To State A Claim Based On Alibaba's Statement Of
           Opinion. ............................................................................................. 11

        4.  Other Challenged Disclosures Are Not Actionable. .............................. 12

    B.  Plaintiffs Fail To Plead A Strong Inference Of Scienter. ............................... 13

        1.  Plaintiffs Effectively Concede That They Have Not Pleaded A
           Coherent Motive and Opportunity Theory. .......................................... 13

        2.  The Complaint Lacks Any Strong Circumstantial Evidence Of
           Conscious Misconduct Or Recklessness. .............................................. 14

        3.  Plaintiffs' Imputation Theory Fails. .................................................... 16

        4.  Balancing Of Inferences Strongly Favors Dismissal. ........................... 18

    C.  Plaintiffs Fail To Plead Loss Causation. ...................................................... 18

CONCLUSION ........................................................................................................ 20

APPENDIX A: GLOSSARY .................................................................................... A-1

i

## TABLE OF AUTHORITIES

**Cases**

*Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*,
    538 F. App'x 19 (2d Cir. 2013) ................................................................. 8

*Berkovich v. Hicks,* 922 F.2d 1018 (2d Cir. 1991) ....................................... 13

*Bonine v. Guccione*,
    No. 21CV955, 2022 WL 102073 (2d Cir. Jan. 11, 2022) ...................... 5, 14

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
    866 F. Supp. 2d 223 (S.D.N.Y. 2012) ................................................... 11

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996) ................................................................. 15

*EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*,
    246 F. Supp. 3d 52 (D.D.C. 2017) ........................................................ 11

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc*.,
    343 F.3d 189 (2d Cir. 2003) ................................................................. 19

*Fin. Guar. Ins. Co. v. Putnam Advisory Co. LLC*,
    783 F.3d 395 (2d Cir. 2015) ................................................................. 19

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015) ................................................................. 18

*Garnett v. RLX Tech. Inc.*,
    No. 21CV5125, 2022 WL 4632323 (S.D.N.Y. Sep. 30, 2022)................. 12

*Goplen v. 51job, Inc.*,
    453 F. Supp. 2d 759 (S.D.N.Y. 2006) ..................................................... 5

*In re Aphria*, *Inc., Sec. Litig.*,
    No. 18CV11376, 2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)........ 16, 17

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................... 15

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015) ..................................................... 12

*In re Bristol Myers Squibb Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008) ................................................... 20

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*,
No. 14CV4471, 2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) .................................................. 10

*In re Ehang Holdings Ltd. Sec. Litig.*,
No. 21CIV1392, 2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022) ........................................... 20

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) .................................................................................. 11

*In re Hardinge, Inc.*,
696 F. Supp. 2d 309 (W.D.N.Y. 2010) .................................................................................. 3

*In re Ideanomics, Inc., Sec. Litig.*,
No. 20CV4944, 2022 WL 784812 (S.D.N.Y. Mar. 15, 2022) ....................................... 4, 15, 18

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017) .................................................................................. 11

*In re JPMorgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................................................................................. 17

*In re Merrill Lynch Auction Rate Sec. Litig.*,
851 F. Supp. 2d 512 (S.D.N.Y. 2012) ............................................................................. 16, 18

*In re Moody's Corp. Sec. Litig.*,
274 F.R.D. 480 (S.D.N.Y. 2011) ..................................................................................... 17, 20

*In re Mylan N.V. Sec. Litig.*,
No. 16CV7926, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ........................................... 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ................................................................................................ 20

*In re Pretium Res. Inc. Sec. Litig.*,
256 F. Supp. 3d 459 (S.D.N.Y. 2017) .................................................................................. 16

*In re Progress Energy, Inc. Sec. Litig.*,
371 F. Supp. 2d 548 (S.D.N.Y. 2005) .................................................................................. 6

*In re Qudian Inc. Sec. Litig.*,
No. 17CV9741, 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019)............................................. 7

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015) .................................................................................... 17

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021) ................................................................................................ 9

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................. 17

*In re Travelzoo Inc. Sec. Litig.*,
  No. 11CV5531, 2013 WL 1287342 (S.D.N.Y. Mar. 29, 2013) ................................ 5

*In re Virtus Inv. Partners, Inc.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016) ........................................................... 12, 13

*Janbay v. Canadian Solar, Inc.*,
  No. 10CIV4430, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ............................ 20

*Johnson v. City of New York*,
  No. 15CV8195, 2017 WL 2312924 (S.D.N.Y. May 26, 2017) ............................... 12

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ............................................................................. 14

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  No. 22CV2854, 2022 WL 2114628 (S.D.N.Y. June 13, 2022) .............................. 15

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  No. 15CV04003, 2016 WL 6609210 (C.D. Cal. May 10, 2016) .............................. 7

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp.*,
  No. 11CV398, 2013 WL 4405538 (S.D.N.Y. Aug. 2, 2013) ................................... 9

*Lipow v. Netl UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ................................................................ 16

*Liu v. Intercept Pharm., Inc.*,
  No. 17CV7371, 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ........................ 13, 17

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) .......................................................................... 5, 19

*Marsden v. Select Med. Corp.*,
  No. 04CV4020, 2007 WL 518556 (E.D. Pa. Feb. 12, 2007) ........................... 18, 19

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ........................................................................ 20

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d. Cir. 2014) .............................................................................. 4

*Monroe Cty. Emples. Ret. Sys. v. YPF Sociedad Anonima*,
  15 F. Supp. 3d 336 (S.D.N.Y. 2014) ................................................................. 19

*Ontario Teachers' Pension Plan Board v. Teva Pharm. Indus. Ltd.*,
    432 F. Supp. 3d 131 (D. Conn. 2019) ........................................................................ 16

*Patel v. L-3 Commc'ns Holdings Inc*.,
    No. 14CV6038, 2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) .................................. 5

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    No. 15CV7199, 2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) .................................... 11

*Press v. Chem. Inv. Servs. Corp.*,
    988 F. Supp. 375 (S.D.N.Y. 1997) ........................................................................... 15

*Rudani v. Ideanomics, Inc.*,
    No. 19CV6741, 2020 WL 5770356 (S.D.N.Y. Sep. 25, 2020) ................................ 18

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009) ....................................................................................... 15

*Schiro v. Cemex*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................ 12, 16

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d Cir. 1978) ....................................................................................... 6

*Stein v. Tangoe, Inc.*,
    No. 13CV00286, 2014 WL 12767210 (D. Conn. Sept. 30, 2014) ........................... 13

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017 (2d Cir. 1987) ..................................................................................... 9

*Thomas v. Shiloh Indus., Inc.*,
    No. 15CV7449, 2017 WL 2937620 (S.D.N.Y. July 7, 2017) .................................. 17

*Turner v. MagicJack VocalTec, Ltd.*,
    No. 13CV0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) .................................... 13

*Uddoh v. United Healthcare*,
    254 F. Supp. 3d 424 (E.D.N.Y. 2017) ........................................................................ 3

*Van Alen v. Dominick & Dominick, Inc.*,
    441 F. Supp. 389 (S.D.N.Y. 1976) ........................................................................... 17

**Statutes and Rules**

15 U.S.C. § 78u–4(b)(2)(A) ............................................................................................... 15

## PRELIMINARY STATEMENT

Plaintiffs seek to hold the Alibaba Defendants[1] liable because Alibaba, its affiliate Ant, and many other Chinese technology companies faced complex regulatory challenges in late 2020.   But exposure to PRC regulatory scrutiny is not tantamount to securities fraud.   This is particularly so where Alibaba proactively disclosed the antitrust risks it was facing, and the vast majority of Plaintiffs' allegations rely on hindsight-driven characterizations of information that was publicly available during the putative class period.   While Plaintiffs' opposition brief (ECF No. 74, the "Opposition" or "A-Opp.") employs vague and shifting theories in an attempt to distract from the Complaint's fundamental pleading flaws, a straightforward review of Alibaba's disclosures and contemporaneous public information and the application of well-settled securities pleading rules demonstrate that the Complaint should be dismissed.

