# Exhibit 11

# Anti-Monopoly Guidelines for the Sector of Platform Economy

## (Draft for Comments)

### Chapter 1 General Provisions

Article 1 Purpose and basis of these Guidelines

With a view to preventing and stopping the monopolistic behavior in the sector of platform economy, reducing the costs of administrative law enforcement and operator compliance, strengthening and improving anti-monopoly supervision in the platform economy, protecting fair market competition, safeguarding consumer interests and social public interests, and promoting the sustainable and healthy development of the platform economy, these Guidelines are formulated in accordance with the Anti-Monopoly Law of the People's Republic of China (hereinafter referred to as the "Anti-Monopoly Law").

Article 2 Basic principles

Anti-monopoly regulation in the sector of platform economy is based on the following principles:

**(1) Creating a fair competition order.** The anti-monopoly law enforcement agencies shall strive to prevent and stop monopolistic acts that exclude and restrict competition, maintain a fair, competitive, open, and inclusive development environment in the sector of platform economy, reduce barriers to market entry, promote more entities to enter the market, participate in competition fairly and orderly, and stimulate market vitality.

**(2) Strengthening supervision in a scientific and effective manner.** The basic system, regulatory principles and analysis framework determined in the Anti-monopoly Law and relevant regulations, rules and guidelines apply to all market subjects in the sector of platform economy. The anti-monopoly law enforcement agencies shall intensify competition analysis and legal argumentation in light of the development status, development pattern and its own characteristics and based on the specific circumstances of cases, continuously strengthen and improve anti-monopoly regulation and ensure further pertinent and scientific anti-monopoly law enforcement.

**(3) Stimulating the vitality in innovation and creation.** It is imperative to

maintain fair competition in the sector of platform economy, guide and stimulate platform operators to put more resources in technological innovation, quality and service improvement and mode innovation, prevent and stop the acts of excluding and restricting competition lest such acts restrain the innovative development and economic vitality of platform economy, effectively stimulate the motivation of the whole society for innovation and creation and build the new advantages and new functions for economic and social development.

**(4) Promoting the healthy development of the industry.** Through anti-monopoly supervision, the anti-monopoly law enforcement agencies shall maintain fair and orderly competition in the sector of platform economy; leverage the role of platform economy in efficient matching of supply and demand, reducing transaction costs, and developing potential markets; promote the optimization of resource allocation, technological progress, and efficiency improvement; and support and promote the development of the real economy.

**(5) Safeguarding the legitimate rights and interests of all parties concerned.** The development of platform economy involves multiple subjects. While protecting the fair competition in the market, safeguarding and promoting the development of the platform, anti-monopoly regulation shall focus on safeguarding the legitimate rights and interests of the on-platform operators and consumers concerned, facilitate the sharing of the results of platform technological progress and economic development by the whole society and realize the ecological harmony and symbiosis and sound development of platform economy as a whole.

Article 3 Relevant concepts

(1) Platform, i.e., the Internet platform for the purpose of Guidelines, refers to the form of business organization which uses network information technology to enable interdependent multilateral entities to interact under the rules and coordination provided by specific carriers so as to jointly create value.

(2) Platform economy refers to an economic form in which the Internet platform coordinates and organizes resource allocation.

(3) Platform operators refer to operators who provide business premises, transaction matching, information exchange and other Internet platform services to natural persons, legal persons and other market entities.

(4) On-platform operators refer to the operators that provide goods or services (hereinafter collectively referred to as the "products") on the Internet platforms .

(5) Operators in the sector of the platform economy, including platform operators, on-platform operators and other operators participating in platform economy.

Article 4 Definition of relevant markets

The platform economy involves multiple entities, complex in business type, and varied in competition. The definition of relevant product markets and relevant

2

geographical markets in the sector of platform economy shall comply with the general principles determined in the Anti-Monopoly Law and the "Guidelines of the State Council Anti-Monopoly Commission on the Definition of Relevant Markets", and be based on the specific analysis of individual cases with the characteristics of platform economy taken into consideration.

**(1) Relevant product markets**

The fundamental method for defining relevant product markets in the sector of platform economy is the substitution analysis. Demand substitution can be analyzed based on the platform function, business mode, user group, multilateral market, offline transaction and other factors when defining relevant product market in individual cases. When competitive constraints on operators' acts resulting from supply-side substitution are similar to those resulting from demand-side substitution, supply-side substitution shall also be taken into account based on the factors such as market entry, technical barriers, network effect, lock-in effect, cost transfer and cross-sector competition.

In a platform economy, competition between operators is often centered around core businesses to gain broad and lasting user attention. Therefore when defining the relevant product market, one should not simply define the relevant product market according to basic services of the platform, and it is also necessary to consider the possible cross-platform network effect, in order to decide whether to define the platform as an independent market or to separately define the platform as multiple related markets.

**(2) Relevant geographic markets**

Analysis of demand substitution and supply substitution is adopted for defining relevant geographical markets in the sector of platform economy. In defining relevant geographical markets in individual cases, the factors such as actual areas where majority of users chooses products, language preference and consumption habits of users, provisions of relevant laws and regulations, degree of competition restraints in different regions and online-offline integration may be taken into comprehensive consideration.

Based on the characteristics of platform, relevant geographical markets are generally defined as China market or specific regional market or may be defined as global market according to individual cases.

**(3) The role of the definition of relevant markets in various monopoly cases**

Pursuant to individual case analysis principle, the actual demands of different types of monopoly cases for the definition of relevant markets are different.

For horizontal monopoly agreements between operators in the platform economy, such as price fixing and market division, as well as vertical monopoly agreements to fix resale prices and set minimum resale prices, the anti-monopoly law enforcement agencies need not clearly define the relevant markets in determining illegality.

In cases of abuse of market dominance in the sector of platform economy, the relevant market definition is often the first step in determining the abuse of market dominance by operators.

Conducting anti-monopoly review  of concentration of business operators in the platform economy typically requires to define the relevant market.

In certain particular cases, if there is sufficient direct factual evidence that the conduct that can only be carried out after relying on the dominant market position lasts a considerable period of time and that the damage is obvious, and if the relevant market conditions are insufficient or very difficult to accurately define, the relevant market need not be defined, and the operator in the platform economy field can be directly determined to have carried out monopolistic conduct.

Chapter 2 Monopoly Agreements

The Anti-Monopoly Law prohibits business operators from entering into and implementing monopoly agreements. Chapter 2 of the Anti-monopoly Law shall apply in defining the monopoly agreements in the sector of platform economy. Monopoly agreements set forth in Article 13 and Article 14 of the Anti-monopoly Law shall be prohibited in principle; the monopoly agreements meeting the conditions prescribed in Article 15 of the Anti-monopoly Law may be exempted.

