**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ALIBABA GROUP HOLDING LTD. SECURITIES LITIGATION | No.: 1:20-cv-09568-GBD-JW |

# DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Jonathan K. Youngwood
jyoungwood@stblaw.com
425 Lexington Avenue
New York, New York    10017
Telephone: (212) 455-3539
Facsimile: (212) 455-2502

Stephen P. Blake
sblake@stblaw.com
Bo Bryan Jin
Bryan.jin@stblaw.com
2475 Hanover Street
Palo Alto, California    94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Counsel for Defendants Alibaba Group Holding
Limited, Daniel Yong Zhang and Maggie Wei Wu*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.      THE *BASIC* PRESUMPTION DOES NOT APPLY ........................................................... 2

II.     PLAINTIFFS ADMIT THERE IS NO DIRECT EVIDENCE OF PRICE
        IMPACT ................................................................................................................... 3

III.    PLAINTIFFS IDENTIFY NO INDIRECT EVIDENCE TO COUNTER
        DEFENDANTS' CLEAR SHOWING THAT NO PRICE IMPACT
        EXISTS ..................................................................................................................... 3

        A.      Plaintiffs Abandon Their Own Allegations To Spin Inchoate,
                Inconsistent Price Maintenance Theories ............................................... 4

        B.      Plaintiffs Fail To Refute Defendants' Putative Class Period
                Evidence ...................................................................................................... 7

        C.      Plaintiffs Ignore Evidence Of No Price Impact Post-Putative Class
                Period .......................................................................................................... 9

        D.      Plaintiffs Fail To Contest Genericism ..................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
   663 F. Supp. 3d 334. 18 (S.D.N.Y. 2023) ................................................................. 10

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) .......................................................................... 3, 4, 10

*Baliga v. Link Motion, Inc.*,
   2022 WL 16707361 (S.D.N.Y. Nov. 4, 2022) ............................................................ 10

*Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
   477 F. App'x 809 (2d Cir. 2012) ............................................................................ 2

*Glickenhaus & Co. v. Household Intern., Inc.*,
   787 F.3d 408 (7th Cir. 2015) ................................................................................ 6

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021) ........................................................................................ 6

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings*,
   338 F.R.D. 205 (S.D.N.Y 2021) ........................................................................... 10

*In re Bear Stearns Companies, Sec., Derivative, and ERISA Litig.*,
   2016 WL 4098385 (S.D.N.Y. July 25, 2016). ............................................................ 6

*In re IPO Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) .................................................................................... 2

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
   2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) ...................................................... 4, 10

*In re NIO, Inc. Sec. Litig.*,
   2023 WL 504861515 (E.D.N.Y. Aug. 8, 2023) ......................................................... 6

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) .............................................................................. 6

*Puddu v. NYGG (Asia) Ltd.*,
   2022 WL 2304248 (S.D.N.Y. June 27, 2022) ........................................................... 10

*Sjunde Ap-Fonden v. Goldman Sachs Grp.*,
   2024 WL 1497110 (S.D.N.Y. Apr. 5, 2024) .............................................................. 4

