**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ALIBABA GROUP LTD. SECURITIES LITIGATION | Master File No. 1:20-CV-09568-GBD-JW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANTS' SUR-REPLY AND SUR-REPLY DECLARATION**

Plaintiffs respectfully ask the Court to strike portions of Defendants' Sur-Reply in Further Opposition to Plaintiffs' Motion for Class Certification (ECF No. 117, the "Sur-Reply") and Supplemental Expert Declaration of Glenn Hubbard (ECF No. 118, the "Hubbard Supplemental Declaration"), which improperly discuss evidence for the first time on sur-reply.

## I.    INTRODUCTION AND PROCEDURAL OVERVIEW

On October 6, 2024, Plaintiffs moved to certify a class of investors who purchased Alibaba ADSs during the period July 10, 2020 through December 23, 2020. ECF Nos. 99-101 (the "Motion"). In support, Plaintiffs submitted the expert report of Dr. David Tabak, demonstrating that Alibaba's ADSs traded in an efficient market during the Class Period and that Class member damages can be calculated with a common methodology. ECF. No. 101-1 at 1.

Defendants did not oppose those findings. Instead, Defendants opposed Plaintiffs' Motion by arguing that there is no price impact in this case because the market was supposedly "well aware of Alibaba's use of exclusivity during the putative Class Period." ECF No. 107 (the "Opposition") at 3. In support of their price impact argument, Defendants submitted the expert report of Dr. Glenn Hubbard. ECF No. 108-2 at 2 (the "Hubbard Report"). In his report, Dr. Hubbard explained that a key question underlying Plaintiffs' theory was to ask "[i]s there evidence that market participants believed that Alibaba was not practicing exclusivity during the Proposed Class Period?" Hubbard Report ¶42(2)(a). Dr. Hubbard explained that to find price impact, "the answer to this question is required to be 'yes'" but suggested the answer is "no," thus supposedly proving the absence of price impact. Hubbard Report ¶80. Dr. Hubbard opined that "my analysis finds substantial evidence that market participants discussed that Alibaba was practicing exclusivity during the Proposed Class Period," and he claimed to have based his opinion on his "review[] [of] the 148 analysts' reports in the Alibaba Analysts' Report Universe that were published from November 9, 2020 to December 1, 2020[.]"

1

Hubbard Report ¶¶80, 84. But Dr. Hubbard chose not to address reports about Alibaba published during that period that conflicted with his opinion. In short, Dr. Hubbard chose to ignore evidence that would have answered his question "yes," and thus supported the presence of price impact.

On April 19, 2024, Plaintiffs filed their Reply, responding to Defendants' price impact arguments. ECF Nos. 113-14. In their Reply, Plaintiffs identified evidence ignored by Defendants and Dr. Hubbard that showed market participants believed that Alibaba was *not* practicing exclusivity during the Class Period. Plaintiffs highlighted various analyst reports and news articles ***produced by Defendants and Dr. Hubbard*** that were not addressed in Defendants' Opposition or the opening Hubbard Report. ECF No. 113 at 10-16. For example, Plaintiffs identified analysts that, in reporting on the November 10, 2020 Draft Guidelines, reported that Alibaba was already in compliance, including explicitly with the provision on exclusivity. In other words, Plaintiffs pointed to documents produced by Defendants that show market participants believed Alibaba was *not* practicing exclusivity during the Class Period, including the following four reports (ECF No. 113 at 12):

- Nov. 11, 2020, KeyBanc: "[a]ll of our [merchant] interviewees are positive about the guideline as ***they can cooperate with other platforms without potential pressure from Alibaba***." Ex. P-31;

- Nov. 20, 2020, Morgan Stanley: "Market concerns around the draft appear to be less of a concern for Alibaba: 1) Concentration risk: eCommerce is one of the least concentrated sectors . . . ; 2) Exclusivity: ***Alibaba highlights it does not operate business on exclusivity***. Most brands/merchants have multi-platform strategy…." Ex. P-33;

- Nov. 25, 2020, Goldman Sachs: "A compliant BABA,…" reported "Alibaba **remains compliant with all rules** in the Draft Guidelines" and "***no merchants are being restricted on their platform***." Ex. P-35;

- Nov. 25, 2020, J.P. Morgan: "platform leaders (i.e. Alibaba and Tencent) are not too concerned about" the Draft Guidelines, as "their business model and key competitive advantages are ***not built on misuse of dominant market position***." Ex. P-36.

