**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ALIBABA GROUP HOLDING LTD. SECURITIES LITIGATION | No.: 1:20-cv-09568-GBD-JW |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**
**PORTIONS OF DEFENDANTS' SUR-REPLY AND SUR-REPLY DECLARATION**

Jonathan K. Youngwood
jyoungwood@stblaw.com
425 Lexington Avenue
New York, New York    10017
Telephone: (212) 455-3539
Facsimile: (212) 455-2502

Stephen P. Blake
sblake@stblaw.com
Bo Bryan Jin
Bryan.jin@stblaw.com
2475 Hanover Street
Palo Alto, California    94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Counsel for Defendants Alibaba Group Holding*
*Limited, Daniel Yong Zhang and Maggie Wei Wu*

## PRELIMINARY STATEMENT

Plaintiffs' motion for class certification made only passing reference to the central issue in dispute—whether Defendants' Challenged Misstatements[1] had price impact. *See* Dkt. 100 at 21-23. The price impact of the Challenged Misstatements was not even mentioned by Plaintiffs' expert, Dr. Tabak, in his 29-page opening report. Dkt. 101-1. Plaintiffs chose this tactic despite the fact that price impact arguments are an increasingly common, and often successful, means of challenging securities class certification. *See, e.g., In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *9 (S.D.N.Y. Mar. 29, 2024); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 2024 WL 1497110, at *16 (S.D.N.Y. Apr. 5, 2024); *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 93 (2d Cir. 2023).

Plaintiffs' sandbagging tactic forced Defendants to speculate what price impact arguments Plaintiffs might raise in Reply. Defendants' expert, Dr. Hubbard, nevertheless covered the waterfront by laying out multiple possible price impact theories and then methodically disproving each one. *See* Hubbard Report at 19-27. In reaching his conclusion that the Challenged Misstatements did not have price impact, Dr. Hubbard reviewed over 5,000 analyst reports and news articles and conducted detailed statistical analysis around key dates. *Id.* at 133, 25-79.

Yet Plaintiffs and Dr. Tabak continued to play games in Reply. In his supplemental expert declaration, Dr. Tabak once again fails to opine that the Challenged Misstatements had price impact, let alone articulate a coherent price impact theory. *See generally* Tabak Reply. Instead, Plaintiffs and Dr. Tabak raise a patchwork of disjointed attacks on Dr. Hubbard and spin speculative theories not backed by evidence or expert opinion. *Id.*; Pls' Reply.

Plaintiffs' games extend to this motion to strike portions of a sur-reply that Plaintiffs

---

[1] Capitalized terms are defined herein or in Defendants' Sur-reply in Further Opposition to Plaintiffs' Motion for Class Certification. Dkt. 117 ("Sur-reply") at iii.

*agreed* Defendants could submit.    Dkt. 111 at 2.    This procedurally suspect motion should be denied because Defendants' sur-reply papers properly focus on the narrow disputes that Plaintiffs raise in Reply.    *See* Sur-reply; Dkt. 118 ("Hubbard Declaration").    The challenged paragraphs are directly responsive to Plaintiffs' Reply attacks and Plaintiffs will suffer no unfair prejudice if the Court considers them.    ***First***, the framework for the analysis in the Hubbard Declaration is entirely consistent with Dr. Hubbard's Report and has not, as Plaintiffs claim, "subtly changed." ***Second***, Defendants are entitled to specifically address the few analyst reports—out of nearly 2,000 considered by Dr. Hubbard—that Plaintiffs choose to highlight in their brief.    ***Finally***, Dr. Hubbard properly responds to the argument raised by Dr. Tabak regarding his statistical analysis on November 10, 2020.    Plaintiffs' Motion to Strike should be denied.

**ARGUMENT**

## I.    LEGAL STANDARD

"[C]ourts have broad discretion to consider arguments in a sur-reply."    *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co.*, 2012 WL 32352, at *1 (S.D.N.Y. Jan. 6, 2012) (citation omitted) (declining to strike a sur-reply that provided "helpful response[s] to" arguments raised on reply).    This is particularly true where, as here, the sur-reply functions as a reply because Plaintiffs chose not to address the price impact issue in their moving papers.    *See* Dkt. 120 ("Br.") at 3 (conceding that "Defendants' Sur-Reply is akin to a reply in further support of their price impact arguments, which were put at issue for the first time in Defendants' class certification Opposition.").    "[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party."    *Kowalski v. YellowPages.com, LLC*, 2012 WL 1097350, at *10 (S.D.N.Y. Mar. 31, 2012) (citation omitted); *see also Briese Lichttechnik Vertriebs GmbH v. Langton*, 2012 WL 5457681, at *6-7 (S.D.N.Y. Nov. 8, 2012) (declining to strike evidence that was "in direct response" to arguments raised in

2

opposition).    In fact, "[c]ourts regularly consider arguments and evidence included with reply papers that 'address new material issues raised in the opposition papers. . . .'"    *Jlm Couture v. Gutman*, 2021 U.S. Dist. LEXIS 15299, at *1 (S.D.N.Y. Jan. 26, 2021) (citing *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000)).

