**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ALIBABA GROUP LTD. SECURITIES LITIGATION | Master File No. 1:20-CV-09568-GBD-JW |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO STRIKE**

Defendants' Opposition to Plaintiffs' Motion to Strike (ECF No. 122, "MTS Opposition" or "MTS Opp.") establishes why Plaintiffs' Motion to Strike (ECF No. 120, "MTS") should be granted. In opposing Plaintiffs' Motion to Strike—which was based on Defendants' improper new evidence and arguments included in their sur-reply brief — Defendants advanced even more *merits* arguments about Plaintiffs' motion for class certification (ECF Nos. 99-101, the "Motion").

When moving for class certification, Plaintiffs' opening brief analyzed all required factors relevant to whether the Court should certify the putative class here. Plaintiffs hid nothing, nor overlooked any of the Rule 23 elements. Still, Defendants disparagingly accuse Plaintiffs of "sandbagging" and "play[ing] games." MTS Opp. at 1. Defendants' characterization is unfounded and absurd. The procedural history here, as laid out below, shows Plaintiffs properly briefed all relevant issues, and did so at the proper times. Plaintiffs did not address price impact in their opening Motion because it is not their burden to prove it.

By contrast, Defendants violated settled law by advancing new arguments and proffering new evidence in a Sur-Reply brief (ECF No. 117, "Sur-Reply"). There is no justification for Defendants' approach because the very evidence Defendants belatedly addressed in their Sur-Reply was available to them *when they opposed class certification*. Defendants not only knew about it, they considered it, formed opinions about it, and then decided to bury it—because it hurt their case. Defendants made a strategic choice to quietly ignore unfavorable evidence—at least until after Plaintiffs spotlighted it. Then, once the Court was alerted to that unfavorable evidence, Defendants' expert tried to re-frame the issue, Defendants made new arguments, and proffered new evidence – all of which is impermissible. No authority justifies Defendants' conduct.

## I.    DEFENDANTS VIOLATED THE PROPER CADENCE OF THE LITIGATION

**Plaintiffs' Motion**. In moving for class certification, Plaintiffs properly invoked the

presumption of reliance under *Basic v. Levinson* in their opening brief by showing that the market for Alibaba's ADS is efficient. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013) (citation omitted) (discussing *Basic*). Defendants conceded market efficiency.

Once market efficiency is shown, price impact is *presumed*, and the burden shifts to a defendant challenging certification to prove by a preponderance of the evidence "'that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 280 (2014) ("*Halliburton II*") (citing *Basic v. Levinson,* 108 S. Ct. at 978). Plaintiffs didn't address price impact in the opening brief of their Motion because they "need not directly prove price impact to invoke the *Basic* presumption" when moving for class certification. *Halliburton II*, 573 U.S. at 279; *cf. Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 86 (2d Cir. 2023) (Plaintiffs "need not directly prove that the defendant's statements impacted its share price."). Plaintiffs need not speculate as to Defendants' potential opposition arguments, even according to Defendants' cited authority. *See Gayle v. Harry's Nurses Registry, Inc.*, 2012 WL 4174401, at \*1 (E.D.N.Y. Sept. 18, 2012), *aff'd,* 594 F. App'x 714 (2d Cir. 2014) ("Plaintiffs did not have an obligation to anticipate in their opening papers the specific arguments Defendants raised in their opposition; their response to those arguments was properly raised in their reply.") (cited at MTS Opp. at 5-6).

**Defendants' Opposition (ECF No. 107, "Defendants' Opposition")**. Having conceded market efficiency, Defendants could attempt to rebut the presumption of reliance by proving a lack of price impact, which is Defendants' burden. *See Amgen*, at 462; *Halliburton II*, 573 U.S. at 284 (Ginsburg J concur) ("it is incumbent upon the defendant to show the absence of price impact."). The time for Defendants to try to rebut any presumption of reliance (including vis-à-vis price impact) is *in their opposition* to Plaintiffs' motion for class certification.

Defendants' strategic attack on price impact was to claim there could be no price impact because the market was supposedly "keenly aware" and "well aware of Alibaba's use of exclusivity during the putative Class Period." *See* Defendants' Opp. at 2-3. By their own admission, Defendants' expert "covered the waterfront" in his analysis of relevant market commentary. MTS Opp. at 1. Nowhere in Defendants' Opposition was there acknowledgment or discussion of the fact that four analysts' reports, from major Wall Street firms, undermined Defendants' price impact arguments. *See* Plaintiffs' Reply In Further Support of Plaintiffs' Motion for Class Certification (ECF No. 113, "Plaintiffs Reply") at 12. According to Dr. Hubbard's sworn testimony, he reviewed at least two of these reports, but omitted them from his analysis. *See* ECF No. 121 (Ex. P-40 ("Hubbard Tr.")) at 149:11-18, 154:25-155:4, 156:3-12. That was his choice. But Defendants do not get to strategically and deliberately ignore contrary evidence—hoping Plaintiffs would not find it—and then argue what that evidence means *for the first time* in a sur-reply.