**The Ant IPO Claim:**   The Complaint claimed that Alibaba's Form 6-K filings failed to disclose "risks relating to the obfuscation of Ant's ownership structure."   Unable to defend this theory, Plaintiffs have now abandoned it and instead claim that Alibaba failed to disclose Ant's supposed violations of the *FHC Rules*.   This new theory was not pleaded and thus cannot sustain the Complaint.   Moreover, it suffers from the same defects as Plaintiffs' prior theory, including a failure to allege that Alibaba had any duty to disclose the purportedly omitted information.   Plaintiffs take the position that by simply disclosing that Ant was undertaking an IPO, Alibaba was obligated to disclose all risks facing Ant's business.   This is not the law.

Plaintiffs also present no coherent theory of scienter.   Instead, Plaintiffs ask this Court to infer that Alibaba knew Ant faced massive, undisclosed regulatory difficulties that would materially harm its business and valuation, but nevertheless committed to **buy** $7.5 billion worth

---

[1]   Capitalized terms not defined in this brief have the same meanings as in the Alibaba Defendants' and Mr. Ma's motions to dismiss ("A-MTD" and "M-MTD," respectively).   For the Court's convenience, a list of defined terms used in this brief is included as Appendix A.

of Ant stock.    This inference is neither cogent nor as strong as competing non-fraud inferences.

**The Antitrust Claim:**    The Antitrust Claim is premised on two conclusory omission allegations that cannot withstand close scrutiny.    ***First***, Alibaba allegedly concealed that, at an industry-wide meeting in November 2019, the SAMR found Alibaba's exclusivity practices to violate the AML.    This claim, however, is based entirely on ***contemporaneous public news reports*** of the meeting.    Defendants, by definition, cannot have concealed public information. Quite the opposite, Alibaba explicitly disclosed the meeting to its investors.    Plaintiffs mischaracterize the meeting by claiming that it resulted in an actual finding of legal violation. This claim is inconsistent with the allegations in the Complaint and is thus not well-pleaded.

***Second***, Plaintiffs claim that Alibaba failed to disclose its continued use of exclusivity practices during the putative class period.    But the full text of the challenged disclosures, which Plaintiffs conveniently ignore, demonstrates that Alibaba explicitly disclosed its continued use of traffic-for-exclusivity practices—the very practices the SAMR ultimately concluded were prohibited—and warned of their regulatory risks.    The allegations in the Complaint do no contradict, but are instead entirely consistent with, Alibaba's disclosures.

Plaintiffs also fail to plead facts giving rise to a strong inference of scienter.    Instead, the Complaint establishes that Alibaba publicly disclosed and defended its exclusivity practices—in court, before regulators, in the media, and, most importantly, in its SEC disclosures, while warning of related regulatory risk.    These are not the actions of a company bent on defrauding investors.    The only cogent inference is that Alibaba proactively disclosed its antitrust risks while expressing its views about the complex and changing regulatory environment that it faced.

Finally, the very precedents cited in Plaintiffs' Opposition confirm their failure to plead loss causation for the Antitrust Claim, providing yet another ground for dismissal.

## ARGUMENT

I.   **PLAINTIFFS FAIL TO STATE A CLAIM REGARDING THE ANT IPO.**

A.   **Plaintiffs Abandon The Ant Investor Claim Against Alibaba.**

Plaintiffs allege that the Ant IPO was suspended primarily because of the PRC government's discovery that two pre-IPO Ant investors belonged to the so-called Shanghai faction.   *See* AC ¶¶ 205–28.   The Complaint asserts this claim against "Defendants" based on Alibaba's purportedly misleading 6-Ks.   *Id.* ¶¶ 275, 277.   Yet Plaintiffs' Opposition inexplicably argues that this claim is "alleged against Ma only," citing two Complaint paragraphs that relate exclusively to Ant's HKSE Prospectuses, not to Alibaba's 6-Ks.   A-Opp. at 30, n.32. Plaintiffs thus concede that they cannot maintain this claim against the Alibaba Defendants.

B.   **Alibaba Had No Duty To Disclose Ant's Alleged *FHC Rules* Violation.**

In a further about-face, the Opposition asserts for the first time that Alibaba failed to disclose Ant's alleged violation of the *FHC Rules*, which purportedly further contributed to the suspension of the Ant IPO.[2]   *See* A-Opp. at 29–30.   The Complaint, however, only asserts this claim against Defendant Ma.   *See* AC ¶¶ 275, 277; *see also id.* ¶ 20 ("Ma omitted and failed to disclose the specific changes Ant would need to make to . . . compl[y] with," among other things, the *FHC Rules*.).   Plaintiffs are "not permitted to interpose . . . a new legal theory in opposing a motion to dismiss."   *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017).

In any event, Alibaba had no duty to disclose Ant's alleged violation.   Plaintiffs argue that because Alibaba "ma[de] announcements about the IPO and Alibaba's interest therein," it was required to disclose all material risks relating to Ant.   A-Opp. at 30.   This is not the law. *See In re Hardinge, Inc.*, 696 F. Supp. 2d 309, 321 (W.D.N.Y. 2010) (rejecting "plaintiffs'

---

[2]   As discussed in Section II, A, 1 of Mr. Ma's concurrently-filed reply brief ("M-Reply"), the alleged violation is not well-pleaded and is contradicted by the very regulations Ant supposedly violated.

interpretation of the duty to disclose as requiring defendants to disclose all information even tangentially related to the subject matter of a statement.").    Indeed, Plaintiffs' own case law confirms that absent an independent duty of disclosure, which Plaintiffs do not allege, an omission is actionable only if the issuer comments on the "particular topic" of the omission— such as "compliance with [the specific] regulations" at issue.    *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250–51 (2d. Cir. 2014) (finding that the issuer "gave comfort" about environmental regulation compliance).    Here, Alibaba's challenged 6-Ks did not comment on Ant's regulatory compliance in general, or its compliance with the *FHC Rules* in particular. *See* AC ¶¶ 274, 276.    And, instead of giving comfort, Alibaba warned its investors that "there can be no assurance as to if and when the [Ant IPO] will be completed."    Ex. I at Exhibit 99.1.[3] Alibaba's straightforward updates about Ant's IPO plans are thus not actionable.[4]