Article 5 Forms of monopoly agreements

The monopoly agreements in the sector of platform economy refer to the agreements, decisions or other concerted practices of platform operators and on-platform operators to exclude or restrict competition. Agreements and decisions can be in written, oral or other forms. Other concerted practices refer to the behavior of the operator that is substantially consistent despite the fact that the operator has not clearly concluded an agreement or decision.

Article 6 Horizontal monopoly agreements

The operators in the sector of platform economy that have competitive relationship may enter into horizontal monopoly agreements such as price fixing, market segmentation, production (sale) restriction, new technology (product) restriction and joint boycotting of transactions through following methods:

(1) Making use of the platform to collect and exchange the price, sales, and other sensitive information;

(2) Making use of technical means for communication of intentions ;

(3) Making use of data, algorithm and platform rules, etc. to realize concerted action;

4

(4) Other methods contributing to collaboration.

For the purpose of these Guidelines, price shall include but not being limited to the product price as well as the commission, handling fee, membership fee, promotion fee and other fees charged by the operator.

Article 7 Vertical monopoly agreements

Operators in the sector of platform economy may reach with the transaction counterparts the vertical monopoly agreements such as fixing resale price and limiting the minimum resale price through the following methods:

(1) Making use of technical means for automatic setting of price ;

(2) Making use of the platform rules for flat price ;

(3) Making use of data and algorithm to directly or indirectly limit price;

(4) Making use of technical means, platform rules, data, algorithm and other methods to set other transaction conditions and exclude and restrict market competition.

In analyzing whether the Most Favored Nation Clause constitute a vertical monopoly agreement, factors such as an operator's motivations for signing the clause and ability to control the market, and the clause's impact on market competition, consumer interests and innovation may be taken into consideration together.

An exclusive agreement reached between a platform operator and a transaction counterpart may constitute other monopoly agreements stipulated in Article 14 of the Anti-Monopoly Law. The anti-monopoly law enforcement agencies will generally analyze whether the agreement has the effect of excluding and restricting competition by considering factors such as the market force of platform operators, the relevant market competition status, and the degree of obstruction to other operators entering the relevant market.

Article 8 Hub-and-spoke agreement

The on-platform operators with competitive relationship may enter in to the hub and spoke agreement that has the effect of a horizontal monopoly agreement by making use of the vertical relationship with the platform operator or through organization or coordination by the platform operator. In analyzing whether the agreement falls within the monopoly agreements regulated by the Anti-monopoly Law, whether the on-platform operators with competitive relationship enter into and implement the monopoly agreement through the methods such as technical means, platform rules, data and algorithm to exclude or restrict the completion at relevant markets may be taken into consideration.

Article 9 Determination of coordinated behavior

In identifying the concerted action in the sector of the platform economy, direct evidence may be used to judge whether or not the facts of the concerted action exist. If it is hard to obtain the direct evidence, circumstantial evidences that are logically consistent may be used to determine the operators' awareness of relevant information

5

and judge whether the concerted action exists among the business operators. The business operators may provide the evidence to the contrary to prove the non-existence of the concerted action.

Article 10 Lenient policies

Horizontal monopoly agreements in the sector of platform economy are often effective in severely excluding and restricting competition. The anti-monopoly law enforcement agencies encourage the operators in the sector of the platform economy that participate in a horizontal monopoly agreement to voluntarily report relevant information about the horizontal monopoly agreement and provide important evidence, stop the suspected violation of the law and cooperate in investigation. An anti-monopoly law enforcement agency may mitigate or exempt the penalties on the business operators that meet the conditions for leniency.

Chapter 3 Abuse of Dominant Market Position

The Anti-monopoly Law prohibits the business operators with dominant market position from engaging in the acts of abusing dominant market position. Chapter 3 of the Anti-monopoly Law shall apply to the identification of the acts of abusing dominant market position in the sector of the platform economy. Generally, relevant markets shall be identified first to analyze whether the business operators have dominant position at the relevant markets and then specific analysis shall be made as to whether their acts constitute abuse of dominant market position in light of individual cases.

Article 11 Determination of dominant market position

Anti-monopoly law enforcement agencies shall determine or presume that business operators have dominant market position in accordance with Article 18 and Article 19 of the Anti-monopoly Law. The following factors may be taken into consideration in light of the characteristics of the platform economy:

**(1) Market shares of business operators and competition status at relevant markets.** In determining the market share of an operator in the sector of the platform economy, the proportion of the transaction amount, transaction quantity, number of users, clicks, stay time of users or other indicators at relevant markets can be taken into consideration and, meanwhile, the time when such market share continues may also be taken into consideration.

In analysis of the competition status at relevant market, the development of relevant platform market, number and market shares of existing competitors, characteristics of the platform competition, degree of platform difference, scale economy, information of potential competitors, innovation and technological change,

6

among other things can be taken into consideration.

**(2) Capacity of a business operator for controlling market.** The capacity of the business operator for controlling the upstream and downstream markets or other relevant markets, the capacity of the business operator for hindering or affecting the entry of other business operators into relevant markets, the business mode and network effect of relevant platform, and the capacity for influencing or determining the price, traffic, and other transaction terms, among other things can be taken into consideration.

**(3) Financial strength and technical condition of a business operator.** The circumstances of the investors, assets size, profitability, financing capacity as well as technology innovation and application capacity of the business operator, intellectual property possessed by the business operator, the capacity of the business operator for mastering and processing relevant data and the extent to which such financial strength and technical conditions can promote the business expansion or consolidation and maintenance of the market position by the business operator may be taken into consideration.

**(4) Dependence of other business operators on the business operator concerned in transactions.** The transaction relation, transaction volume and transaction duration of other business operators with the business operator concerned, lock-in effect, user loyalty, possibility of other business operators to switch to other platforms and the cost of such switch, among other things may be taken into consideration.

**(5) Difficulty of other business operators to enter into relevant markets.** The market access, scale effect of the platform, size of capital input, technical barrier, switch of users to other platforms, user switch cost, difficulty in obtaining data and user habits, etc. may be taken into consideration.

**(6) Other factors.** Other factors for identifying that a business operator has dominant market position based on the characteristics of the platform economy may be taken into consideration.

Article 12 Unfair price practices

An operator with dominant market position in the sector of platform economy may abuse the dominant market position to sell products at unfairly high price or purchase products at unfairly low price. In analyzing whether the act of the operator constitutes the unfair price behavior, the following factors may be taken into consideration:

(1) Whether such price is remarkably higher or lower than the price for the same or comparable product of other operators in the sector of platform economy at identical or similar market conditions;

(2) Whether such price is remarkably higher or lower than the price for selling or purchasing the same product or comparable product of such operator in the sector of platform economy at other identical or similar market conditions;

(3) Whether the operator in the sector of platform economy increases the selling

7

price or decreases the purchasing price in excess of the normal range when costs are generally stable;

(4) Whether the operator in the sector of platform economy increases the selling price of a product remarkably in excess of the increase of its costs, or reduces the purchasing price of a product remarkably in excess of the reduction of its costs.