**GLOSSARY**

| Term | Definition |
|---|---|
| 20-F | Alibaba Group Holding Ltd.'s annual report for fiscal year 2020, filed with the SEC on Form 20-F on July 9, 2020 (ECF No. 108-1) |
| AC (or "Complaint") | Amended Consolidated Class Action Complaint (ECF No. 55) |
| ADSs | American Depository Shares |
| Alibaba (or "Company") | Defendant Alibaba Group Holding Limited |
| AML | The PRC Anti-Monopoly Law |
| Challenged Misstatements | Statements alleged by Plaintiffs' as misleading in AC ¶¶ 253-73 |
| D- __ | Defendants' exhibit no. __ in support of their opposition to class certification (ECF Nos. 108-1 to 108-35) |
| Defendants | Alibaba, its former CEO Daniel Yong Zhang, and its former CFO Maggie Wei Wu |
| Defs' Opp. | Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (ECF No. 107) |
| Draft Guidelines | SAMR's Anti-Monopoly Guidelines for the Sector of Platform Economy (ECF No. 108-11) |
| Hubbard Dec. | Supplemental Expert Declaration of Glenn Hubbard (concurrently filed) |
| Hubbard Report (or "Rpt.") | Expert Report of Glenn Hubbard (ECF No. 108-2) |
| MTD Opp. | Plaintiffs' Opposition to Alibaba Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (ECF No. 74) |
| Order | Court's Motion to Dismiss Memorandum and Order (ECF No. 83) |
| P- __ | Plaintiffs' exhibit no. __ in support of class certification (ECF Nos. 101-1 to 101-10; 114-1 to 114-28) |
| Pls' Br. | Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF No. 100) |
| Pls' Reply | Plaintiffs' Reply in Further Support of Their Motion for Class Certification (ECF No. 113) |
| SAMR | PRC regulator the State Administration for Market Regulation |
| SAMR Announcement | SAMR Investigation Announcement dated December 23, 2020 (ECF No. 108-7) |
| Tabak Report (or "Rpt.") | Expert Report of David I. Tabak, Ph.D. (ECF No. 101-1) |
| Tabak Reply | Expert Reply Report of David I. Tabak, Ph.D. (ECF No. 114-1) |
| Tabak Tr. | Deposition transcript of Dr. David Tabak, dated November 2, 2023 (ECF No. 108-22) |

**PRELIMINARY STATEMENT**

Plaintiffs' invocation of the *Basic* presumption to qualify for class treatment falters in the face of direct and indirect evidence that the Challenged Misstatements had no price impact. The Challenged Misstatements did not cause inflation in Alibaba's ADS price. Hubbard Rpt. ¶ 133. The very information Plaintiffs claim was fraudulently concealed—that Alibaba was continuing to practice exclusivity—was widely reported during the putative Class Period. *Id.* ¶¶ 85-90. Commentators explained, for example, that Alibaba "sign[ed] exclusive agreements with business partners to avoid competition," D-16, and expressed concern that proposed guidelines would "diminish[]" "Alibaba's capability to offer exclusive merchants." D-3. Indeed, Alibaba itself warned investors that its "current business practices" carried antitrust risk. 20-F at 39. Market knowledge is statistically proven by Alibaba's ADS price reaction to SAMR's announced Draft Guidelines taking aim at exclusivity practices. Hubbard Rpt. ¶ 82. And if this qualitative and quantitative evidence was not enough, when SAMR announced its investigation into Alibaba's exclusivity practices, commentators stated that they were "not surprised" by this purported corrective disclosure because the practices had "long been a source of friction." D-17, D-20. The evidence amply demonstrates why a presumption of class-wide reliance is not appropriate.

In reply, Plaintiffs accept nearly all of Defendants' expert's findings. Rather than mount an evidentiary defense, Plaintiffs abandon the Complaint's central theory of misrepresentation for a patchwork of disconnected, speculative theories. Plaintiffs have consistently argued—and the Court found plausible—that the Prior Practices Statement affirmatively misled the market to believe that Alibaba had stopped practicing exclusivity. Order at 18-19. Plaintiffs now suggest that Alibaba's statement did not change the *status quo*, but was instead "entirely ***consistent*** with what the market . . . expected," and somehow "maintained" an inflated price. Pls' Reply at 6, 8.

Plaintiffs offer no evidence to support these newfound speculations and, tellingly,

1

Plaintiffs' own expert does not opine that Alibaba's ADS was artificially inflated.    Instead, Tabak acknowledges marketplace knowledge of Alibaba's continued exclusivity practices during the putative Class Period.    His concession of "heterogeneous" investor beliefs dooms the application of *Basic* and proves individual issues predominate.    Certification should be denied.

## ARGUMENT

### I.    THE *BASIC* PRESUMPTION DOES NOT APPLY

Defendants' expert has undertaken a comprehensive review of market commentary, conducted statistical analysis of Alibaba's ADS price reaction to key statements and regulatory events, and opines that the market understood, during the putative Class Period, that Alibaba was practicing exclusivity.    Hubbard Rpt. ¶¶ 80-90.    In response, Tabak concedes that some investors were aware of the very thing Plaintiffs allege the market was misled about—that Alibaba continued to deploy exclusivity practices during the putative Class Period.    Tabak states:

> I do not deny that some market participants viewed the exclusivity portion of the November Draft Guidelines to be potentially negative to Alibaba.    But, [] this does not mean that all relevant market participants believed that Alibaba was engaging in exclusivity . . ..    It is more plausible that some market participants did not believe or were uncertain if Alibaba was practicing exclusivity. . .