On May 17, 2024, Defendants filed their Sur-Reply and the Hubbard Supplemental Declaration. ECF Nos. 117-18. Both documents improperly address, for the first time, the above-cited evidence that Defendants and Dr. Hubbard previously chose to ignore. Sur-Reply at 8-9; Hubbard

Supplemental Decl. ¶¶11-15. Further, in providing this new analysis, Dr. Hubbard changed the "key question" quoted above that he purported to answer. Finally, the Hubbard Supplemental Declaration also improperly submits new evidence in its Appendix B, which Plaintiffs had no opportunity to address. This evidence and arguments raised for the first time in the Sur-Reply could and should have been made in their Opposition and discussed in Dr. Hubbard's initial report but were not. Defendants, having read the reports and deciding not to include them, have no grounds now to submit new analysis or arguments regarding them in a Sur-Reply. Defendants' attempts to assert new arguments and belatedly address evidence that was in their possession all along should be stricken from the record.

## II. THE COURT SHOULD STRIKE PORTIONS OF DEFENDANTS' SUR-REPLY AND THE HUBBARD SUPPLEMENTAL DECLARATION AS IMPERMISSIBLE NEW EVIDENCE AND ARGUMENT

### A. Legal Standards

"Arguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006) (Sotomayor, J.) ("a court should not consider arguments that are raised for the first time in a reply brief."). Further, "[i]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Monaghan v. Airlines*, 2018 WL 3682482, at *4 (E.D.N.Y. Aug. 2, 2018) (quoting *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010)); *D'Alessandro v. Arrow Pharmacy Holdings, LLC*, 2023 WL 1967245, at *6 (D. Conn. Feb. 13, 2023) ("it is well established that a party cannot 'attempt to cure deficiencies in its moving papers' by introducing new evidence in its reply when the effect would be to deprive the opposing party of any opportunity to respond.") (internal quotation omitted).

Defendants' Sur-Reply is akin to a reply in further support of their price impact arguments, which were put at issue for the first time in Defendants' class certification Opposition. Defendants are

not permitted to introduce new evidence for the first time in their Sur-Reply, particularly where that evidence was in their possession when they filed their Opposition challenging price impact.

**B.      The Court Should Strike The New Arguments And Evidence In The Hubbard Supplemental Declaration And The Sur-Reply As Impermissible**

Defendants and Dr. Hubbard produced the above-cited analyst reports to Plaintiffs in connection with class certification discovery. However, Defendants chose not to address those reports in their Opposition and Dr. Hubbard chose not to address them in the opening Hubbard Report.

Now, for the first time, Defendants and Dr. Hubbard try to belatedly address these reports and put their own spin on what beliefs about Alibaba's use of exclusivity were expressed in those reports and how those reports may have been interpreted by other market participants. Sur-Reply at 8-9; Hubbard Supplemental Decl. ¶¶11-15. This is inappropriate in a Sur-Reply. Dr. Hubbard claimed to have reviewed these reports in drafting his opening report. Hubbard Report ¶84 ("I reviewed the 148 analysts' reports in the Alibaba Analysts' Report Universe that were published from November 9, 2020 to December 1, 2020 (three weeks after the effective date of the November Draft Guidelines)."). Dr. Hubbard also specifically testified to having reviewed the Goldman Sachs and Morgan Stanley reports quoted above. *See* Ex. P-40 ("Hubbard Tr."), 139-156 at 149:11-18, 154:25-155:4, 156:3-12, attached to the concurrently-filed Declaration of Kara M. Wolke. Dr. Hubbard made a choice: he *chose* not to address this highly relevant evidence in his opening report. Dr. Hubbard waived his right to address it now.

During Dr. Hubbard's deposition, Plaintiffs' counsel explicitly asked whether his opening report discussed the most relevant evidence regarding his opinions, to which Dr. Hubbard responded, "yes." *See* Ex. P-40 (Hubbard Tr.) at 10:11-14. Plaintiffs' counsel also asked Dr. Hubbard if he was aware of any evidence that is "relevant to [his] opinions that is not discussed in [his] report" to which Dr. Hubbard responded "[n]one of which I'm aware." *Id.* at 10:15-19. However, later in the deposition,

Dr. Hubbard conceded he was aware of the above-quoted Goldman Sachs and Morgan Stanley reports but chose to "reject" them without explanation in his report. *See generally id.* at 139-156.

Dr. Hubbard's Supplemental Declaration also subtly changed his analysis in response to the evidence he was confronted with at his deposition and in Plaintiffs' Reply. As set forth above, the opening Hubbard Report stated a key question on price maintenance he sought to answer was "[i]s there evidence that market participants believed that Alibaba was **not** practicing exclusivity during the Proposed Class Period?" Hubbard Report ¶¶42(2)(a), 80 (emphasis added). A "yes" answer supports the presence of price impact. When confronted with evidence that clearly shows the answer to that question is "yes," Dr. Hubbard changed the question in his Supplemental Declaration to ask "whether there was evidence that market participants were aware that Alibaba engaged in exclusivity practices during the Proposed Class Period." Hubbard Supplemental Decl. ¶12. But that is **not** the question he posed in his opening report, and he should not be allowed to amend his opinions in this manner— including by reframing the key question presented—on a Sur-Reply.