"Motions to strike are disfavored and should be granted only if there is a strong reason to do so."    *Rivera v. City of New York*, 2019 WL 252019, at *2 n.3 (S.D.N.Y. Jan. 17, 2019) (citation omitted).    Where the opposing party will not suffer prejudice, motions to strike are regularly denied.    *See*, *e.g.*, *Madorskaya v. Frontline Asset Strategies, LLC*, 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021) ("[B]ecause Plaintiff is not prejudiced by the information in Defendant's reply, there is no need to strike the reply, and the Court declines to do so."); *Bank v. Spark Energy, LLC*, 2020 WL 6873436, at *6 (E.D.N.Y Nov. 23, 2020) (declining to strike portions of a reply where the party moving to strike had not suffered prejudice "from the unauthorized and overly long reply").

## II.    THE CHALLENGED MATERIALS ARE DIRECTLY RESPONSIVE TO ISSUES RAISED FOR THE FIRST TIME IN PLAINTIFFS' REPLY AND ARE PROPERLY INCLUDED IN DEFENDANTS' SUR-REPLY

### A.    Dr. Hubbard does not "subtly change[] his analysis"

In the Hubbard Report's analysis of whether the Challenged Misstatements had price impact, Dr. Hubbard asks: "[I]s there evidence that market participants believed that Alibaba was not practicing exclusivity during the Proposed Class Period?"    Hubbard Report ¶ 80.    Dr. Hubbard continues: "***Stated differently***, it is not plausible for inflation to be embedded in the ADS price during the Proposed Class Period if the market participants were aware that Alibaba was, in fact, engaging in exclusivity."    *Id.* (emphasis added).    After conducting an extensive review of evidence, Dr. Hubbard concludes that there was "substantial evidence that market participants discussed that Alibaba was practicing exclusivity during the Proposed Class Period."

3

*Id.*    Dr. Hubbard explains that this is strong evidence of no price impact, because it contradicts Plaintiffs' central claim: that the Challenged Misstatements impacted Alibaba's ADS price by misleading the market to believe that Alibaba had stopped practicing exclusivity.    *Id.*

Paragraph twelve of the Hubbard Declaration reiterates this key question, asking "whether there was evidence that market participants were aware that Alibaba engaged in exclusivity practices during the Proposed Class Period."    Plaintiffs seek to strike this paragraph, claiming that Dr. Hubbard somehow "subtly changed his analysis" and improperly "amend[ed] his opinions."    Br. at 5.    In doing so, Plaintiffs focus solely on the first formulation of the question in the Hubbard Report (*i.e.*, "is there evidence that market participants believed that Alibaba was not practicing exclusivity") and choose to ignore the second formulation in the same Paragraph 80 of the Hubbard Report (*i.e.*, "if the market participants were aware that Alibaba was, in fact, engaging in exclusivity.").    As a result, Dr. Hubbard clearly did not change his analysis or amend his opinion.    The Hubbard Declaration language that Plaintiffs seek to strike is almost a verbatim repetition of the second formulation in the Hubbard Report.

Finally, Plaintiffs do not claim that this alleged "subtl[e] change[]" actually impacts Dr. Hubbard's analysis, nor do they claim prejudice.    *See generally*, Br. at 5.    Therefore, there is no basis to strike paragraph twelve of the Hubbard Declaration.    *See Kowalski*, 2012 WL 1097350, at *10 (declining to strike new declarations which did not "spring upon" the opposing party "new arguments" related to class certification).

B.    **Plaintiffs put certain analyst reports at issue—and Defendants' Sur-reply properly responds to these new arguments**

Dr. Hubbard's analysis includes a review of more than 5,000 analyst reports and news articles.    Hubbard Report ¶¶ 52-53.    Based on this review, Dr. Hubbard concludes that (i) not a single analyst report or news article cited or discussed Plaintiffs' central alleged misstatement—

the "Prior Practices Statement"; and (ii) inconsistent with Plaintiffs' allegations, there was widespread discussion of Alibaba's continued use of exclusivity during the putative Class Period. *Id.* ¶¶ 54, 90. Plaintiffs do not dispute the first finding. To challenge the second, Dr. Tabak is only willing to opine that "plausibl[y] . . . *some* market participants did not believe or were uncertain if Alibaba was practicing exclusivity." Tabak Reply ¶ 58 (emphasis added). This opinion—in essence a concession that the *Basic* presumption cannot apply and class certification cannot be granted due to the need for individualized inquiries into stockholder reliance—is fatal to Plaintiffs' claims.