In sum, Defendants have no procedural grounds to introduce new arguments and evidence in their Sur-Reply, as they have improperly done.

## II.    PLAINTIFFS' MOTION TO STRIKE SHOULD BE GRANTED

### A.    Ample Legal Authority — Including Defendants' — Supports Plaintiffs' MTS

The Second Circuit has long held that when an "attempt is made in the Reply Brief to supply what was conspicuously omitted in the main Brief", the new arguments should not be considered. *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999 ("new arguments may not be made in a reply brief"). As Defendants' own authority instructs, "[a]rguments made for the first time in a reply brief need not be considered by a court." *Kowalski v. YellowPages.com, LLC*, 2012

WL 1097350, at *10 (S.D.N.Y. Mar. 31, 2012) (MTS Opp. 2, 4).[1] And "it is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Frontline Asset Strategies, LLC*, 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021) (permitting new arguments made in a reply brief because they (a) came *in response to an interim court order* asking for the argument; and (b) related to an issue raised in an opening brief) (MTS Opp. 3) (emphasis added).[2]

Here, Defendants, on their own (not in response to a Court order) made new and materially different arguments in their Sur-Reply than they did in their opposition; and made arguments based on information available to them *at the time of their opposition briefing*.[3] Simply put, Defendants' Sur-Reply fundamentally moved the goal posts: Dr. Hubbard changed his *key question presented*. This is improper and should be stricken from the record—even under Defendants' authority. *Cf. Frontline*, 2021 WL 3884177, at *18.

Defendants' remaining authority is inapt or distinguishable. For example, unlike a felon proceeding *pro se* who didn't know better, as in *Rivera v. City of New York* (MTS Opp. at 3), Alibaba, one of the largest companies in the world, is represented by a large, international law firm and knows it cannot advance new arguments and submit new evidence in a sur reply. 2019 WL 252019, at *2

---

[1] Similarly, in *Briese Lichttechnik Vertriebs GmbH v. Langton*, (MTS Opp. at 2-3), the court found "Plaintiffs raise no new legal arguments in their Reply", which is the opposite of what Defendants did here. 2012 WL 5457681, at *6 (S.D.N.Y. Nov. 8, 2012).

[2] In *Frontline Asset Strategies*, the defendant moved for summary judgment on December 24, 2020. Then on January 19, 2021, the court held a conference with the parties and sought additional briefing on a threshold issue. Accordingly, on February 10, 2021, the plaintiff filed an opposition brief focusing on the issue the court raised during the January 19 conference. Thus, when the defendant filed its reply on February 23, the defendant addressed issues that the court asked for briefing on. *See Frontline*, 2021 WL 3884177, at *3-*4, *18. Nothing similar happened here.

[3] As stated in Plaintiffs' MTS, Defendants' expert testified to having reviewed the reports as of the time of Defendants' Opposition. *See* ECF No. 120-1 (Declaration of Kara M. Wolke; Ex. P-40); Plaintiffs' Motion to Strike at 1-2.

4

(S.D.N.Y. Jan. 17, 2019) (citation omitted). Nor did Plaintiffs move to strike Defendants' sur-reply due to its length, as in *Bank v. Spark Energy, LLC*, 2020 WL 6873436, at \*6 (E.D.N.Y. Nov. 23, 2020) (MTS Opp. at 3).

As to harm from Defendants' conduct, contrary to Defendants' conclusory assertions, Plaintiffs are prejudiced by Defendants' new Sur-Reply arguments and evidence because Plaintiffs could not examine Dr. Hubbard about the new evidence in his Supplemental Declaration Appendix B. *Cf. Feltenstein v. City of New Rochelle*, 2018 WL 3752874, at \*8 (S.D.N.Y. Aug. 8, 2018) ("Plaintiff suffered prejudice because she was unable to depose the new potential witness or depose potential witnesses based on the newly disclosed documents."); *contra* MTS Opp. at 3, 8-9.[4]

### B.    Defendants' MTS Opposition Misstates Dr. Tabak's Reply Report And Plaintiffs' Evidence

Along with citing inapt authority, Defendants also misstate the record, including Dr. Tabak's reply report, by incorrectly claiming that Dr. Tabak did not opine on whether the Challenged Misstatements had price impact. *See* MTS Opp. at 1. Not so. Dr. Tabak's Reply Report specifically opined that, "the observed price movement is consistent with, and there is evidence that supports a finding of, price impact." ECF No. 114-1, ¶62. Dr. Tabak also explained the theory of inflation maintenance. *See e.g.*, *id*. ¶8, n.10; *contra* Defendants' MTS Opp. at 1.