### C.    Plaintiffs Fail To Plead Scienter In Connection With The Ant IPO.

Plaintiffs' primary scienter argument seeks to "impute[] to Alibaba" the purported scienter of Messrs. Ma, Jing, and Hu—the alleged "Ant individuals responsible for and knowledgeable of its regulatory violations."[5]    A-Opp. at 31–32.    This theory fails for the simple reason that Plaintiffs have not adequately pleaded these individuals' scienter.    *See*, *e.g.*, M-Reply at 20–25.    Indeed, Plaintiffs' argument is premised on the three individuals' alleged attendance of a regulatory meeting in ***November*** 2020 "to discuss Ant's regulatory violations," Opp. at 31–32, which is irrelevant to the individuals' state of mind when Alibaba filed its 6-Ks in

---

[3]    Citations to Ex. A through Ex. XX3 refer to the exhibits to Declaration of Stephen Blake in Support of Defendants' Motions to Dismiss, ECF No. 64.    Citations to Ex. S-A through Ex. S-I refer to the exhibits to the concurrently-filed Supplemental Declaration of Stephen Blake in Support of Defendants' Motions to Dismiss.

[4]    Plaintiffs tellingly make no effort to identify what portion of their block quoted 6-Ks is rendered misleading by Alibaba's supposed omission.    *See* A-Opp. at 29; *see also* Compl.¶¶ 274, 276.    They thus fail to "demonstrate with specificity why and how [the challenged statements] are" misleading.    *In re Ideanomics, Inc., Sec. Litig.*, No. 20CV4944, 2022 WL 784812, at *7 (S.D.N.Y. Mar. 15, 2022) (Daniels, J.).

[5]    Plaintiffs do not seek to impute scienter against Defendants Zhang and Wu on the basis of this theory.    *See* A-Opp. at 31.

*October* 2020.   *See Bonine v. Guccione*, No. 21CV955, 2022 WL 102073, at \*4 (2d Cir. Jan. 11, 2022) (scienter inadequately pleaded "[w]ithout specific allegations to establish Defendants' ***contemporaneous*** awareness" of contrary facts) (emphasis added).   Moreover, Messrs. Ma, Jing, and Hu are not alleged to have taken any action in connection with the challenged 6-Ks. Plaintiffs' argument thus also fails because scienter can only be imputed from individuals with sufficient "connective tissue" to the alleged misstatements.   *Jackson v. Abernathy*, 960 F.3d 94, 98–99 (2d Cir. 2020) (rejecting imputation from individuals who neither "made the challenged misstatement" nor "were involved in the dissemination of the fraud").[6]

Plaintiffs' alternative theory of scienter—that Alibaba was "gambl[ing]" on outrunning PRC regulators who could cripple Ant's business (A-Opp. at 32) both lacks any well-pleaded factual basis and requires the Court to ignore "plausible, nonculpable explanations for the defendant's conduct."   *In re Travelzoo Inc. Sec. Litig.*, No. 11CV5531, 2013 WL 1287342, at \*7 (S.D.N.Y. Mar. 29, 2013) (Daniels, J.).   Plaintiffs seek to portray Ant's IPO—anticipated to be the largest IPO in history—as a pump and dump scheme.   Yet, Alibaba was not dumping its shares; it was ***buying \$7.5 billion*** more.   AC ¶¶ 274, 276.   Why would Alibaba increase its stake in Ant if it knew, as Plaintiffs claim, that the proverbial hammer would inevitably drop on Ant?   The far more compelling inference is that Alibaba believed in Ant's success and the surprising suspension of the Ant IPO resulted from the regulatory developments that were announced the day before the suspension.[7]

---

[6]   Plaintiffs' own cases are in accord.   *See Patel v. L-3 Commc'ns Holdings Inc.*, No. 14CV6038, 2016 WL 1629325, \*15 (S.D.N.Y. Apr. 21, 2016) (scienter imputed from employee "responsible" for alleged misstatement); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177–78 (2d Cir. 2015) (scienter imputed from employee who "knew [the challenged] statement . . . was misleading").

[7]   Plaintiffs make the conclusory assertion that Alibaba was "poised to profit from the IPO" in unspecified ways, even though it was buying Ant shares at an allegedly inflated price, simply because of its significant investment in Ant.   A-Opp. at 32.   This is both unsupported and nonsensical.   Plaintiffs are essentially arguing that scienter should be inferred based on Alibaba's "mere ownership of [Ant] stock," an argument that has been found "insufficient" "[u]nder Second Circuit law."   *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 772 (S.D.N.Y. 2006).

## II.     PLAINTIFFS FAIL TO STATE A CLAIM RELATED TO ANTITRUST RISK.

### A.     **Plaintiffs Fail To Plead Any Actionable Misstatement Or Omission Related to Antitrust Risk.**

Plaintiffs' Antitrust Claim challenges a number of disclosures regarding PRC antitrust regulatory scrutiny, Alibaba's own exclusivity practices, and Alibaba's opinion about those practices' legality.   *See* A-MTD at 15–20.   As the Opposition made clear, the linchpin of Plaintiffs' challenges to all of these disclosures is Alibaba's alleged failure to disclose that (i) "Alibaba was told by the SAMR to stop requiring exclusivity" and (ii) "Alibaba continued to require exclusivity."   A-Opp. at 13; *see also id.* at 18, 28, 35.   These two conclusory, unsupported allegations cannot form the basis of a well-pleaded securities fraud claim.

#### 1.     **Alibaba Fairly Disclosed Regulatory Scrutiny And Risks Related To Its Business Practices.**

Alibaba undisputedly disclosed the November 5, 2019 SAMR administrative guidance meeting (the "Guidance Meeting").   Alibaba further warned investors "the SAMR has indicated its view that certain business arrangements . . . may constitute violation of the [AML]" and stated "its intention of initiating investigations into these arrangements."   20-F at 39; *see also* A-MTD at 7, 9, 17–18.   Plaintiffs, however, claim that Alibaba concealed that the SAMR specifically found Alibaba's traffic-for-exclusivity practices to be illegal at the Guidance Meeting.   *See* A-Opp. at 16–19.   This allegation is not well-pleaded.