In identifying the sameness or similarity of market conditions, the factors such as the platform type, business mode, transaction links, cost structure and specific circumstances of transaction may generally be taken into consideration.

Article 13 Sales below cost

An operator with dominant market position in the sector of platform economy may abuse the dominant market position to sell products at a price lower than the cost and exclude or restrict market competition.

In analyzing whether it is a sale below the cost, the consideration is generally focused on whether the operator in the sector of platform economy makes use of a price below the cost to exclude other competitive operators, and situations such as whether such operators then raise prices and improperly profit after crowding other business operators out of the market.

When calculating the cost, cost correlation among relevant markets in the multilateral market involved in the platform need to be taken into comprehensive consideration in general.

An operator with dominant market position in the sector of platform economy may have the justification as follows for sale below cost:

(1) Developing other business on the platform within a reasonable time limit;

(2) Facilitating the entry of new products into market within a reasonable time limit;

(3) Other reasons that can prove justification of the behavior.

Article 14 Refusal of transactions

An operator with dominant market position in the sector of platform economy may refuse to transact with transaction counterparts without justification by abusing its dominant market position to exclude or restrict market competition. In analyzing whether there is refusal of transaction, following factors may be taken into consideration:

(1) Stopping, delaying suspending the current transaction with the transaction counterpart;

(2) Refusing to conduct new transactions with the transaction counterpart;

(3) Setting unreasonable restriction and barrier in terms of platform rules, algorithm, technology, traffic distribution or other aspects, making it difficult for the transaction counterpart to carry out transactions;

(4) A business operator controlling the necessary facilities in the sector of platform economy refuses to conduct transactions with the transaction counterpart at reasonable conditions.

To identify whether the relevant platform constitutes a necessary facility, the factors such as the possession of data on the platform, substitutability of other platforms,

whether there is any potentially available platform, feasibility of developing any competitive platform, degree of dependence of the transaction counterpart on such platform and the possible impact of open platform on such platform operator need to be taken into consideration in general.

To identify whether the relevant data constitutes a necessary facility, the factors such as whether the data is indispensable to participate in market competition, whether there are other access channels for the data, the technical feasibility of the open data, and the possible impact of open data on the operators who possess the data need to be taken into consideration in general.

A business operator in the sector of platform economy may have following justification for refusal of a transaction:

(1) Where any objective reason such as force majeure makes the transaction impossible;

(2) Where the security of the transaction is affected due to reasons attributable to the transaction counterpart;

(3) Where the transaction with the transaction counterpart will improperly impair the interests of the operators in the sector of platform economy;

(4) Where the transaction counterpart has clearly expressed that will not or has actually failed to comply with the platform rules of fairness, rationality and nondiscrimination;

(5) Where there are other reasons that can prove the justification of the act.

Article 15 Restricting transactions

An operator with dominant market position in the sector of platform economy may restrict transactions of the transaction counterparts without justification by abusing its dominant market position to exclude or restrict market competition. In analyzing whether there is restriction on transaction, following factors may be taken into consideration:

(1) Where such operator requires an on-platform operator to make "either-or" choice between competitive platforms or other behaviors that have the same effect;

(2) Restricting the transaction counterpart to conduct exclusive transactions with it;

(3) Restricting the transaction counterpart to only conduct transactions with its designated operators;

(4) Restricting the transaction counterpart from transactions with specific business operators.

Above restrictions can be effectuated through written agreement, or through reaching agreement with the transaction counterpart via telephone or in oral form or through actually setting limitation or barrier in terms of platform rules, data, algorithm or technology, etc.

In analyzing whether there is restriction on transactions, consideration may be focused on the following two circumstances: the first circumstance involves the restriction imposed by the platform operator through the punitive measures such as blocking store, downgrading the right of visit, traffic restriction, technical barrier and

withholding deposit, and such restriction can generally be deemed as constituting the restriction on transactions since it causes direct harm to market competition and consumers. The second circumstance involves the restriction imposed by the platform operator through incentives such as subsidy, discount, promotion and support in traffic resources. Such incentives may have certain positive effect on the on-platform operator, consumers' interests and overall welfare of the society. However, if there is evidence showing that such incentives have the remarkable effect of excluding or restricting market competition, they may be deemed as constituting restriction on transaction.

An operator in the sector of platform economy may have following justification for restriction on a transaction:

(1) Where the restriction is required for protecting the interests of the transaction counterpart and consumers;

(2) Where the restriction is required for protecting intellectual property or data security;

(3) Where the restriction is required for protecting the input of specific resources for the transaction;

(4) Where the restriction is required for safeguarding the rational business mode;

(5) Where there are other reasons that can prove the justification of the act.

Article 16 Tie-in sale or imposition of additional unreasonable transaction conditions

An operator with dominant market position in the sector of platform economy may engage in tie-in sale or impose additional unreasonable transaction conditions without justification by abusing its dominant market position to exclude or restrict market competition. In analyzing whether there is tie-in sale or imposition of additional unreasonable transaction conditions, following factors may be taken into consideration:

(1) Bundling different products for sale through standard clauses, pop-ups, required steps and other methods whereby the transaction counterpart cannot make choice, alter or reject;

(2) Forcing the transaction counterpart to accept other products through the punitive measures such as downgrading the right of visit, traffic restriction and technical barrier;

(3) Imposing additional unreasonable restriction on transaction conditions and method, service supply method, payment method and means and after-sale assurance, etc.;

(4) Collecting unreasonable fees beyond the transaction price;

(5) Compulsively collecting unnecessary user information or adding the transaction conditions, transaction process and service items irrelevant to the subject matter of the transaction.

A business operator in the sector of platform economy may have following justification for tie-in sale:

(1) Where the tie-in sale conforms to the trade practice and trading habits;

(2) Where the tie-in sale is required for protecting the interests of the transaction counterpart and consumers;

(3) Where the tie-in sale is required for improving the value or efficiency of the use of the product;

(4) Where the tie-in sale is necessary for maintaining the normal operation of the platform;

(5) Where there are other reasons that can prove the justification of the act.


Article 17 Differentiated treatment

An operator with dominant market position in the sector of platform economy may apply differentiated treatment to the transaction counterparts with same transaction conditions without justification by abusing its dominant market position to exclude or restrict market competition. In analyzing whether there is differentiated treatment, following factors may be taken into consideration:

(1) Implementing differentiated transaction prices or other transaction conditions based on big data and algorithm and according to the payment ability, consumption preference and use habits, etc. of the transaction counterparts;

(2) Implementing differentiated transaction prices or other transaction conditions based on big data and algorithms for new and old trading counterparts;

(3) Implementing differentiated standards, rules and algorithm;

(4) Implementing differentiated payment terms and transaction methods.