Tabak Reply ¶ 58.    This finding goes to the very foundations of the *Basic* presumption upon which Plaintiffs rely for class certification.    Because "a section 10(b) claimant must allege and prove that the claimant traded in ignorance of the fact that the price was affected by the alleged manipulation," Plaintiffs cannot proceed on a class basis where "[t]he claim that lack of knowledge is common to the class is thoroughly undermined."    *See In re IPO Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2006); *see also Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 813 (2d Cir. 2012) (affirming denial of class certification in a Section 11 case where evidence "indicated that individual knowledge inquiries might be necessary").

It defies common sense for Plaintiffs to invoke a presumption of reliance when they

2

simultaneously concede that a portion of their putative class did not actually "trade[] in ignorance of the fact" that Alibaba was engaging in exclusivity practices.   Not only have Defendants presented evidence of widespread awareness of the allegedly concealed fact, Plaintiffs' own expert "thoroughly undermine[s]" the issue of lack of knowledge.   Tabak's opinion proves individualized issues of reliance predominate, and thus the class cannot be certified.

## II.    PLAINTIFFS ADMIT THERE IS NO DIRECT EVIDENCE OF PRICE IMPACT

Hubbard demonstrates that there is no direct evidence to support price impact because none of the Challenged Misstatements are associated with a statistically significant increase in Alibaba's ADS price.   Hubbard Rpt. ¶¶ 57, 59-60, 65, 67.   In response, Plaintiffs do not rebut—and thereby concede—a lack of direct front-end evidence of price impact.   Pls' Reply at 6-8.[1]

## III.    PLAINTIFFS IDENTIFY NO INDIRECT EVIDENCE TO COUNTER DEFENDANTS' CLEAR SHOWING THAT NO PRICE IMPACT EXISTS

After failing to challenge Defendants' direct evidence, Plaintiffs accuse Defendants of "ignor[ing]" the price maintenance theory.   Pls' Reply at 2.   Not so.   Although a price maintenance theory is, in the words of the Second Circuit, "at most backward-looking, indirect evidence" of price impact, Defendants dedicated the bulk of their opposition brief to explaining why there is no indirect evidence supporting a price maintenance theory.   *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 93 (2d Cir. 2023) ("*Goldman 2023*") (citations omitted); *see also* Defs' Opp. at 12-22; Hubbard Rpt. ¶¶ 69-115.

It is Defendants' burden to show by a preponderance of the evidence that the Challenged Misstatements did not impact the price of Alibaba's ADS.   Defendants have done so, systematically proving the inapplicability of a price maintenance theory: ***First***, by showing there

---

[1] While Plaintiffs' brief splits hairs over Hubbard's findings related to September 30, 2020, Pls' Reply at 9-10, Plaintiffs' expert does not contest Hubbard's findings.   *See generally* Tabak Reply.   As such, Hubbard's finding of no front-end evidence of price impact is unrebutted.   *See* Hubbard Rpt. ¶¶ 57, 60, 65.

is no evidence that the market interpreted the Prior Practices Statement to mean that Alibaba had ceased practicing exclusivity.    Hubbard Rpt. ¶¶ 50, 54-55, 78.    ***Second***, by showing—through statistical analysis and an exhaustive review of thousands of analyst reports and news articles— widespread market awareness that Alibaba practiced exclusivity during the putative Class Period. *Id.* ¶¶ 80-90.    Courts in this Circuit have found such evidence shows lack of price impact in price maintenance cases.    *See In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *9 (S.D.N.Y. Mar. 29, 2024) ("[e]vidence from contemporaneous analyst reports [] supports the absence of price impact[;] . . . no analysts referenced or discussed [the alleged misstatements]" and "multiple analysts reported on" the allegedly concealed facts); *Sjunde Ap-Fonden v. Goldman Sachs Grp.*, 2024 WL 1497110, at *16 (S.D.N.Y. Apr. 5, 2024) (recommending no price impact as to certain alleged misstatements, noting "the market was well aware" of the allegedly concealed facts).[2]    Defendants have shown that, more likely than not, the Challenged Misstatements did not have price impact and, as discussed below, Plaintiffs identify no countervailing indirect evidence.