Additionally, the Hubbard Supplemental Declaration improperly submits new affirmative evidence. Specifically, Dr. Hubbard, for the first time, submits a list of stock price returns on November 10, 2020 for 23 companies that Dr. Hubbard says were Alibaba's competitors. Hubbard Supplemental Decl. ¶¶19-20, Appendix B. Considering this evidence would prejudice Plaintiffs because they and their expert had no opportunity to evaluate or respond to it. For instance, there is no evidence in the record of what, precisely, led to the various stock price declines of the companies listed on Appendix B, nor is the record developed on whether and to what extent those other companies practiced exclusivity. Dr. Hubbard notes that Alibaba's price decline on November 10, 2020 was surpassed by Meituan's price decline, and concludes that this further supports his opinion that exclusivity was the "featured part" of the Draft Guidelines. Hubbard Supplemental Decl. ¶20. But the

5

record is ***not at all*** developed on the question of ***Meituan's*** business practices and the various risks

analysts and Meituan's investors believed it faced under the Draft Guidelines. And the record certainly

does not support ignoring the Alibaba-specific analyst reports discussed by Dr. Tabak that show that

exclusivity was ***not*** "the featured" provision of the Draft Guidelines. Dr. Hubbard's belated

introduction of this purported evidence deprives Plaintiffs of the ability to explore these and other

relevant questions.

Finally, the Court should decline to consider the portions of Defendants' Sur-reply that rely on

Dr. Hubbard's belated discussion of the above-discussed analyst reports and improper introduction of

competitor price movements. Sur-Reply at 7-8 (citing Hubbard Supplemental Decl. ¶¶18-21); *id.* at 8

(discussing for the first time the above-quoted KeyBanc, Morgan Stanley, Goldman Sachs, and J.P.

Morgan reports, which were in Defendants possession and which their expert claims to have reviewed

before the Opposition was filed). All of this information was in Defendants' possession when they

filed their Opposition arguing about the market's supposed beliefs regarding Alibaba's use of

exclusivity, and it could—and should—have been addressed there.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the following

portions of the Hubbard Supplemental Declaration and Defendants' Sur-Reply which improperly

make new arguments for the first time based on evidence that was in Defendants' possession at the

time their Opposition was filed:

- Hubbard Supplemental Decl. ¶¶11-15, 19-21; and

- Sur-Reply from the top of page 8 to the top of page 9 until the beginning of
  Subsection III.C (discussing Alibaba competitor returns following the Draft
  Guidelines and discussing for the first time the KeyBanc, Morgan Stanley,
  Goldman Sachs, and J.P. Morgan analyst reports which were in Defendants'
  possession and known to their expert prior to the filing of the Opposition).

Dated: May 28, 2024                    **GLANCY PRONGAY & MURRAY LLP**

                                       By: */s/ Kara M. Wolke*
                                       Kara M. Wolke (*pro hac vice*)
                                       Melissa C. Wright (*pro hac vice*)
                                       GLANCY PRONGAY & MURRAY LLP
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, California 90067
                                       Telephone: (310) 201-9150
                                       kwolke@glancylaw.com
                                       mwright@glancylaw.com

                                       *Lead Counsel and proposed Class Counsel*

                                       Jeremy A. Lieberman
                                       Jonathan D. Park
                                       POMERANTZ LLP
                                       600 Third Avenue
                                       New York, New York 10016
                                       Telephone: (212) 661-1100
                                       jalieberman@pomlaw.com
                                       jpark@pomlaw.com

                                       Patrick V. Dahlstrom
                                       POMERANTZ LLP
                                       10 South LaSalle Street, Suite 3505
                                       Chicago, Illinois 60603
                                       Telephone: (312) 377-1181
                                       pdahlstrom@pomlaw.com

                                       Peretz Bronstein
                                       BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
                                       60 East 42nd Street, Suite 4600
                                       New York, New York 10165
                                       Telephone: (212) 697-6484
                                       peretz@bgandg.com

                                       Frank R. Cruz
                                       THE LAW OFFICES OF FRANK R. CRUZ
                                       1999 Avenue of the Stars
                                       Suite 1100
                                       Los Angeles, CA 90067
                                       Telephone: (310) 914-5007
                                       info@frankcruzlaw.com

7

Lesley Portnoy
THE PORTNOY LAW FIRM
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
lesley@portnoylaw.com

*Additional Counsel*

**PROOF OF SERVICE**

I hereby certify that on this 28th day of May, 2024, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Kara M. Wolke*
Kara M. Wolke

9