Plaintiffs' only response to the veritable mountain of evidence Dr. Hubbard reviewed is to cherry-pick language from several analyst reports ("Plaintiffs' Analyst Reports") that Plaintiffs claim contradict Dr. Hubbard's findings. *Id.* ¶¶ 20, 28; Pls' Reply at 12. In their Motion to Strike, Plaintiffs further take the absurd position that "Dr. Hubbard waived his right to address" their criticism because although he indisputably reviewed Plaintiffs' Analyst Reports and cites them in the Materials Considered portion of his Report, Dr. Hubbard does not discuss them directly in his analysis. Br. at 4; *see also* Hubbard Report app. C pp. 131, 140, 143, 148. Plaintiffs' position is unsupported. Defendants and their expert have the right to give a "direct response" to arguments that Plaintiffs raise for the first time in their Reply. *See Langton*, 2012 WL 5457681, at *6-7.

*Gayle v. Harry's Nurses Registry*, is instructive. In *Gayle*, the court declined to strike challenged materials in reply, explaining that they were "limited to issues newly raised in [the] opposition papers, including the sufficiency of [certain evidence, including damages analysis]." 2012 WL 4174401, at *1-2 (E.D.N.Y. Sept. 18, 2012). The court explained that the moving party "did not have an obligation to anticipate in their opening papers the specific arguments

[that would be] raised in their opposition." *Id.* Here as well, Defendants are responding to newly-raised issues which they could not have anticipated based on Plaintiffs' failure to address price impact in their opening papers.

Furthermore, as Dr. Hubbard explained both at his deposition and in his Declaration, he considered Plaintiffs' Analyst Reports but had no reason to specifically discuss them—or, for that matter, the vast majority of the over 5,000 reviewed reports and news articles—in the Hubbard Report because they were not sufficiently relevant to his analysis. Ex. 1 (Hubbard Tr.)[2] at 155-157; Hubbard Declaration ¶ 15. Instead, it was Plaintiffs and Dr. Tabak who put these specific analyst reports at issue.

Plaintiffs similarly have no basis for seeking to exclude Defendants' argument related to Plaintiffs' Analyst Reports. *See Gayle*, 2012 WL 4174401, at *1-2 ("response to [newly-raised] arguments was properly raised in their reply."). Plaintiffs also do not explain how they are prejudiced by the substance of Defendants' argument, which simply calls the Court's attention to additional text in the very same reports that Plaintiffs have already quoted from:

> Plaintiffs and their expert next identify four analyst reports that, they claim, show "some market participants did not believe or were uncertain if Alibaba was practicing exclusivity" during the putative Class Period. Pls' Reply at 12. In fact, these reports provide further evidence of market awareness of Alibaba's ongoing exclusivity practices. For example, a November 25, 2020 J.P. Morgan article Plaintiffs cite explains that "offering exclusive products is not **only** Alibaba's issue but the **entire industry's** issue." P-36 (emphases added). A KeyBanc report, also cited by Plaintiffs, explains that "despite potential impact on their business **if** [Alibaba and others] fully comply with the guidelines, we don't expect **significant changes** in [their] core business." P-31 (dated Nov. 11, 2020) (emphases added). KeyBanc cites interviews where merchants state they hope the guidelines will put a stop to "pressure from Alibaba." *Id.*
>
> Finally, Plaintiffs point out that on November 20, 2020 Morgan Stanley cited Alibaba as stating that it "does not operate business on exclusivity" and "[m]ost brands/merchants have multi-platform strategy," P-33, while Goldman Sachs

---

[2]  Exhibit to the Declaration of Stephen Blake in Support of Defendants' Opposition to Plaintiffs' Motion to Strike.

reported Alibaba's comments in an investor meeting on November 23, 2020 that it was "compliant" and "no merchants are being restricted on [Alibaba's] platform." P-35, P-37.    Contrary to Plaintiffs' broad claim, these two reports reflect only Alibaba's understanding that encouraging exclusivity through traffic resource allocation was in compliance with the Draft Guidelines.

Defendants' Sur-reply at 8.    The Court should decline to strike Defendants' Sur-reply at pages 8-9 or Hubbard Declaration paragraphs 11-15.