Defendants also misrepresent the content of the evidence that is unfavorable to them. *See generally*, MTS Opp. at 6. For instance, Defendants say "KeyBanc cited interviews where merchants state they hope the guidelines will put a stop to 'pressure from Alibaba.'" MTS Opp. at 6. Not

---

[4] Defendants' argument — that "Dr. Hubbard includes no fewer than eight separate quotes in his Report discussing the impact of the Draft Guidelines on Meituan due to its exclusivity practices", and so that somehow avoids a prejudicial impact to Plaintiffs — is unsupported by any of their authority, and is wholly unpersuasive. *Cf. Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

so. Defendants mischaracterize the report, which actually stated that Alibaba "*is not* replying [sic] on unfair competition" and explained that the conclusion that Alibaba was *not* relying on unfair competition was "supported" by interviews with brand merchants, who all reported that "they can cooperate with other platforms without potential pressure from Alibaba."[5] Ex. P-31 (ECF 114-20) at 1 (emphasis added). As to the Goldman Sachs and Morgan Stanley reports cited at MTS Opp. 6-7, Defendants mischaracterize the importance of these reports, and misrepresent their content by framing them as being purportedly limited to "traffic resource allocation" issues (MTS Opp. 7), which is not what the evidence says. *Cf.* Ex. P-35 (ECF 114-24) (November 25, 2020 Goldman Sach report stating that "no merchants are being restricted on their platform"); Ex. P-33 (ECF 114-22) (November 20, 2020 Morgan Stanley report stating that "Alibaba highlights it does not operate business on exclusivity."). As to the J.P. Morgan report (MTS Opp. at 6), while it does discuss multiple companies, Defendants omit that it also draws specific conclusions about Alibaba, including that Alibaba's "business model and key competitive advantages are not built on misuse of dominant market position" and "[d]espite many accusing Alibaba for using forced exclusivity, the fact is that most brands also have stores on other platforms." Ex. P-36 (ECF 114-25) at 1, 3.

In sum, Defendants' continued distortion of the record, both in their Sur-Reply, and their MTS Opposition, establish why the Court should grant the Motion to Strike.

### C.    Defendants' Additional Evidence (MTS Opp Ex. 1) Supports Plaintiffs

Much like Defendants' MTS Opposition authority supports Plaintiffs' Motion to Strike, so too does Defendants' MTS Opposition Exhibit 1 (ECF No. 123-1) support Plaintiffs' Motion to certify the

---

[5] That this document is evidence that KeyBanc was telling market participants that Alibaba was *not* restricting merchants is supported by the full context of the document. Defendants cherry-picked a few words and added others to argue that it means the opposite. At bottom, what the market interpreted this document to be saying — *i.e.*, whether Alibaba was relying on unfair competition by practicing exclusivity or not — will be judged by the objective reasonable investor standard, as Defendants' expert concedes. *See* §II.C.

Class. Defendants attach as Exhibit 1 additional deposition testimony of their expert, Dr. Hubbard, not previously cited, wherein Dr. Hubbard concedes that Defendants' argument about what the market supposedly knew is not an issue that can be properly reached at this stage of the litigation. *See* ECF 123-1 at 157:10-11 (PDF page 5) ("Neither one of us is the finder of fact, and we'll have to see"). Indeed, it is squarely within the purview of the finder of fact to determine what constitutes market knowledge. *See Amgen*, 568 U.S. at 464 (proffered rebuttal evidence that defendant claimed "demonstrated that the market was well aware of the truth regarding its alleged misrepresentations and omissions at the time the class members purchased their shares" did not rebut the presumption of reliance because defendant's argument would be judged by a reasonable investor standard which would apply to the entire class).

## III.    CONCLUSION

For all these reasons, Plaintiffs Motion to Strike should be granted in full.

Dated: June 18, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
kwolke@glancylaw.com
mwright@glancylaw.com

*Lead Counsel and proposed Class Counsel*

Jeremy A. Lieberman
Jonathan D. Park
POMERANTZ LLP
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
jpark@pomlaw.com

7

Patrick V. Dahlstrom
POMERANTZ LLP
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
pdahlstrom@pomlaw.com

Peretz Bronstein
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
peretz@bgandg.com

Frank R. Cruz
THE LAW OFFICES OF FRANK R. CRUZ
1999 Avenue of the Stars
Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
info@frankcruzlaw.com

Lesley Portnoy
THE PORTNOY LAW FIRM
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
lesley@portnoylaw.com

*Additional Counsel*

8

## <u>PROOF OF SERVICE</u>

I hereby certify that on this 18th day of June, 2024, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Kara M. Wolke*
Kara M. Wolke