***First***, this allegation is entirely based on contemporaneous media reports of the Guidance Meeting.   *See* AC ¶¶ 103–13.   As a result, any purported findings of legal violations would have been public knowledge, of which "the securities laws do not require disclosure."   *In re Progress Energy, Inc. Sec. Litig.*, 371 F. Supp. 2d 548, 552–53 (S.D.N.Y. 2005); *see also Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (no requirement to disclose information

that was "already in the public domain" through media coverage).[8]

**Second**, the extensive media coverage of the Guidance Meeting shows that the SAMR official did not even mention Alibaba in his remarks, let alone announce any legal findings against Alibaba.[9]   *See* AC ¶¶ 103–13.   Instead, the SAMR official reportedly made an oral comment that some unspecified forms of "choose one of two" practices violated the AML.   *Id.* ¶ 103.   This statement must be viewed within the context of the AML Article 17, which prohibits "***an entity with dominant market position***" from "*[r]equiring* a trading party to trade exclusively with itself . . . ***without any justifiable causes***."   *Id.* ¶ 75 (emphases added).   As a result, the SAMR could not find a violation of Article 17 without first resolving a number of then-unsettled legal issues, including how relevant markets and dominant positions should be determined for e-commerce platforms, whether incentivizing exclusivity using traffic resource allocation falls within the scope of Article 17, and, if so, whether the provision of such resources as consideration constitutes a "justifiable cause."   *See* A-MTD at 16.   Indeed, these issues were not officially addressed until the SAMR issued the *Platform Guidelines* a year later on November 10, 2020 and were not determined with respect to Alibaba until after the SAMR

---

[8]   Plaintiffs' cursory argument that "the Chinese coverage of the meeting [did not] reach[] the U.S. market" is legally incorrect.   A-Opp at 19; *see In re Qudian Inc. Sec. Litig.*, No. 17CV9741, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) (no duty to disclose information made public in Chinese newspaper articles); *Knox v. Yingli Green Energy Holding Co. Ltd.*, No. 15CV04003, 2016 WL 6609210, at *7 (C.D. Cal. May 10, 2016) ("[R]easonably sophisticated analysts and investors following a China-based company should have the means with which to locate and analyze Chinese-language news articles just as quickly as it could with English-language news articles.").   In any event, the Guidance Meeting did receive contemporary English-language coverage by Western media.   *See, e.g.*, Exs. S-A (Reuters) at 1–2, S-B (WSJ) at 3.

[9]   The Guidance Meeting was not part of an investigation where legal violations could be determined (such as the investigation that the SAMR initiated in December 2020), but an industry-wide "forum" within the PRC regulatory framework of "administrative guidance."   AC ¶ 103.   Under regulations issued by the SAMR's predecessor, administrative guidance is a type of "voluntar[y]" and "non-compulsory" interaction, where the SAMR acts "to guide citizens, legal persons, and other organizations . . . in voluntarily committing or not committing an act by such non-compulsory means as proposal, tutorship, reminding, persuasion, demonstration, publicity and talk . . . ."   Ex. U at 3; *see also* AC ¶ 102.   Significantly, "[n]o compulsory [measures] may be adopted . . . to force [a party] to accept administrative guidance," and "no heavier administrative penalty may be imposed . . . because [a party] refuses to accept administrative guidance."   Ex. U at 4.   Administrative guidance "may not replace" other administrative procedures, such as rule-making or enforcement.   *Id.*

completed its investigation well after the end of the putative class period.   *See id.* at 10–11.

Equating the SAMR official's general comment to a finding of an Article 17 violation is thus

simply incorrect as a legal and factual matter.   *See Ancile Inv. Co. Ltd. v. Archer Daniels

Midland Co.*, 538 F. App'x 19, 20 (2d Cir. 2013) (summary order) (noting that "trial courts[]

may find and apply foreign law" under Fed. R. Civ. P. 44.1).

### 2.      Alibaba Did Not Mislead Investors About Its Business Practices.

Plaintiffs also claim that Alibaba failed to disclose its continued use of "choose one of

two" practices during the putative class period, rendering its disclosures false and/or misleading.

*See* A-MTD at 18–20; A-Opp. at 14–16.    This assertion is not well-pleaded.

*First*, Alibaba indisputably disclosed the specific "choose one of two" practice that it

deployed during the putative class period—informing investors that its "market approach with

traffic resource allocation" was ongoing, that competitors had "submit[ted] complaints to

regulators" characterizing such practice as illegal under the AML, and that "there can be no

assurance that regulators will not initiate anti-monopoly investigations into" this practice.   AC

¶ 253 (quoting 20-F at 39).    As Plaintiffs concede, "choose one of two" is an overarching term

that encompasses a spectrum of practices including absolute exclusivity—which outright bans

non-exclusive merchants—and traffic-for-exclusivity—which incentivizes exclusive merchants

with more traffic (*e.g.*, higher search result ranking) and correspondingly penalizes non-

exclusive merchants.    A-Opp. at 15 n.15; *see also* AC ¶¶ 5, 89; A-MTD at 5–7.    Alibaba thus

unquestionably disclosed it was continuing to engage in "choose-one-of-two" practices, and

described the very practice that the SAMR ultimately found to be illegal.   *See* SAMR Op. at 10

(finding that Alibaba incentivized exclusivity through allocation of "traffic support").

Rather than grapple with the totality of Alibaba's disclosures, Plaintiffs quibble with the

disclosure of a separate "exclusive partnerships" practice.   *See* A-Opp. at 14.   Plaintiffs claim

that, by characterizing "exclusive partnerships" as a prior practice, Alibaba falsely conveyed that it had stopped using all forms of "choose one of two" practices. *See id.* This claim is squarely contradicted by Alibaba's disclosure of its ongoing traffic-for-exclusivity practice, which immediately precedes the challenged "exclusive partnerships" disclosure yet is not mentioned even once in Plaintiffs' 35-page Opposition. Plaintiffs are not permitted to "cherry pick certain public statements . . . and divorce them from the universe of disclosed information." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) (citation omitted).

Plaintiffs argue that "exclusive partnership," in the abstract, could refer to both absolute exclusion and traffic-for-exclusivity and, as a result, Alibaba's characterization of "exclusive partnership" as a "prior" practice was false and/or misleading. A-Opp. at 14–15. This argument of course ignores Alibaba's ***immediately*** preceding disclosure, which explicitly contrasts the ongoing traffic-for-exclusivity practice with the prior "exclusive partnership" practice, thus indicating that the latter necessarily differs from the former. *See Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (2d Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used. . . ."). Plaintiffs' attempt to "take . . . statements . . . out of context in order for them to appear to be misleading" should be rejected. *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp.*, No. 11CV398, 2013 WL 4405538, at *5 (S.D.N.Y. Aug. 2, 2013) (Daniels, J.).

***Second***, Plaintiffs' alternative argument that Alibaba in fact deployed absolute exclusivity during the putative class period (*see* A-Opp. at 15) is unsupported. Plaintiffs rely on two news articles, the first of which alleges that non-exclusive "[m]erchants . . . face[d] punishment such as reduced marketing resources, decreased search result rankings, and even bans from Alibaba's marketplaces" at some point between September 2010 and December

2020.[10]   Ex. S-C at 3; *see also* AC ¶ 20.   But this article does not specify when Alibaba allegedly banned non-exclusive sellers or suggest that Alibaba banned any non-exclusive merchants during the six-month putative class period, as opposed to during the prior nine-and-half years.   The second article is irrelevant, as it was directed to events that took place in 2019. *See* AC ¶ 94.   Plaintiffs' failure to point to well-pleaded facts alleging Alibaba's deployment of absolute exclusivity *during the class period* is "fatal to their *required showing of contemporaneous falsity*."   *In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*, No. 14CV4471, 2016 WL 922711, at *4 (S.D.N.Y. Mar. 7, 2016) (emphasis added) (granting motion to dismiss because the documents plaintiffs rely upon do not state that the undisclosed events occurred within the class period).   Indeed, these two isolated allegations of absolute exclusivity practiced prior to the class period are entirely consistent with Alibaba's characterization of "exclusive partnerships" as an "alleged prior narrowly deployed" practice.   *See* 20-F at 39.