Sameness in conditions mean that the transaction counterparts have no differences that substantially affect transactions in terms of transaction security, transaction cost, credit status, transaction links concerned and transaction duration, etc. The differences among transaction counterparts in terms of privacy information, transaction history, individual preferences and consumption habits, etc. acquired by the platform in transactions shall not affect the determination of sameness in conditions of transaction counterparts.

A business operator in the sector of platform economy may have following justifications for implement differentiated treatment:

(1) Implementing different transaction conditions according to the actual need of the transaction counterparts and in conformity with trading habits and trade practices;

(2) Carrying out promotions for new users within a reasonable time limit;

(3) Carrying out random transactions based on the platform rules of fairness, rationality and nondiscrimination;

(4) Other reasons that can prove the justification of the act.


Chapter 4 Concentration of Business Operators


The Anti-monopoly Law prohibits business operators from implementing the concentration that has or might have the effect of excluding or restricting competition.

The anti-monopoly law enforcement agency of the State Council shall, In accordance with laws and regulations such as the Anti-monopoly Law and the Provisions of the State Council on the Thresholds for Declaring Concentration of Business Operators, review the concentration of business operators in the sector of platform economy and investigate and handle the concentration of business operators conducted in violation of the law.

Article 18 Thresholds for declaration

In the sector of platform economy, the calculation of turnover may vary depending on the business model of the platform operator. The business turnover of a platform operator that provides only the information matching and collects commission and other service fees can be calculated based on the service fees collected by the platform and other incomes of the platform; for platform operators who specifically participate in market competition on the side of the platform, the transaction amount involved in the platform and other revenues of the platform can be calculated as turnover.

The concentration of operators involved in the agreement control (VIE) structure falls within the scope of the concentrated anti-monopoly review of platform operators. If the concentration of operators meets the thresholds stipulated by the State Council, the operator shall submit a declaration to the anti-monopoly law enforcement agency of the State Council in advance, and the operator shall not implement concentration without the declaration.

Article 19 Proactive investigation by the anti-monopoly law enforcement agency

In accordance with the Provisions of the State Council on the Thresholds for Declaring Concentration of Business Operators, where the concentration of business operators does not reach the declaration threshold, but the facts and evidence collected pursuant to the prescribed procedures show that the said concentration has or might have the effect of excluding or restricting competition, the anti-monopoly law enforcement agency of the State Council shall conduct investigation in accordance with the law.

In the following situations where the concentration of operators do not meet the reporting thresholds in the sector of the platform economy, and have or may have the effect of excluding or restricting competition, the anti-monopoly law enforcement agency of the State Council will conduct and handle the investigation in accordance with the law.

(1) One operator participating in the concentration is a start-up enterprise or an emerging platform;

(2) The operators participating in the concentration have lower turnover due to adopting free or low-price models;

(3) Higher concentration of relevant markets and lower number of competitors;

(4) Other circumstances that have or may have the effect of excluding or restricting

12

competition.

Business operators may voluntarily declare the concentration of business operators that does not reach the declaration threshold with the anti-monopoly law enforcement agency of the State Council.

Article 20 Factors for Considerations

The anti-monopoly law enforcement of the State Council shall evaluate the impact of the concentration of operators in the sector of platform economy on competition in accordance with relevant provisions of Article 27 of the Anti-monopoly Law. The following factors may be specifically taken into consideration in light of the characteristics of platform economy:

**(1)** Market share of the business operator at relevant markets. In calculation of the market share, in addition to the business turnover, the proportion of the transaction amount, transaction quantity, number of active users, clicks, stay time of users or other indicators at relevant markets can also be taken into consideration and comprehensive evaluation of the market share in a relatively long period of time can be conducted as appropriate to judge the trend of dynamic change thereof.

**(2)** Control of the business operator over market. Considerations may include, among other things, whether the business operator has the exclusive right to the key and rare resources, the duration of such exclusive right, user loyalty, switch of users to other platforms, the capacity of the business operator for mastering and processing data, for controlling data interface and for penetrating or expanding to other markets, the profitability and profit margin level of the business operator, frequency and speed of technological innovation, product life cycle and whether disruptive innovation exists or may occur.

**(3)** Degree of concentration at relevant markets. The development status, quantity of existing competitors and market share, among other things may be taken into consideration.

**(4)** Impact of the concentration of the business operators on market entry. Consideration may cover the situation of market entry, difficulty of the business operators in obtaining technology, intellectual property right, data, channel, user and other necessary resources, the required facilities, size of capital input required for entry into relevant markets, switch cost of users in fee, data migration, negotiation, study, search and other aspects as well as the possibility, timeliness and sufficiency of entry.

**(5)** Impact of the concentration of business operators on technological progress. Consideration may cover the impact of the competition among existing market competitors in technology and business mode innovation, etc. on the motivation and capability of business operators for innovation and whether the acquisition of the startup enterprises or emerging platforms will affect innovation.

**(6)** Impact of concentration of business operators on consumers. Consideration

13

may cover whether the business operators after concentration have the capability and motivation for increasing product prices, lowering product quality, reducing the diversification of products, undermining the capability and scope of consumers' choice, treating different consumer groups differently, improperly using consumers data or otherwise harming the interests of consumers.

In case of the concentration of business operators involving bilateral or multilateral platforms, it may be necessary to take into comprehensive consideration the bilateral or multilateral business of the platform and other business that the business operators engage in and conduct evaluation of the direct and indirect network externality.

Article 21 Relief Measures

For the concentration of business operators that has or might have the effect of excluding or restricting competition, the anti-monopoly law enforcement agency of the State Council shall make decision in accordance with Article 28 of the Anti-monopoly Law. On the concentration of business operators that is not prohibited, the anti-monopoly law enforcement agency of the State Council may decide to impose the restrictive conditions in the following types:

(1) Structural conditions such as divesting tangible assets, divesting intellectual property rights, technology, data and other intangible assets or divesting relevant equities;

(2) Behavioral conditions such as opening the network, data, platform or other infrastructures, licensing key technology, terminating exclusive agreements, modifying platform rules or algorithm, promising compatibility or not to reduce the interoperability level;

(3) Integrated conditions in combination of structural conditions and behavioral conditions.

Chapter 5 Abusing Administrative Power to Exclude and Restrict Competition

The Anti-monopoly Law prohibits administrative organs and the organizations with the public affairs management functions as authorized by the laws and regulations from abusing administrative power to exclude or restrict competition. Anti-monopoly law enforcement agencies shall investigate in accordance with the law the acts of abusing administrative power to exclude or restrict competition in the sector of platform economy and offer proposals on disposal.