A.    **Plaintiffs Abandon Their Own Allegations To Spin Inchoate, Inconsistent Price Maintenance Theories**

The parties and their experts all agree that the price maintenance theory requires that alleged misrepresentations "maintain" the *status quo*.    Pls' Reply at 5-6; Tabak Reply at 4 n.10. Hubbard found Plaintiffs' legal theories to be incompatible with price maintenance because Plaintiffs allege that the Prior Practices Statement changed—rather than maintained—*status quo* market expectations.    Hubbard Rpt. ¶ 40.    Plaintiffs reply by abandoning their own allegations.

At motion to dismiss, Plaintiffs argued—and the Court found plausible—that the market

---

[2] Plaintiffs downplay Defendants' powerful evidence showing no market commentary about the Prior Practices Statement, saying it is not relevant because this is a price maintenance case.    Pls' Reply at 8-9 n. 7.    As *Kirkland* and *Sjunde Ap-Fonden* demonstrate, such evidence is highly relevant in price maintenance cases.    *See also Goldman 2023*, 77 F.4th at 104 (that no analyst reports referenced the alleged misstatements was evidence that "sever[ed] the link between back-end price drop and front-end misrepresentation").

was aware that Alibaba practiced exclusivity before the putative Class Period, but "Alibaba's description of its 'prior' exclusivity practices" in July of 2020 "*affirmatively created an impression*" that "Alibaba was *no longer* requiring exclusivity from merchants at all."   Order at 18-19 (emphases added).   Now, in a complete reversal, Plaintiffs claim that the Prior Practices Statement was "entirely *consistent* with what the market would have expected at that time."   Pls' Reply at 8.   Plaintiffs' retreat only reinforces Hubbard's finding of no price impact.

Compounding their failure, Plaintiffs offer the Court no evidence, just a patchwork of alternative, mutually inconsistent *theories*—and commit to none.   First, Plaintiffs suggest that after "SAMR's stark instructions at [a] November 5, 2019 meeting that exclusivity was illegal, investors would expect Alibaba to comply," possibly causing the market's *status quo* expectation about Alibaba's practices to shift at that time.   *Id*. (emphasis omitted).   Next, Plaintiffs posit that statements made as early as 2015 could have caused the "market to believe . . . that [Alibaba] did not use exclusivity practices."   *Id.* at 5-6, 8 n.6, B-1.   Plaintiffs also theorize that perhaps Alibaba's Prior Practices Statement on November 13, 2019 *did* change the market's expectations, but confounding news disguised the effect.   *Id.* at 10.   Finally, Plaintiffs take the novel position that misinformation—and presumably price inflation—may have entered Alibaba's ADS price through statements that became public during the putative Class Period but which are not the Challenged Misstatements.   Pls' Reply at 1, 12-13; P-22, P-33, P-35.[3]

Plaintiffs offer no evidentiary support for their shifting theories.   In fact, Plaintiffs' own expert does not affirmatively opine that the Challenged Misstatements had price impact and does not adopt any of their new theories.   *See* Tabak Rpt.; Tabak Reply.   This contrasts sharply with cases on which Plaintiffs rely.   *See*, *e.g.*, *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *15

---

[3] Such a theory would not support price impact of the Challenged Misstatements.   *See infra* at pp. 8-9.

(E.D.N.Y. Aug. 8, 2023) ("[p]laintiffs submit expert reports from [two experts], each of whom opines that the misrepresentations had a price impact."); *Pirnik v. Fiat Chrysler Automobiles, N.V.,* 327 F.R.D. 38, 46 (S.D.N.Y. 2018) (discussing "price impact[] identified by" plaintiffs' expert).

Plaintiffs' theories are not only unsupported, they are directly contradicted by Plaintiffs' own pleadings and Hubbard's findings.    First, the Complaint highlights, and Hubbard corroborates, ample market evidence showing that—in November 2019 or earlier—the market was aware that Alibaba was practicing exclusivity.[4]    Second, a change in the *status quo* understanding of Alibaba's practices on November 5, 2019 would trigger analyst commentary and likely would cause a statistically significant price movement.    *See* Tabak Tr. 96:10-23.    Hubbard confirms that there is no such evidence.    Hubbard Dec. ¶ 10.    Finally, Hubbard found no confounding effect on November 13, 2019.    *Id.* at ¶¶ 6-9.    Plaintiffs' theories fail to show price impact.