### C.    <u>Dr. Hubbard's competitor analysis is directly responsive to new material issues raised by Plaintiffs</u>

Dr. Hubbard conducted quantitative analysis to find that when SAMR released Draft Guidelines related to exclusivity on November 10, 2020, Alibaba's ADS price experienced a sharp statistically significant decline and market commentators expressed concern that, due to its ongoing exclusivity practices, Alibaba would be targeted by SAMR.    Hubbard Report ¶¶ 82, 85-89.    Dr. Hubbard concluded that this was clear evidence that the Challenged Misstatements had no price impact because it demonstrates the market understanding, during the putative Class Period, that Alibaba was engaged in exclusivity practices.    *Id.*

In reply, Plaintiffs make the speculative argument that Alibaba's ADS price movement on November 10, 2020 may have instead been in response to a "laundry list" of other practices that were addressed in the Draft Guidelines, and general "regulatory tightening."    Pls' Reply at 3, 10-11.    This position is surprising because Plaintiffs themselves previously described the Draft Guidelines as "***new rules . . . targeting 'choose one' practices***."    MTD Opp. at 10.    In fact, in their Complaint, Plaintiffs characterized Alibaba's ADS price decline in the wake of the issuance of the Draft Guidelines as the direct result of Alibaba's continued "'Choose One of Two' policy and related exclusive or restrictive dealing practices."    AC ¶ 373.[3]

---

[3] The Court found that Plaintiffs had not adequately alleged that the Draft Guidelines were a corrective disclosure, in part because it found that Alibaba had adequately disclosed the risk of such regulations.    *See* Order at 27.

In view of Plaintiffs' about-face, Dr. Hubbard elaborated on his prior analysis to further illustrate the role that the market's concerns regarding Alibaba's exclusivity practices played in its ADS price decline on November 10.    Specifically, Dr. Hubbard had already found that Alibaba experienced a statistically significant price decline—in other words, Alibaba's price decline was abnormally large as compared to a set of comparable companies—and market commentary tied that decline to Alibaba's exclusivity practices.    Hubbard Report ¶¶ 82, 86-90. In his Declaration, Dr. Hubbard simply provides a more granular breakdown of Alibaba's competitors' stock price movements, which likewise show that concerns related to exclusivity practices drove Alibaba's November 10 ADS price movement.    Hubbard Declaration ¶¶ 16-21.

Plaintiffs now argue that they are prejudiced because they cannot respond to Dr. Hubbard's competitor analysis.    They suffer no unfair prejudice for three reasons.    ***First***, it was Plaintiffs who chose, on Reply, to assert a speculative theory that runs contrary to their pleadings and earlier arguments that Alibaba's ADS price decline on November 10, 2020 was directly related to the portions of the Draft Guidelines that addressed exclusivity practices. Defendants are entitled to respond to this change of position.    *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d. 217, 230-31 (W.D.N.Y. 2011) (finding no prejudice and declining to strike declarations responding to new allegations that opposing party "brought up in his opposition papers" and had the opportunity to affirmatively investigate).    ***Second***, it was also Plaintiffs' choice not to present any statistical evidence in support of their new found position that Alibaba's ADS price movement on November 10, 2020 *may* have been in response to generalized "regulatory tightening" and a "laundry list" of other practices in the Draft Guidelines.    Pls' Reply at 3, 10-11.    They cannot belatedly claim to be prejudiced when they declined the opportunity to offer evidence in support of their own argument on Reply.

8

*Finally*, Dr. Hubbard's specific finding that Meituan was also affected by the Draft Guidelines as a result of its perceived use of exclusivity practices should come as no surprise to Plaintiffs.   Dr. Hubbard includes no fewer than eight separate quotes in his Report discussing the impact of the Draft Guidelines on Meituan due to its exclusivity practices.   *See* Hubbard Report at ¶ 85 (quoting an analyst report stating "we believe e-commerce (Alibaba, Pinduoduo, JD) and food delivery (Meituan, Alibaba) could be in focus [of the November Draft Guidelines], given the specific mentions of practices around [Choose One of Two] policy and aggressive subsidies, among others."); *id.* ("[p]otentially negative" effect for Alibaba because Alibaba, along with Meituan: "have dominant positions in their respective market segments (e-commerce/local consumer services) and have been accused of forced exclusivity by merchants."); *id.* ¶ 86 (quoting three analyst reports discussing Meituan); *id.* ¶ 87 (quoting three analyst reports discussing Meituan).   Plaintiffs are not prejudiced by Dr. Hubbard's conclusions regarding Meituan.

Because Dr. Hubbard's analysis and Defendants' arguments respond directly to Plaintiffs' new material issues and do not prejudice Plaintiffs, the Court should deny Plaintiffs' Motion to Strike.

DATED:   June 11, 2024

SIMPSON THACHER & BARTLETT LLP

By:   */s/ Stephen P. Blake*
     Stephen P. Blake

     Jonathan K. Youngwood
     jyoungwood@stblaw.com
     425 Lexington Avenue
     New York, New York   10017
     Telephone: (212) 455-3539
     Facsimile: (212) 455-2502

Stephen P. Blake
sblake@stblaw.com
Bo Bryan Jin
Bryan.jin@stblaw.com
2475 Hanover Street
Palo Alto, California    94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Counsel for Defendants Alibaba Group Holding
Limited, Daniel Yong Zhang and Maggie Wei Wu*

10