Plaintiffs also attempt to conflate traffic-based penalties and absolute exclusivity.   *See* A-Opp. at 15–17.   This argument is perplexing, as Plaintiffs apparently recognize that the incentives and penalties associated with the traffic-for-exclusivity practice differ from absolute exclusivity, which by definition requires outright blocking of non-exclusive merchants.   *See id.* at 15 (stating that exclusivity can be enforced through "a host of punitive measures, *up to and including* . . . 'absolute exclusion'") (emphasis in original).   Indeed, as the SAMR found after its extensive investigation, Alibaba used "various incentive and penalty measures" to enforce exclusivity, providing select exclusive merchants with free "traffic support" such as higher search result ranking and penalizing certain non-exclusive merchants with "reduced resource support" such as "search downgrading."   SAMR Op. at 9–11 (emphasis omitted).   But

---

[10]   The article's reference to "December 2021" appears to be an oversight.   *See* Ex. S-C at 5.

nowhere in the SAMR's detailed opinion did it find that Alibaba engaged in absolute exclusivity by blocking non-exclusive merchants, belying Plaintiffs' claim to the contrary.   *See id.*

### 3.   Plaintiffs Fail To State A Claim Based On Alibaba's Statement Of Opinion.

Plaintiffs further challenge Alibaba's disclosure that "we believe that our business practices do not violate anti-monopoly or unfair competition laws." AC ¶¶ 10, 253 (citing 20-F at 39); *see also* A-MTD at 13–14; A-Opp. at 11–14.   Plaintiffs concede that this disclosure "expressed an opinion" that Alibaba actually held.   A-Opp. at 13–14 (admitting that Alibaba "hop[ed] it could convince the SAMR *its* exclusivity practices were justified.") (emphasis in original).   Plaintiffs instead argue that this honestly held belief was nevertheless misleading because Alibaba "concealed the material fact that Alibaba had already been told by the SAMR that 'exclusive trading' practices were illegal under those laws and to cease using them, but Alibaba continued to do it anyway."   A-Opp. at 11–12 (emphasis omitted).   As explained above, these omission allegations are not well-pleaded.   *See supra* at 6.   Plaintiffs' challenge to Alibaba's statement of opinion thus fails.[11]

Moreover, Alibaba's stated opinion was not unqualified.   It was immediately followed by a stern warning that "there can be no assurance that regulators will not initiate anti-monopoly investigations against us."[12]   20-F at 39.   Plaintiffs boldly assert that this warning "makes the disclosure more misleading."   A-Opp. at 13 (emphasis omitted).   This illogical argument is

---

[11]   Plaintiffs string-cite to a number of cases to support their argument, but these cases involved affirmative confirmations of compliance rather than statements of opinion, and are thus inapposite.   *See, e.g., In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 612 (S.D.N.Y. 2017) ("emphasi[s] [of] ITG's compliance with applicable regulatory requirements"); *Pirnik v. Fiat Chrysler Autos., N.V.*, No. 15CV7199, 2016 WL 5818590, at *5 (S.D.N.Y. Oct. 5, 2016) (representation that the defendants were "substantially in compliance with the relevant global regulatory requirements affecting our facilities and products"); *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 229 (S.D.N.Y. 2012) (representation that the company "has been and is in compliance" with environmental laws); *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 369 (E.D.N.Y. 2013) (representation that the defendants were "in compliance with . . . standards and regulations"); *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 86 (D.D.C. 2017) (similar assurance of compliance).

[12]   Alibaba's statement of opinion must also be read in light of the various disclosures of its exclusivity practices and associated regulatory risks.   *See supra* at 6–8.

belied by the sole case on which Plaintiffs rely.    In *Bioscrip*, the issuer's disclosure that there

could be "no assurance that we will not receive subpoenas" was held misleading because, at that

time, the issuer had already received a subpoena.    *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d

711, 727 (S.D.N.Y. 2015).    Here, the SAMR undisputedly initiated its investigation against

Alibaba in December 2020, months *after* Alibaba's disclosure.    AC ¶ 253.    This disclosure

thus "fairly alerted investors to the existing regulatory strictures in China. . . , the prospect that

heightened regulation . . . would be undertaken, and the attendant risks to investors."    *Garnett v.*

*RLX Tech. Inc.*, No. 21CV5125, 2022 WL 4632323, at *18–19 (S.D.N.Y. Sep. 30, 2022)

(granting motion to dismiss based in part on a similar "no assurance" warning).

### 4.    Other Challenged Disclosures Are Not Actionable.

Plaintiffs claim that four additional disclosures Alibaba made regarding "attract[ion] and

[retention]" of "consumers and merchants," "customer management revenue," "domestic core

commerce business," and "solid performance of our core commerce" put the source of Alibaba's

success at issue, giving rise to a duty to disclose Alibaba's exclusivity practices, which allegedly

contributed to its success.    A-Opp. at 19 (citing AC ¶¶ 256, 261, 265).[13]    This theory fails

because Alibaba did disclose its exclusivity practices.    *See supra* at 8–11.    Also, these

statements do not give rise to a duty to disclose Alibaba's exclusivity practices, as they either are

"too tenuously connected to trigger a duty to disclose the alleged wrongdoing," *In re Virtus Inv.*

*Partners, Inc.*, 195 F. Supp. 3d 528, 537 (S.D.N.Y. 2016), or "attributed the Company's growth

to broad trends and corporate strengths, without pointing to any specific factors or sources of

revenue," *Schiro v. Cemex*, 396 F. Supp. 3d 283, 297 (S.D.N.Y. 2019).

---

[13]    While the Complaint challenges certain additional disclosures, *see* AC ¶¶ 258, 263, 271–72, there is no coherent
explanation as to how the purported "choose one of two" practices rendered these general statements false or
misleading.    *See* A-MTD at 20 n.13.    Plaintiffs' Opposition "fail[s] to address Defendants' arguments" regarding
these disclosures; as a result, any claims based on these disclosures are "deemed withdrawn or dismissed as
abandoned."    *Johnson v. City of New York*, No. 15CV8195, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017).