Article 22 Abuse of administrative powers to exclude and restrict the performance of competitive conduct

The following behaviors performed by administrative organs and the

14

organizations with the public affairs management functions as authorized by laws and regulations to exclude or restrict the market competition in the sector of platform economy may constitute the behaviors of abusing administrative power to exclude or restrict competition:

(1) Restricting or restricting in disguised manner any entity or individual to the operation, purchase and use of products provided by their designated business operators in the sector of platform economy or the products relating to the services of the platform as provided by other business operators;

(2) Setting discriminatory standards and implementing discriminatory policies for non-local business operators in the sector of platform economy, applying administrative permit or record-filing specially to non-local business operators in the sector of platform economy, or using the means such as setting block via software or the Internet to hinder or restrict the entry of non-local business operators in the sector of platform economy into local market and interfere with the free circulation of products among regions;

(3) Excluding or restricting non-local business operators in the sector of platform economy from participating in local bidding activities through the methods such as setting discriminatory qualification requirements or bid evaluation and review standards or not releasing information as required under the law;

(4) Applying discriminatory treatment to non-local business operators in the sector of platform economy and excluding or restricting non-local business operators from making local investment or establishing local branches or forcing such non-local business operators to make local investment or establish local branches;

(5) Compelling or compelling in disguised manner the operators in the sector of platform economy to engage in the monopolistic practices prescribed in the Anti-monopoly Law;

(6) Behaviors of administrative organs to formulate and promulgate the specifications, qualification standards and other rules, normative documents and other policy documents on market entry, industrial development, business promotion and investment attraction, biding, government procurement and business operation that have the content of excluding and restricting competition and are in the forms such as provision, measure, decision, announcement, notice, opinion and meeting minutes as well as the specific policies and measure on a "case-by-case" basis.

Article 23 Fair competition review

The rules, normative documents, other policy documents and the specific policies and measures on a "case-by-case" basis involving the economic activities of the market subjects in the sector of platform economy formulated by administrative organs and the organizations with the public affairs management functions as authorized by the laws and regulations shall be subject to fair competition review in accordance with the

15

Opinions of the State Council on Establishing a Fair Competition Review System in the Construction of the Market System (Issued by State Council [2016] No. 34).
《国务院关于在市场体系建设中建立公平竞争审查制度的意见》（国发〔2016〕34 号）

Chapter 6 Supplementary Provisions

Article 24 These Guidelines shall be implemented from the date of publication.

# 关于平台经济领域的反垄断指南

## （征求意见稿）

## 第一章　总则

第一条 指南的目的和依据

为预防和制止互联网平台经济领域垄断行为，降低行政执法和经营者合规成本，加强和改进平台经济领域反垄断监管，保护市场公平竞争，维护消费者利益和社会公共利益，促进平台经济持续健康发展，根据《中华人民共和国反垄断法》(以下简称《反垄断法》)，制定本指南。

第二条 基本原则

对平台经济领域开展反垄断监管坚持以下原则：

**（一）营造公平竞争秩序。**着力预防和制止排除、限制竞争的垄断行为,维护平台经济领域公平竞争、开放包容的发展环境，降低市场进入壁垒，促进更多主体进入市场，公平有序参与竞争，激发市场活力。

**（二）加强科学有效监管。**《反垄断法》的基本制度、规制原则和分析框架适用于平台经济领域所有市场主体。反垄断执法机构将根据平台经济的发展状况、发展规律和自身

特点，强化竞争分析和法律论证，不断加强和改进反垄断监管，增强反垄断执法的针对性、科学性。

**(三) 激发创新创造活力。**维护平台经济领域公平竞争，引导和激励平台经营者将更多资源用于技术革新、质量改进、服务提升和模式创新，防止和制止排除、限制竞争行为抑制平台经济创新发展和经济活力，有效激发全社会创新创造动力，构筑经济社会发展新优势和新动能。

**(四) 促进行业健康发展。**通过反垄断监管维护平台经济领域公平有序竞争，充分发挥平台经济高效匹配供需、降低交易成本、发展潜在市场的作用，推动资源配置优化、技术进步、效率提升，支持和促进实体经济发展。

**(五) 维护各方合法利益。**平台经济发展涉及多方主体。反垄断监管在保护市场公平竞争、保障和促进平台发展的同时，着力维护平台内经营者和消费者等各方主体的合法权益，使全社会能够共享平台技术进步和经济发展成果，实现平台经济整体生态和谐共生和健康发展。

第三条  相关概念

（一）平台,本指南所称平台为互联网平台，是指通过网络信息技术，使相互依赖的多边主体在特定载体提供的规则和撮合下交互，以此共同创造价值的商业组织形态。

（二）平台经济,是指由互联网平台协调组织资源配置的一种经济形态。

2

（三）平台经营者,是指向自然人、法人及其他市场主体提供经营场所、交易撮合、信息交流等互联网平台服务的经营者。

（四）平台内经营者,是指在互联网平台内提供商品或者服务（以下统称商品）的经营者。

（五）平台经济领域经营者,包括平台经营者、平台内经营者以及其他参与平台经济的经营者。

第四条 相关市场界定

平台经济涉及多方主体、业务类型复杂、竞争动态多变，界定平台经济领域相关商品市场和相关地域市场需要遵循《反垄断法》和《国务院反垄断委员会关于相关市场界定的指南》所确定的一般原则,同时考虑平台经济的特点，结合个案进行具体分析。

（一）相关商品市场

平台经济领域相关商品市场界定的基本方法是替代性分析。在个案中界定相关商品市场时，可以基于平台功能、商业模式、用户群体、多边市场、线下交易等因素进行需求替代分析；当供给替代对经营者行为产生的竞争约束类似于需求替代时，应考虑供给替代分析，可以基于市场进入、技术壁垒、网络效应、跨界竞争等因素进行分析。

在平台经济中，经营者之间的竞争通常围绕核心业务开展，以获得用户广泛和持久的注意力。因此，界定相关商品

市场时，不能简单根据平台基础服务界定相关商品市场，还需要考虑可能存在的跨平台网络效应，决定将平台界定为一个独立的市场，或者分别界定多个关联市场。

（二）相关地域市场

平台经济领域相关地域市场界定采用需求替代和供给替代分析。在个案中界定相关地域市场时，可以综合评估考虑多数用户选择商品的实际区域、用户的语言偏好和消费习惯、相关法律法规的规定、不同区域竞争约束程度、线上线下融合等因素。