Likely recognizing the weakness of their evidentiary position, Plaintiffs argue that they need not present the Court with a coherent price maintenance theory in response to Defendants' evidence-based challenge.    Pls' Reply at 7.    The Supreme Court disagrees, explaining that:

> In most securities-fraud class actions, . . . the plaintiffs and defendants submit competing expert evidence on price impact. . . . The district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact. The defendant's burden of persuasion will have bite only when the court finds the evidence in equipoise—a situation that should rarely arise.

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021) ("*Goldman 2021*").    Such an assessment of the evidence compels a finding of no price impact.[5]

---

[4]  *See, e.g.*, AC ¶¶ 97, 110-12 (in October and November 2019 "Alibaba did not deny that it u[sed] 'Choose One of Two' practices" in response to allegations); *id.* ¶¶ 91-96 (citing articles discussing Alibaba's practices in November 2019 and January 2020); *id.* at 31 n.39 (citing an article dated November 6, 2019 titled "Alibaba's Tmall slapped with another lawsuit over abuse of market power on the eve of 'Double 11."); *see also* Hubbard Dec. ¶ 4.    The Court also found plausible that the pre-putative Class Period market was aware Alibaba practiced exclusivity.    Order at 18-19.

[5]  Plaintiffs' case law—which predates *Goldman 2021*'s instruction—does not excuse them from presenting a coherent

B.      **Plaintiffs Fail To Refute Defendants' Putative Class Period Evidence**

Hubbard identified clear quantitative and qualitative evidence that the Challenged Misstatements did not have price impact because the market was aware during the putative Class Period that Alibaba was engaged in exclusivity practices.    Hubbard Rpt. ¶¶ 82, 85-89.[6]    Most pointedly, when SAMR released Draft Guidelines related to exclusivity on November 10, 2020, Alibaba's ADS price experienced a sharp decline and market commentators expressed concern that, due to its ongoing exclusivity practices, Alibaba would be targeted by SAMR.    *Id.*

In response, Plaintiffs again run away from their own allegations.    Plaintiffs previously alleged in no uncertain terms that "on November 10, 2020, the SAMR published new rules under China's AML further targeting 'choose one' practices."    MTD Opp. at 10; *id* at 1 ("Alibaba was the target of new rules governing restrictive trading …"); AC ¶¶ 128-29, 373 (quoting commentary indicating exclusivity-related concerns caused Alibaba's ADS price decline).    Yet Plaintiffs now claim that the price movement was in response to generalized "regulatory tightening" and a "laundry list" of other practices in the Draft Guidelines.    Pls' Reply at 3, 10-11.

Plaintiffs' disingenuous position is unsupported, as Hubbard's analysis confirms. Hubbard found Alibaba's ADS price reaction on November 10, 2020 was statistically significant, and therefore could not be a reaction to a "general risk of increased regulation" affecting the entire

---

price inflation theory.    In *Pirnik*, the court found plaintiffs *did* explain how inflation entered the stock price. 327 F.R.D. at 45.    And the price impact "assumptions underlying the 7th Circuit's opinions in" *Glickenhaus & Co. v. Household Intern., Inc.*, 787 F.3d 408 (7th Cir. 2015) have been criticized in this Circuit.    *See In re Bear Stearns Companies, Sec., Derivative, and ERISA Litig.*, 2016 WL 4098385, at *9 (S.D.N.Y. July 25, 2016).