Moreover, while Plaintiffs contend that a duty to disclose could extend to a partial source of Alibaba's success, A-Opp. at 19–20, they do not dispute that only "a *material* source" need be disclosed.   *Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d at 536 (emphasis added).   Here, documents incorporated into the Complaint indicate that Alibaba's exclusivity practices were ***not*** a material source of its success.   *See*, *e.g.*, Ex. S-C at 3 ("'[Exclusivity is] a crucial measure in the early development of online marketplaces, but not so important for a business as big as Alibaba[].''); Ex. S-D at 11 (noting that, without exclusivity practices, Alibaba is still supported by "its strong fundamentals stemming from its market leadership," "positive macroeconomic environment," and " integration across key vertical business segments.").[14]

**B.**     **Plaintiffs Fail To Plead A Strong Inference Of Scienter.**

        **1.**     **Plaintiffs Effectively Concede That They Have Not Pleaded A Coherent Motive and Opportunity Theory.**

Defendants' opening brief established, and Plaintiffs' Opposition essentially concedes, that the Alibaba Defendants lacked a concrete motive to commit fraud.   *See* A-MTD at 21; A-Opp. at 27 (arguing "motive is not required to allege scienter").   In particular, Plaintiffs appear to have abandoned their illogical argument that Alibaba was motivated to commit fraud in 2020 to ensure the success of its 2019 secondary listing in Hong Kong.   *See* AC ¶ 376; A-MTD at 21. Plaintiffs also do not allege that either Mr. Zhang or Ms. Wu sold any Alibaba stock during the putative class period, which "rebuts an inference of scienter."   *Turner v. MagicJack VocalTec,*

---

[14]   Plaintiffs also argue that Alibaba had an affirmative duty, pursuant to Item 303 and Form 20-F Item 5(D), to disclose its continued deployment of exclusivity practices during the putative class period.   *See* A-Opp. at 20–21. This claim fails for the same reasons discussed above.   *See supra* at 6–11.

The Opposition also references a prior, unrelated litigation against the Alibaba Defendants to support Plaintiffs' falsity and scienter arguments.   *See* A-Opp. at 20, 25–26.   Plaintiffs' attempt to use Defendants' alleged wrongdoings in an unrelated action "to show the defendant's propensity to commit the act in question" is impermissible.   *Stein v. Tangoe, Inc.*, No. 13CV00286, 2014 WL 12767210, at *20 (D. Conn. Sept. 30, 2014) (citing *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) and Fed. R. Evid. 404(b)).   Similarly, "involv[ement] in a prior settlement based on allegations of securities fraud does not support an inference that defendants acted recklessly in the present matter."   *Liu v. Intercept Pharm., Inc.*, No. 17CV7371, 2020 WL 1489831, at *19 (S.D.N.Y. Mar. 26, 2020).

*Ltd.*, No. 13CV0448, 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2014).

### 2.     The Complaint Lacks Any Strong Circumstantial Evidence Of Conscious Misconduct Or Recklessness.

The Opposition instead argues that Alibaba "disregard[ed] . . . the SAMR's warnings,"

establishing scienter.    A-Opp. at 22.    Where, as here, "motive is not apparent . . . the strength

of the circumstantial allegations must be correspondingly greater."    *Kalnit v. Eichler*, 264 F.3d

131, 142 (2d Cir. 2001) (citation omitted).    Plaintiffs fail to meet this burden.

*First*, Plaintiffs argue that a "Commitment Letter" that Alibaba allegedly signed in July

2020 "demonstrated Alibaba's understanding that it could not require exclusivity" in violation of

the AML.    A-Opp. at 22.    Alibaba's commitment to abide by the law, however, does not give

rise to a strong inference of scienter, because, at that time, Alibaba undisputedly believed that its

traffic-for-exclusivity practice fell outside the scope of the AML's prohibition of "requiring"

exclusivity.    *See* A-MTD at 22; A-Opp. at 13–14 (admitting that Alibaba "hop[ed] it could

convince the SAMR" to accept its statutory interpretation).    Indeed, the Complaint alleges that

Alibaba consistently defended its practices in court, AC ¶¶ 91–97, before regulators, *id.* ¶¶ 110–

12, in the media, *id.* ¶ 98, and in its SEC disclosures, *id.* ¶ 253.    The SAMR eventually

disagreed, extending the AML's prohibition to traffic-based exclusivity practices, *see* AC ¶ 123;

Ex. X, Art. 15, and finding Alibaba in violation, *see* AC ¶¶ 134–142.    But those developments

did not occur until months after the alleged signing of the "Commitment Letter."    *See* AC

¶¶ 123, 134.    Plaintiffs are not permitted to "establish Defendants' *contemporaneous*

awareness" of falsity through hindsight pleading.    *Bonine*, 2022 WL 102073, at *4 (emphasis

added).    Alibaba's undisputed good-faith belief in the legality of its practice and, by extension,

the accuracy of its disclosures, undercuts any assertion of conscious misconduct.

*Second*, Plaintiffs fail to allege scienter based on recklessness, which requires "a state of

mind approximating actual intent, and not merely a heightened form of negligence." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted) (emphasis omitted); *see also Ideanomics*, 2022 WL 784812, at *10 ("Recklessness in the scienter context . . . cannot be merely enhanced negligence.") (citations omitted). "To qualify as reckless, defendants' conduct must have been "highly unreasonable" and representative of "an extreme departure from the standards of ordinary care," such as "[a]n egregious refusal to see the obvious." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) (citation omitted).

At the time of the challenged disclosures, no court or regulator had interpreted the AML to prohibit traffic-based exclusivity practices. *See* A-MTD at 7, 22. The SAMR did not initiate its investigation against Alibaba until the end of the putative class period and did not rule against Alibaba until later. *See id.* at 10. This case thus differs from those cited by Plaintiffs, which involved undisclosed existing, formal adverse findings. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 501 (S.D.N.Y. 2011) (SEC memorandum); *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22CV2854, 2022 WL 2114628, at *11 (S.D.N.Y. June 13, 2022) (government investigation and settlement). At most, Plaintiffs argue that Alibaba, in hindsight, exercised poor legal judgment, which is far from "an extreme departure from the standards of ordinary care." *Chill*, 101 F.3d at 269.[15]

More importantly, Alibaba proactively disclosed the well-publicized uncertainties over "choose one of two" and specifically cautioned investors that "there can be no assurance that regulators will not initiate anti-monopoly investigations into specific business practices we have

---

[15] Indeed, Plaintiffs erroneously focus on whether, in hindsight, Alibaba's "gamble of defying the SAMR" was, in and of itself, a reckless decision. A-Opp. at 27. But the recklessness inquiry must center, not on Alibaba's state of mind under the AML, but on whether Alibaba was reckless as to the "act or omission alleged to [have] violate[d]" U.S. securities laws. 15 U.S.C. § 78u–4(b)(2)(A); *see also Press v. Chem. Inv. Servs. Corp.*, 988 F. Supp. 375, 390 n.20 (S.D.N.Y. 1997) ("To allege conscious misbehavior or recklessness, the complaint must link a misleading statement to facts creating an inference that the speaker had some basis for knowing that the statement was misleading.").

adopted." *See supra* at 6–8.   Its candid disclosures on this issue do not "meet[] the

substantially higher bar set for recklessness allegations."   *In re Merrill Lynch Auction Rate Sec.*

*Litig.*, 851 F. Supp. 2d 512, 530 (S.D.N.Y. 2012) (rejecting recklessness allegation because

defendant "made some disclosures relating to the type of conduct" at issue, even if such

disclosures "may have been less robust than they could have been"); *see also In re Pretium Res.*

*Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 481 (S.D.N.Y. 2017) (finding that although defendants

made certain inaccurate statements, their proactive disclosure on the subject matter

"demonstrate[d] candor, care, and prudence, not recklessness").[16]

### 3.   Plaintiffs' Imputation Theory Fails.

Plaintiffs also argue that the scienter of non-party Alibaba employees Ms. Wen and Mr.