根据平台特点，相关地域市场通常界定为中国市场或者特定区域市场，根据个案情况也可以界定为全球市场。

（三）相关市场界定在各类垄断案件中的作用

坚持个案分析原则，不同类型垄断案件对于相关市场界定的实际需求不同。

对于平台经济领域经营者之间达成的固定价格、分割市场等横向垄断协议，以及固定转售价格、限定最低转售价格的纵向垄断协议，反垄断执法机构在违法性认定上可不明确界定相关市场。

对于平台经济领域滥用市场支配地位案件，相关市场界定通常是认定经营者滥用市场支配地位行为的第一步。

开展平台经济领域经营者集中反垄断审查，通常需要界定相关市场。

在特定个案中，如果直接事实证据充足，只有依赖市场支配地位才能实施的行为持续了相当长时间且损害效果明显，准确界定相关市场条件不足或非常困难，可以不界定相关市场，直接认定平台经济领域经营者实施了垄断行为。

## 第二章 垄断协议

《反垄断法》禁止经营者达成、实施垄断协议。认定平台经济领域的垄断协议，适用《反垄断法》第二章规定。对《反垄断法》第十三条、第十四条明确列举的垄断协议，原则予以禁止；对符合《反垄断法》第十五条规定条件的垄断协议，可以予以豁免。

第五条 垄断协议的形式

平台经济领域垄断协议主要是指平台经营者、平台内经营者排除、限制竞争的协议、决定或者其他协同行为。协议、决定可以是书面、口头等形式。其他协同行为是指经营者虽未明确订立协议或者决定，但实质上存在协调一致的行为。

第六条 横向垄断协议

具有竞争关系的平台经济领域经营者可能通过下列方式达成固定价格、分割市场、限制产（销）量、限制新技术（产品）、联合抵制交易等横向垄断协议：

（一）利用平台收集或者交换价格、销量等敏感信息；

5

（二）利用技术手段进行意思联络；

（三）利用数据和算法实现协调一致行为；

（四）其他有助于实现协同的方式。

本指南所称价格，包括但不限于商品价格以及经营者收取的佣金、手续费、会员费、推广费等费用。

第七条 纵向垄断协议

平台经济领域经营者与交易相对人可能通过下列方式达成固定转售价格、限定最低转售价格等纵向垄断协议：

（一）利用技术手段对价格进行自动化设定；

（二）利用平台规则对价格进行统一；

（三）利用数据和算法对价格进行直接或间接限定；

（四）利用技术手段、平台规则、数据和算法等方式限定其他交易条件，排除、限制市场竞争。

分析最惠国待遇条款是否构成纵向垄断协议，可综合考虑经营者签订该条款的商业动机、对市场的控制能力以及实施该条款对市场竞争、消费者利益和创新的影响等。

平台经营者与交易相对人达成排他性协议，可能构成《反垄断法》第十四条规定的其他垄断协议。反垄断执法机构一般将综合考虑平台经营者的市场力量、相关市场竞争状况、对其他经营者进入相关市场的阻碍程度等因素，分析该协议是否具有排除、限制竞争效果。

第八条 轴辐协议

具有竞争关系的经营者可能借助与平台经营者之间的纵向关系,或者由平台经营者组织、协调，达成具有横向垄断协议效果的轴辐协议。分析该协议是否属于《反垄断法》规制的垄断协议，可考虑具有竞争关系的经营者之间是否利用技术手段、平台规则、数据和算法等方式，达成、实施垄断协议，排除、限制相关市场竞争。

第九条 协同行为的认定

认定平台经济领域协同行为，可以通过直接证据判定是否存在协同行为的事实。如果直接证据较难获取，可以根据逻辑一致的间接证据，认定经营者对相关信息的知悉状况，以判定经营者之间是否存在协同行为。经营者可以提供相反证据证明其不存在协同行为。

第十条 宽大制度

平台经济领域横向垄断协议通常具有严重排除、限制竞争的效果。反垄断执法机构鼓励相关经营者主动报告横向垄断协议有关情况并提供重要证据，同时停止涉嫌违法行为并配合调查。对符合宽大适用条件的经营者，反垄断执法机构可以减轻或者免除处罚。

7

# 第三章 滥用市场支配地位行为

《反垄断法》禁止具有市场支配地位的经营者从事滥用市场支配地位行为。认定平台经济领域的滥用市场支配地位行为，适用《反垄断法》第三章规定。通常情况下，首先界定相关市场，分析经营者在相关市场是否具有支配地位，再根据个案情况具体分析是否构成滥用市场支配地位行为。

第十一条 市场支配地位的认定

反垄断执法机构依据《反垄断法》第十八条、第十九条规定，对认定或推定经营者具有市场支配地位的因素和情形进行分析。结合平台经济的特点，可以具体考虑以下因素：

**（一）经营者的市场份额以及相关市场竞争状况。**确定平台经济领域经营者市场份额，可以考虑交易金额、交易数量、用户数、点击量、使用时长或者其他指标在相关市场所占比重，同时考虑该市场份额持续的时间。

分析相关市场竞争状况，可以考虑相关平台市场的发展状况、现有竞争者数量和市场份额、平台竞争特点、平台差异程度、规模经济、潜在竞争者情况等。

**（二）经营者控制市场的能力。**可以考虑该经营者控制上下游市场的能力，阻碍、影响其他经营者进入相关市场的能力，相关平台经营模式、网络效应，以及影响或者决定佣金、流量或者其他交易条件的能力等。

8

**（三）经营者的财力和技术条件。**可以考虑该经营者的投资者情况、资产规模、盈利能力、融资能力、技术创新和应用能力、拥有的知识产权、掌握和处理相关数据的能力，以及该财力和技术条件能够以何种程度促进该经营者业务扩张或者巩固、维持市场地位等。

**（四）其他经营者对该经营者在交易上的依赖程度。**可以考虑其他经营者与该经营者的交易关系、交易量、交易持续时间，锁定效应、用户黏性，以及其他经营者转向其他平台的可能性及转换成本等。

**（五）其他经营者进入相关市场的难易程度。**可以考虑平台规模效应、资金投入规模、技术壁垒、用户多栖性、数据获取成本、用户习惯等。

**（六）其他因素。**可以考虑基于平台经济特点认定经营者具有市场支配地位的其他因素。

第十二条  不公平价格行为

具有市场支配地位的平台经济领域经营者，可能滥用市场支配地位，以不公平的高价销售商品或者以不公平的低价购买商品。分析是否构成不公平的高价或者不公平的低价，可以考虑以下因素：