[6] Plaintiffs claim some of the putative Class Period market evidence Defendants highlight should be disregarded because it "allude[s] to pre-Class Period events" or because Defendants overstate its significance.    Pls' Reply at 13-14.    But Plaintiffs' selective quotes omit direct discussion of ongoing practices.    *See*, *e.g.*, D-16 at 2 (the "proposed regulations will prevent companies from signing exclusive agreements . . ., a move that Alibaba has adopted. . . ." Post-ban, "some major brands may open up official flagship online stores with JD and Pinduoduo"); D-3 at 2 (noting that "[a]fter the antitrust rules, Alibaba's capability to offer exclusive merchants on its platforms would be diminished"); D-12 at 2 ("Many merchants would be interested in having a presence on multiple platforms if their traffic on the main platform is not affected.").    Furthermore, putative Class Period references to allegations and complaints, even those pre-dating the putative Class Period, demonstrate the market's ongoing awareness and concern.

industry.    Hubbard Dec. ¶ 18.    Hubbard also found that Alibaba and Meituan—two companies consistently in the news for "choose one of two"—suffered the largest negative reactions on that date, reinforcing the link, already evident from market commentary, between Alibaba's ADS price drop and market knowledge of and concern over Alibaba's exclusivity practices.    *Id*. ¶¶ 19-21.

Plaintiffs and their expert next identify four analyst reports that, they claim, show "some market participants did not believe or were uncertain if Alibaba was practicing exclusivity" during the putative Class Period.    Pls' Reply at 12.    In fact, these reports provide further evidence of market awareness of Alibaba's ongoing exclusivity practices.    For example, a November 25, 2020 J.P. Morgan article Plaintiffs cite explains that "offering exclusive products is not *only* Alibaba's issue but the *entire industry*'s issue."    P-36 (emphases added).    A KeyBanc report, also cited by Plaintiffs, explains that "despite potential impact on their business *if* [Alibaba and others] fully comply with the guidelines, we don't expect *significant changes* in [their] core business."    P-31 (dated Nov. 11, 2020) (emphases added).    KeyBanc cites interviews where merchants state they hope the guidelines will put a stop to "pressure from Alibaba."    *Id.*[7]

Finally, Plaintiffs point out that on November 20, 2020 Morgan Stanley cited Alibaba as stating that it "does not operate business on exclusivity" and "[m]ost brands/merchants have multi-platform strategy," P-33, while Goldman Sachs reported Alibaba's comments in an investor meeting on November 23, 2020 that it was "compliant" and "no merchants are being restricted on [Alibaba's] platform."    P-35, P-37.    Contrary to Plaintiffs' broad claim, these two reports reflect only Alibaba's understanding that encouraging exclusivity through traffic resource allocation was in compliance with the Draft Guidelines.    Moreover, these November 2020 reports in no way

---

[7] There is no weight to Plaintiffs' claim that price impact exists unless the market knew the "full extent" of Alibaba's practices.    Pls' Reply at 10, 18.    Plaintiffs' misrepresentation theory is that Alibaba misled the market about the fact that it "continued to use exclusive and restrictive trading practices" *at all*, Pls' Br. at 3, not that the market was misled about the "full extent" of Alibaba's practices.

support a finding that the ***Challenged Misstatements*** had price impact.    Hubbard Dec. ¶¶ 13-15. The reports are dated four months after the Prior Practices Statement and make no reference to it or any other Challenged Misstatement.    *Id.*    Instead, the reports reference an entirely different source: statements made in late-November, attributed to Alibaba.    *Id.*    Prior to the purported mid-November statements, these same analysts indicated Alibaba was continuing to practice exclusivity.    *Id*.    Thus, as Hubbard explains, these two reports cannot support a finding that the Challenged Misstatements had price impact.[8]

### C.    Plaintiffs Ignore Evidence Of No Price Impact Post-Putative Class Period

Defendants have presented strong post-putative Class Period evidence of no price impact: not a single analyst report suggests "surprise" at purported revelation of Alibaba practicing exclusivity.    Hubbard Rpt. ¶ 106.    In fact, analyst and news coverage show the opposite, with reports noting, for example, that "[i]f the political concerns around Alibaba are new, the complaints that Beijing's main market regulator raised on Thursday aren't," and the "'Choose One From Two' controversy between Alibaba and other e-commerce platforms has existed for years."    *Id.* ¶ 107 (citing news articles).    Plaintiffs do not contest this showing, despite the fact that their own expert acknowledges its importance.    *See* Tabak Tr. 74:19-76:8 (whether analysts "described" a disclosure as "surprising or unsurprising" is primary evidence of change in market's expectation).