Wang should be imputed to Alibaba.   A-Opp. at 23–24.   This argument fails for two reasons.

*First*, Plaintiffs fail to plead a strong inference of scienter for either Ms. Wen or Mr.

Wang and there is thus no scienter to impute.   *See Schiro v. Cemex*, 396 F. Supp. 3d at 300–01

("In order to allege that a corporation acted with scienter, a plaintiff must plead with particularity

facts giving rise to a strong inference that 'someone whose intent could be imputed to the

corporation acted with the requisite scienter.'") (citation omitted).   Plaintiffs' only allegations

regarding these two individuals is that they publicly defended the legality of Alibaba's

---

[16]   With respect to Individual Defendants Zhang and Wu, Plaintiffs insinuate—for the first time in the
Opposition—that scienter should be assumed "given their positions at" Alibaba.   A-Opp. at 25.   The very case on
which Plaintiffs rely, however, warned that "Plaintiff 'must do more than allege that the [individual defendants] had
or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level
positions,' establish scienter."   *In re Aphria, Inc., Sec. Litig.,* No. 18CV11376, 2020 WL 5819548, *9 (S.D.N.Y.
Sept. 30, 2020) (quoting *Lipow v. Netl UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015)).   Although
Plaintiffs claim that the omitted information was reflected in certain "cooperation agreements," "meeting briefs,"
"development plans," and "work summaries," they do not allege that Mr. Zhang and Ms. Wu read, or were provided
access to, these documents.   *See* A-Opp. at 25.   This is in stark contrast to Plaintiffs' cited cases, where the
individual defendants were "notified" of the DOJ investigation at issue "by a subpoena," *In re Mylan N.V. Sec.*
*Litig.*, No. 16CV7926, 2018 WL 1595985, *12 (S.D.N.Y. Mar. 28, 2018), or that they "review[ed]," "approved,"
and "circulated" "reports" and "work plans" regarding the specific issue they failed to disclose, *Ontario Teachers'*
*Pension Plan Board v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 171–72 (D. Conn. 2019).

exclusivity practices.   A-Opp. at 24–25.   The Complaint did "not plead a factual basis on which the Court can infer that [Ms. Wen and Mr. Wang] did not believe their statements" and thus "fail[ed] to adequately plead scienter."   *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534–35 (S.D.N.Y. 2015); *see also Van Alen v. Dominick & Dominick, Inc.*, 441 F. Supp. 389, 402 (S.D.N.Y. 1976) (finding no scienter where defendant held "good faith belief" in actions).[17]

   ***Second***, Plaintiffs fail to show that scienter can be imputed from Ms. Wen or Mr. Wang to Alibaba.   In the Second Circuit, scienter can be imputed only where plaintiffs show sufficient "connective tissue" between employees with scienter and the alleged misstatements.   *Jackson*, 960 F.3d at 98–99.   Ms. Wen or Mr. Wang are not alleged to have "made the challenged misstatement" or to have been "involved in the dissemination of the fraud."   *Id.* at 98.   As a result, the AC provides "no connective tissue between those [individuals] and the alleged misstatements," dooming Plaintiffs' imputation theory.   *Id.* at 99; *see also Liu v. Intercept Pharm., Inc.*, No. 17CV7371, 2020 WL 5441345, at *10 (S.D.N.Y. Sept. 9, 2020) (rejecting scienter allegations where there were "no allegations connecting the relevant employees to the alleged misstatements," leaving the court to "guess what role those employees played in crafting or reviewing the challenged statements and whether it would be otherwise fair to charge the Corporate Defendants with their knowledge.").[18]

---

[17]   Plaintiffs' claim that Ms. Wen's and Ms. Wang's scienter should also be imputed to Individual Defendants Zhang and Wu (*see* A-Opp. at 24–26)—a theory that is not pleaded in the Complaint—fails for the same reason. Also, "[s]imply arguing that specific high level employees must have known what was taking place . . . because certain subordinate employees were later implicated in the fraud is insufficient to give rise to [a] strong inference of scienter. . . ."   *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 305 (S.D.N.Y. 2008) (citation omitted).

[18]   The Opposition cites a number of pre-*Jackson* district court cases.   *See* A-Opp. at 24 & n.25.   Those cases do not support Plaintiffs' imputation argument.   *See, e.g., In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 516 (S.D.N.Y. 2009) (imputing scienter where "specific statements" indicated that "top officials" knew challenged statements were misleading); *Thomas v. Shiloh Indus., Inc.*, No. 15CV7449, 2017 WL 2937620, at *3 (S.D.N.Y. July 7, 2017) (declining to impute scienter); *In re Aphria Sec. Litig.*, 2020 WL 5819548, at *9 (imputing scienter from individuals involved in dissemination of fraud); *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 605 (S.D.N.Y. 2005) (same).

### 4.       Balancing Of Inferences Strongly Favors Dismissal.

The Complaint alleges that Alibaba engaged in business practices that raised antitrust concerns.   *See* AC ¶¶ 88–89.   It also alleges that Alibaba disagreed with regulators on the legality of these practices.   *See id.* ¶¶ 91–93, 134.   It further alleges that the SAMR eventually investigated and ruled against Alibaba.   *See id.* ¶¶ 133–36.   None of these facts are in dispute. But the Complaint includes no well-pleaded factual allegations that Alibaba intentionally or with conscious recklessness hid any of these issues from its investors.   To the contrary, Alibaba disclosed the very risks that came to fruition.   *See supra* at 6–8.   Plaintiffs quibble over the robustness of these disclosures, but Alibaba's proactive disclosures of these risks "are not the actions of a company bent on deceiving investors" and thus strongly indicate a lack of scienter. *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 243 (1st Cir. 2015); *see also In re Merrill Lynch*, 851 F. Supp. 2d at 530 (finding no scienter where company made "some disclosures relating to the type of conduct alleged here" even if they "may have been less robust than they could have been").   The far more cogent inference is that Defendants acted with non-fraudulent and non-reckless intent since they diligently disclosed risks in the face of an uncertain and rapidly changing regulatory environment.   *See* A-MTD at 22–23.[19]

### C.       Plaintiffs Fail To Plead Loss Causation.

***November 10, 2020 Stock Drop:***   Relying on *Lapin* and *Marsden*, Plaintiffs contend that the November 10, 2020 Platform Guidelines, a new regulation affecting the entire industry, "constituted a partial materialization of the undisclosed risk of Alibaba continuing to use

---

[19]   Defendants' opening brief establishes that absent "'allegations that independently give rise to a strong inference of scienter,' Plaintiffs 'cannot rely on the core operations doctrine to establish scienter.'"   A-MTD at 22 n.15 (quoting *Ideanomics*, 2022 WL 784812, at *11).   In other words, "[t]he 'core operations' doctrine only bolsters the strength of the inference of scienter," if at all, "when plaintiffs have already adequately alleged facts indicating that defendants might have known their statements were false." *Rudani v. Ideanomics, Inc.,* No. 19CV6741, 2020 WL 5770356, at *8 (S.D.N.Y. Sep. 25, 2020) (Daniels, J.).   Plaintiffs now tacitly admit the same.   *See* A-Opp. at 26 ("Plaintiffs do not 'rely' on the core operations doctrine for scienter.").