（一）该价格是否明显高于或者明显低于其他平台经济

9

领域经营者在相同或相似市场条件下同种商品或者可比较

商品的价格；

（二）该价格是否明显高于或明显低于该平台经济领域

经营者在其他相同或相似市场条件区域同种商品或者可比

较商品的价格；

（三）在成本基本稳定的情况下，该平台经济领域经营

者是否超过正常幅度提高销售价格或降低购买价格；

（四）该平台经济领域经营者销售商品提价幅度是否明

显高于成本增长幅度，或者采购商品降价幅度是否明显低于

成本降低幅度。

认定市场条件相同或相似，一般可以考虑平台类型、经

营模式、交易环节、成本结构、交易具体情况等因素。

第十三条 低于成本销售

具有市场支配地位的平台经营者，可能滥用市场支配地

位，没有正当理由，以低于成本的价格销售商品，排除、限

制市场竞争。

分析是否构成低于成本销售，一般重点考虑平台经营者

10

是否以低于成本的价格排挤具有竞争关系的其他平台经营者，以及是否在将其他平台经营者排挤出市场后，将价格提高并不当获利等情况。

在计算成本时，一般需要综合考虑平台涉及多边市场中各相关市场之间的成本关联情况。

平台经营者低于成本销售可能具有以下正当理由：

（一）在合理期限内为发展平台内其他业务；

（二）在合理期限内为促进新商品进入市场；

（三）能够证明行为具有正当性的其他理由。

第十四条　拒绝交易

具有市场支配地位的平台经济领域经营者，可能滥用其市场支配地位，无正当理由拒绝与交易相对人进行交易，排除、限制市场竞争。分析是否构成拒绝交易，可以考虑以下因素：

（一）停止、拖延、中断与交易相对人的现有交易；

（二）拒绝与交易相对人开展新的交易；

（三）在平台规则、算法、技术、流量分配等方面设置

限制和障碍，使交易相对人难以开展交易；

（四）控制平台经济领域必需设施的经营者拒绝与交易相对人以合理条件进行交易。

认定相关平台是否构成必需设施，一般需要综合考虑其他平台的可替代性、是否存在潜在可用平台、发展竞争性平台的可行性、交易相对人对该平台的依赖程度、开放平台对该平台经营者可能造成的影响等因素。

认定相关数据是否构成必需设施，一般需要综合考虑数据对于参与市场竞争是否不可或缺，数据是否存在其他获取渠道，数据开放的技术可行性，以及开放数据对占有数据的经营者可能造成的影响等因素。

平台经济领域经营者拒绝交易可能具有以下正当理由：

（一）因不可抗力等客观原因无法进行交易；

（二）因交易相对人原因，影响交易安全；

（三）与交易相对人交易将使平台经营者利益发生不当减损；

（四）交易相对人明确表示或者实际不遵守公平、合理、

12

无歧视的平台规则；

（五）能够证明行为具有正当性的其他理由。

第十五条 限定交易

具有市场支配地位的平台经济领域经营者，可能滥用市场支配地位，无正当理由对交易相对人进行限定交易，排除、限制市场竞争。分析是否构成限定交易行为，可以考虑以下因素：

（一）要求交易相对人在竞争性平台间进行"二选一"或者其他具有相同效果的行为；

（二）限定交易相对人与其进行独家交易；

（三）限定交易相对人只能与其指定的经营者进行交易；

（四）限定交易相对人不得与特定经营者进行交易。

上述限定可能通过书面协议的方式实现，也可能通过电话、口头方式与交易相对人商定的方式实现，还可能通过平台规则、数据、算法、技术等方面的实际设置限制或者障碍的方式实现。

分析是否构成限定交易，可重点考虑以下两种情形：一

13

是平台经营者通过搜索降权、流量限制、技术障碍、扣取保证金等惩罚性措施实施的限制，因对市场竞争和消费者利益产生直接损害，一般可认定构成限定交易行为。二是平台经营者通过补贴、折扣、优惠、流量资源支持等激励性方式实施的限制，可能对平台内经营者、消费者利益和社会整体福利具有一定积极效果，但如果对市场竞争产生明显的排除、限制影响，也可能被认定构成限定交易行为。

平台经济领域经营者限定交易可能具有以下正当理由：

（一）为保护交易相对人和消费者利益所必须；

（二）为保护知识产权或者数据安全所必须；

（三）为保护针对交易进行的特定资源投入所必须；

（四）为维护平台合理的经营模式所必须；

（五）能够证明行为具有正当性的其他理由。

第十六条 搭售或者附加不合理交易条件

具有市场支配地位的平台经济领域经营者，可能滥用市场支配地位，无正当理由实施搭售或者附加不合理交易条件，排除、限制市场竞争。分析是否构成搭售或者附加不合理交

14

易条件，可以考虑以下因素：

（一）利用格式条款、弹窗、操作必经步骤等交易相对人无法选择、更改、拒绝的方式，将不同商品进行捆绑销售；

（二）以搜索降权、流量限制、技术障碍等惩罚性措施，强制交易相对人接受其他商品；

（三）对交易条件和方式、服务提供方式、付款方式和手段、售后保障等附加不合理限制；

（四）在交易价格之外额外收取不合理费用；

（五）强制收集用户信息或附加与交易标的无关的交易条件。

平台经济领域经营者实施搭售可能具有以下正当理由：

（一）符合正当的行业惯例和交易习惯；

（二）为保护交易相对人和消费者利益所必须；

（三）为提升商品使用价值或效率所必须；

（四）为维护平台正常运行所必须；

（五）能够证明行为具有正当性的其他理由。

第十七条 差别待遇

15

具有市场支配地位的平台经济领域经营者，可能滥用市场支配地位，无正当理由对交易条件相同的交易相对人实施差别待遇，排除、限制市场竞争。分析是否构成差别待遇，可以考虑以下因素：

（一）基于大数据和算法，根据交易相对人的支付能力、消费偏好、使用习惯等，实行差异性交易价格或者其他交易条件；

（二）基于大数据和算法，对新老交易相对人实行差异性交易价格或者其他交易条件；

（三）实行差异性标准、规则、算法；

（四）实行差异性付款条件和交易方式。

条件相同是指交易相对人之间在交易安全、交易成本、信用状况、所处交易环节、交易持续时间等方面不存在实质性影响交易的差别。平台在交易中获取的交易相对人的隐私信息、交易历史、个体偏好、消费习惯等方面存在的差异不影响认定交易相对人条件相同。

平台经济领域经营者实施差别待遇行为可能具有以下

16

正当理由：

（一）根据交易相对人实际需求且符合正当的交易习惯和行业惯例，实行不同交易条件；

（二）针对新用户的首次交易在合理期限内开展的优惠活动；

（三）基于平台公平、合理、无歧视的规则实施的随机性交易；

（四）能够证明行为具有正当性的其他理由。

## 第四章  经营者集中

《反垄断法》禁止经营者实施具有或者可能具有排除、限制竞争效果的集中。反垄断执法机构依据《反垄断法》《国务院关于经营者集中申报标准的规定》等法律法规，对平台经济领域的经营者集中进行审查，并对违法实施的经营者集中进行调查处理。