Plaintiffs instead complain that Defendants' expert "fail[ed] to quantify that the ***entirety*** of the price drop was due to non-fraud-related factors."    Pls' Reply at 20.    Again, Plaintiffs mischaracterize what Defendants show.    Hubbard expressly opined that *none* of the price drop is attributable to fraud-related factors.    Hubbard Rpt. ¶¶ 91, 93.    His finding is supported by

---

[8]  Plaintiffs' final attack on Defendants' market evidence is to speculate that if Alibaba's practices were widely-known, SAMR would not have been "fooled" and would have investigated sooner.  Pls' Reply at 4, 21.    They offer no support for this theory.    In contrast, Plaintiffs' pleadings make clear that SAMR's increased interest in exclusivity was the catalyst for the investigation.    *See*, *e.g.*, AC ¶ 118 (detailing SAMR's "ever-increasing focus" on exclusivity).

statistical analysis and market commentary, as well as analysis of the content of the Challenged Misstatements and the SAMR Announcement. *Id.* Hubbard also illustrates for the Court how the events that occurred on December 23, 2020 would be expected to (and did) cause a non-fraud-related drop in Alibaba's ADS price. *Id.* ¶¶ 94, 115. Therefore, Hubbard concluded that the price drop does not contradict his finding of no price impact. *Id.*; Hubbard Dec. ¶ 22.

D.    **Plaintiffs Fail To Contest Genericism**

Defendants have shown that nearly all of Plaintiffs' Challenged Misstatements are too generic to support a finding of price impact under the Supreme Court and Second Circuit's recently-announced genericism test. Defs' Opp. at 21-23. In response, Plaintiffs claim that Defendants "ignore most of the specific [Growth and Revenue Statements],"[9] and highlight the following statement as one of the most specific: "The marketplaces of our core commerce business attract and retain a large number of consumers and merchants. We primarily generate revenue from merchants." Pls' Reply at 22. But Plaintiffs fail to explain how this statement is more specific than, for example, the generic statements in *Goldman 2023* such as "[w]e have extensive procedures and controls that are designed to identify and address conflicts of interest, including those designed to prevent the improper sharing of information." 77 F.4th at 82. The Court should not certify claims regarding these highly generic statements. *See In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *8; Defs' Opp. at App'x A.[10]

---

[9] Plaintiffs do not contest that many of the Challenged Misstatements do, in fact, suffer from genericism, including the "General Business Risks" disclosures which they do not mention. *See* Defs' Opp. at 21-23, A-3 to A-5.

[10] Finally, Plaintiffs' cases do not suggest that the *Affiliated Ute* presumption applies here, where their misrepresentation theory centers around an alleged "affirmative[]" misstatement. *See* Order at 18-19; *see also Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 366 n. 18 (S.D.N.Y. 2023) ("Second Circuit precedent has limited [*Affiliated Ute*] solely to pure-omission cases"). In *Puddu v. NYGG (Asia) Ltd.*, no affirmative statements were alleged in the class period. 2022 WL 2304248, at *4 (S.D.N.Y. June 27, 2022). In *Baliga v. Link Motion, Inc.*, at the pleadings stage, the court found the presumption plausibly applied but stated that *Affiliated Ute* was limited to cases where "reliance as a practical matter is impossible to prove." 2022 WL 16707361, at *11 (S.D.N.Y. Nov. 4, 2022). Finally, defendants in *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings* did not contest the applicability of *Affiliated Ute.* 338 F.R.D. 205, 216 (S.D.N.Y 2021).

DATED:    May 17, 2024              SIMPSON THACHER & BARTLETT LLP

                                    By:    /s/ Stephen P. Blake
                                        Stephen P. Blake

                                        Jonathan K. Youngwood
                                        jyoungwood@stblaw.com
                                        425 Lexington Avenue
                                        New York, New York    10017
                                        Telephone: (212) 455-3539
                                        Facsimile: (212) 455-2502

                                        Stephen P. Blake
                                        sblake@stblaw.com
                                        Bo Bryan Jin
                                        Bryan.jin@stblaw.com
                                        2475 Hanover Street
                                        Palo Alto, California    94304
                                        Telephone: (650) 251-5000
                                        Facsimile: (650) 251-5002

                                        *Counsel for Defendants Alibaba Group Holding
                                        Limited, Daniel Yong Zhang and Maggie Wei Wu*