improper exclusivity practices."   A-Opp. at 34.   *Lapin* is inapposite, as it involved the announcement of enforcement actions, not regulations.   *See Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 243 (S.D.N.Y. 2006).   Plaintiffs mischaracterize *Marsden*, which found that a new regulation established loss causation only with respect to the defendants' misstatement of the likelihood of adoption of such new regulation (not present in this case) and not with respect to their purported misrepresentation of non-compliant practices, because that new regulation did not reveal anything about the defendant's "past . . . practices."   *Marsden v. Select Med. Corp.*, No. 04CV4020, 2007 WL 518556, at *4 (E.D. Pa. Feb. 12, 2007).[20]   The *Platform Guidelines* similarly did not reveal anything about Alibaba's exclusivity practices. *See* A-MTD at 24.   The promulgation thereof was thus not a materialization of any undisclosed risk, but rather reflected the market's calibrated reaction to the new regulation's potential impact on Alibaba and the industry.   Because Alibaba had warned investors about antitrust risks related to its traffic-based exclusivity practices, the market correctly reacted to the new rules as a manifestation of a disclosed risk.   *See Monroe Cty. Emples. Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014) (no loss causation where alleged corrective disclosure "represented the materialization of a known risk, rather than the disclosure of a concealed one").

   ***December 24, 2020 Stock Drop:***   Plaintiffs contend that the announcement of the SAMR investigation constituted a corrective disclosures because it revealed that "Alibaba was continuing to use the offending practices."   A-Opp. at 35.   As an initial matter, Alibaba had disclosed its continued use of the traffic-for-exclusivity practice and had warned investors that it could be investigated.   *See supra* at 6–8.   As a result, the announcement "did not reveal 'some

---

[20]   Plaintiffs' other cited cases are likewise inapposite, because in those cases the stock price drop did not follow the announcement of a new regulation.   *See Fin. Guar. Ins. Co. v. Putnam Advisory Co. LLC*, 783 F.3d 395, 404 (2d Cir. 2015) (default of collateralized debt obligation); *Loreley*, 797 F.3d at 181–82, 187–88 (same); *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) (pump and dump scheme).

then-undisclosed fact with regard to the specific misrepresentation alleged in the complaint" and was thus "not a corrective disclosure." *In re Ehang Holdings Ltd. Sec. Litig.*, No. 21CIV1392, 2022 WL 17718546 at *12 (S.D.N.Y. Dec. 15, 2022) (Daniels, J.) (emphasis omitted) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010)).

Moreover, the investigation announcement did not, as Plaintiffs claim, reveal that Alibaba was violating the law—it just revealed an investigation.   There is significant authority holding that disclosure of "an investigation . . . without more, does not necessarily reveal that there are any problems . . . since an investigation could turn up nothing of consequence." *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011); *see also Janbay v. Canadian Solar, Inc.*, No. 10CIV4430, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012) ("The announcement of an SEC subpoena or an internal investigation is itself insufficient to plead loss causation."); *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) ("[T]he commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure" because "the investigation can be seen to portend an added risk of future corrective action.") (emphasis omitted).[21]   Plaintiffs thus fail to plead loss causation for the Antitrust Claim.

## CONCLUSION

For the reasons stated above, the Alibaba Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

DATED:   December 21, 2022          SIMPSON THACHER & BARTLETT LLP

                                 By: /s/   *Stephen P. Blake*
                                     Jonathan K. Youngwood
                                     jyoungwood@stblaw.com

---

[21]   *Bristol Myers*, relied on by Plaintiffs, is distinguishable.   The court in that case found the investigation announcement to be the "tip of the iceberg" and a partial corrective disclosure, because the stock price dropped further when the underlying conduct was subsequently revealed to the public.   *In re Bristol Myers Squibb Sec. Litig.*, 586 F. Supp. 2d 148, 165 (S.D.N.Y. 2008).   Alibaba's stock price rebounded upon the conclusion of the investigation, showing that the initial stock price drop was in response to, not any corrective disclosure, but the SAMR's decision to initiate the investigation, a risk that was well-disclosed and well-known.   *See* A-MTD at 12.

425 Lexington Avenue
New York, New York    10017
Telephone: (212) 455-3539
Facsimile: (212) 455-2502

James G. Kreissman
jkreissman@stblaw.com
Stephen P. Blake
sblake@stblaw.com
Bo Bryan Jin (*pro hac vice*)
Bryan.jin@stblaw.com
2475 Hanover Street
Palo Alto, California    94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Counsel for Defendants Alibaba Group Holding
Limited, Daniel Yong Zhang, Maggie Wei Wu,
and Jack Yun Ma*

**APPENDIX A: GLOSSARY**

| Term | Definition |
| --- | --- |
| 20-F | Alibaba Group Holding Limited's annual report for fiscal year 2020, filed with the SEC on Form 20-F on July 9, 2020 (Excerpts in ECF No. 64-1) |
| AC (or the "Complaint") | Amended Consolidated Class Action Complaint (ECF No. 55) |
| Alibaba (or the "Company") | Defendant Alibaba Group Holding Limited |
| Alibaba Defendants | Alibaba, its CEO Daniel Yong Zhang, and its former CFO Maggie Wei Wu |
| AML | The PRC Anti-Monopoly Law |
| A-MTD | Memorandum of Law in Support of Alibaba Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 61) |
| A-Opp. (or "Opposition") | Plaintiffs' Opposition Brief to Alibaba Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 74) |
| Ant | Ant Group Co. Ltd. |
| Ant IPO | Ant's planned initial public offering on the Hong Kong Stock Exchange and the Shanghai Stock Exchange |
| Ant IPO Claim | Plaintiffs' claim that the Alibaba Defendants failed to disclose PRC regulatory risks that led to an abrupt suspension of the planned Ant IPO. |
| *FHC Rules* | *Decision of the State Council on Implementing Access Administration of Financial Holding Companies* (issued by the State Council) and the companion *Interim Measures for the Supervision and Administration of Financial Holding Companies* (issued by the People's Bank of China) both dated September 11, 2020 |
| HKSE | Hong Kong Stock Exchange |
| HKSE Prospectuses | Ant's draft and final IPO prospectuses filed with the HKSE |
| M-MTD | Memorandum of Law in Support of Jack Yun Ma's Motion to Dismiss Plaintiffs' Complaint (ECF No. 63) |
| M-Opp. | Plaintiffs' Opposition Brief to Jack Yun Ma's Motion to Dismiss Plaintiffs' Complaint (ECF No. 75) |
| M-Reply | Jack Yun Ma's Reply in Support of Motion to Dismiss Plaintiffs' Complaint (ECF No. 78) |
| PRC | People's Republic of China |
| SAMR | PRC regulator the State Administration for Market Regulation |

| Term | Definition |
| --- | --- |
| SAMR Op. | SAMR Letter of Administrative Penalties dated April 10, 2021 (ECF No. 55-8) |