第十八条  申报标准

在平台经济领域，根据经营者的商业模式不同，营业额的计算可能有所区别。对于仅提供信息匹配、收取佣金的平

17

台经营者，可以平台所收取的服务费及平台其他收入计算营业额；对于具体参与平台一侧市场竞争的平台经营者，可以平台所涉交易金额及平台其他收入计算营业额。

涉及协议控制（VIE）架构的经营者集中，属于经营者集中反垄断审查范围。经营者集中达到国务院规定的申报标准的，经营者应当事先向国务院反垄断执法机构申报，未申报的不得实施集中。

第十九条 反垄断执法机构主动调查

根据《国务院关于经营者集中申报标准的规定》，经营者集中未达到申报标准，但按照规定程序收集的事实和证据表明该经营者集中具有或者可能具有排除、限制竞争效果的，国务院反垄断执法机构应当依法进行调查。

平台经济领域未达到申报标准的经营者集中具有以下情形，且具有或者可能具有排除、限制竞争效果，国务院反垄断执法机构将依法进行调查处理。

（一）参与集中的一方经营者为初创企业、新兴平台；

（二）参与集中的经营者因采取免费或者低价模式导致营业额较低；

（三）相关市场集中度较高，参与竞争者数量较少；

（四）具有或者可能具有排除、限制竞争效果的其他情形。

经营者可以就未达到申报标准的经营者集中主动向国

务院反垄断执法机构申报。

第二十条 考量因素

反垄断执法机构将依据《反垄断法》第二十七条规定的因素，评估平台领域经营者集中的竞争影响。结合平台经济的特点，可以具体考虑以下因素：

（一）经营者在相关市场的市场份额。计算市场份额，除以营业额为指标外，还可以考虑采用交易金额、交易数量、用户数、点击量、使用时长或者其他指标在相关市场所占比重，并可以视情况对较长时间段内的市场份额进行综合评估，判断其动态变化趋势。

（二）经营者对市场的控制力。可以考虑经营者是否对关键性、稀缺性资源拥有独占权利以及该独占权利持续时间，平台用户黏性、多栖性，经营者掌握和处理数据的能力，对数据接口的控制能力，经营者的盈利能力及利润率水平，技术创新的频率和速度、商品的生命周期、是否存在或者可能出现颠覆性创新等。

（三）相关市场的集中度。可以考虑相关平台市场的发展状况、现有竞争者数量和市场份额等。

（四）经营者集中对市场进入的影响。可以考虑市场准入情况，经营者获得技术、知识产权、数据、渠道、用户等必要资源和必需设施的难度，进入相关市场需要的资金投入规模，用户在费用、数据迁移、谈判、学习、搜索等各方面

19

的转换成本，并考虑进入的可能性、及时性和充分性。

（五）经营者集中对技术进步的影响。可以考虑现有市场竞争者在技术和商业模式等创新方面的竞争，对经营者创新动机和能力的影响，对初创企业、新兴平台的收购是否会影响创新。

（六）经营者集中对消费者的影响。可以考虑集中后经营者是否有能力和动机以提高商品价格、降低商品质量、减少商品多样性、损害消费者选择能力和范围、区别对待不同消费者群体、不恰当使用消费者数据等方式损害消费者利益。

对涉及双边或者多边平台的经营者集中，可能需要综合考虑平台的双边或者多边业务，并对直接和间接网络外部性进行评估。

第二十一条 救济措施

对于具有或者可能具有排除、限制竞争效果的经营者集中，反垄断执法机构将根据《反垄断法》第二十八条规定作出决定。对不予禁止的经营者集中，反垄断执法机构可以决定附加以下类型的限制性条件：

（一）剥离有形资产，剥离知识产权、技术、数据等无形资产或者剥离相关权益等结构性条件；

（二）开放网络或平台等基础设施、许可关键技术、终止排他性协议、修改平台规则或者算法等行为性条件；

（三）结构性条件和行为性条件相结合的综合性条件。

## 第五章 滥用行政权力排除、限制竞争

《反垄断法》禁止行政机关和法律、法规授权的具有管理公共事务职能的组织滥用行政权力排除、限制竞争。对于平台经济领域的滥用行政权力排除、限制竞争行为，依据《反垄断法》等法律法规进行调查,提出依法处理的建议。

第二十二条 滥用行政权力排除、限制竞争行为表现

行政机关和法律、法规授权的具有管理公共事务职能的组织从事下列行为，排除、限制平台经济领域市场竞争，可能构成滥用行政权力排除、限制竞争行为：

（一）限定或者变相限定单位或者个人经营、购买、使用其指定的平台经济领域经营者提供的商品，或者其他经营者提供的与平台服务相关的商品；

（二）对外地平台经济领域经营者设定歧视性标准、实行歧视性政策，采取专门针对外地平台经济领域经营者的行政许可、备案，或者通过软件、互联网设置屏蔽等手段，阻碍、限制外地平台经济领域经营者进入本地市场，妨碍商品在地区之间的自由流通；

（三）以设定歧视性资质要求、评审标准或者不依法发布信息等方式，排斥或者限制外地平台经济领域经营者参加

21

本地的招标投标活动；

（四）对外地平台经济领域经营者实行歧视性待遇，排斥、限制或者强制外地经营者在本地投资或者设立分支机构；

（五）强制或者变相强制平台经济领域经营者从事《反垄断法》规定的垄断行为；

（六）行政机关以规定、办法、决定、公告、通知、意见、会议纪要等形式，制定、发布含有排除、限制竞争内容的涉及平台经济领域市场主体经济活动的规章、规范性文件和其他政策措施。

第二十三条 公平竞争审查

行政机关和法律、法规授权的具有管理公共事务职能的组织制定涉及平台经济领域市场主体经济活动的规章、规范性文件、其他政策性文件以及"一事一议"形式的具体政策措施，应当按照《国务院关于在市场体系建设中建立公平竞争审查制度的意见》（国发〔2016〕34 号）规定进行公平竞争审查。

第六章 附则

第二十四条　本指南自公布之日起实施。



I, Karen Lee, hereby certify that I am competent to translate from Chinese to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation of the document entitled "Anti-Monopoly Guidelines for the Sector of Platform Economy (Draft for Comments)" from Chinese to English.

_____

Karen Lee

Sworn to before me this
11th day of January 2024

_____

Signature, Notary Public

KEVIN T. MULRYAN
Notary Public, State of New York
Reg. No. 02MU6375986
Qualified in New York County
Commission Expires 6|4|2026

_____

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 92 CITIES WORLDWIDE