UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: ALIBABA GROUP LTD.
SECURITIES LITIGATION

Master File No. 1:20-CV-09568-GBD-JW

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND
(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ...................................................................... 1

II.    NATURE OF THE ACTION AND PROCEDURAL HISTORY ...................................... 5

III.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)..................... 8

IV.    ARGUMENT ................................................................................... 9

    A.     The Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2) Factors And Remaining *Grinnell* Factors And Warrants Preliminary Approval ... 9

        1.    Plaintiffs And Counsel Adequately Represented The Settlement Class..... 9

        2.    The Settlement Is The Result Of Arm's-Length Negotiations ................. 10

        3.    The Settlement Is A Fair And Reasonable Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation................................................................... 11

            (a)    Complexity, Expense And Duration Of Litigation ...................... 12

            (a)    Risk Of Obtaining and Maintaining Class Action Status ............ 12

            (b)    Risks Of Establishing Liability And Damages ............................ 13

            (c)    Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation ............................... 15

        4.    Rule 23(e)(2)(C) Factors Either Support Preliminary Approval Or Are Neutral..................................................................... 16

        5.    The Settlement Treats All Members Of The Settlement Class Equitably Relative To Each Other.............................................................. 18

        6.    Remaining *Grinnell* Factors Weigh In Favor Of Preliminary Approval .. 18

    B.     Certification Of the Settlement Class For Settlement Purposes Is Appropriate ... 19

        1.    The Settlement Class Satisfies The Requirements Of Rule 23(a) ........... 20

        2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ....... 22

        3.    The Court Should Appoint Lead Counsel As Class Counsel .................. 23

    C.     The Court Should Approve The Proposed Form And Method Of Notice ........... 24

V.    PROPOSED SCHEDULE OF EVENTS ........................................................................... 25

VI.    CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................. 20, 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)...................................................................................................... 21

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ............................................................................................... 13

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................................. 13

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007).............................................................................................. 21

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................................. 13

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................. 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................................... 9, 12

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................................... 24

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007).................................................................................................. 9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)........................................................................................... 10, 11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)........................................................................................... 9, 20

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005)........................................................................................................... 14

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................................................... 14

*In re 3D Sys. Sec. Litig.*,
    2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) .......................................................................... 8

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ........................................ 15

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
  2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ............................ 2, 6

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................. 22

*In re Bear Stearns Cos., Inc. Sec. Deriv. & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................... 11, 18

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..................................... 18

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .............................. 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ................................................ 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................... 11

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. Nov. 7, 2019) .................. 9, 10, 12, 13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................... 15, 16

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................... 18

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................... 19

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ...................................... 21, 23

*In re Moody's Corp. Sec. Litig.*,
  274 F.R.D. 480 (S.D.N.Y. 2011) .......................................... 13

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 Fed.Appx. 760 (2d Cir. 2020) ....................................... 21

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................ 9

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ...................................................................................... 20

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................................... 20

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) .............................................................................. 21

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................... 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................................................................ 24

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................................... 2, 3

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) .......................................................................................... 10

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................................................ 10

*Lusk v. Five Guys Enters. LLC*,
   2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) ............................................................... 11

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................ 17

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)....................................................................................... 24

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................................ 11

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)............................................................... 18

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)........................................................................................................ 23

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..............................................................................22

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ............................................................................. 3

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)................................................................................19

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)...................................................21

<u>RULES</u>

Fed. R. Civ. P. 23....................................................................................................*passim*

Lead Plaintiff Salem Gharsalli, named plaintiffs Laura Ciccarello and Dineshchandra Makadia, and additional class representative movant Wusheng Hu (collectively, "Plaintiffs" or proposed "Class Representatives"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement, dated October 25, 2024 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class;[2] (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) scheduling of a hearing date ("Settlement Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I.    <u>PRELIMINARY STATEMENT</u>

After nearly four years of hard-fought litigation, Plaintiffs have obtained a $433,500,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the accompanying Declaration of Kara M. Wolke in Support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Wolke Declaration"). All references to "Ex.__" are to exhibits to the Wolke Declaration.

[2] The Settlement Class means all persons and entities that purchased or otherwise acquired Alibaba American Depositary Shares ("ADS," NYSE:BABA) during the period November 13, 2019 through December 23, 2020, inclusive (the "Settlement Class Period"). Excluded from the Settlement Class are: (a) persons and entities who suffered no compensable losses; (b) Defendants; the present and former officers and directors of Alibaba at all relevant times; members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a controlling interest at any time; (c) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (d) present and former parents, subsidiaries, assigns, successors, and predecessors of Alibaba; and (e) Defendants' liability insurance carriers. Also excluded are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

This is an exceptional result for the Settlement Class under the circumstances, and it was secured in a procedurally fair manner.

Substantively, the $433,500,000 recovery constitutes approximately 3.73% of the $11.629 billion of **maximum** damages **potentially** available in this case. This is more than double the median recovery of 1.8% of estimated damages in securities class actions in 2021, 2022, and 2023, and vastly exceeds the median recovery of 0.4% in securities class action settlements during the past decade where investor losses exceeded $10 billion. Ex. 2 (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2023)) at 25 (Fig. 21), 26 (Fig. 22). It is also the twenty-first largest securities class action settlement in this District, and one of the fifty largest in the U.S., since the PSLRA was enacted nearly thirty years ago. Ex. 3 (ISS Securities Class Action Services, *The Top 100 U.S. Class Action Settlements of All-Time as of December 31, 2023* (Institutional Shareholder Services 2023)) at 6-7.

The proposed Settlement is all the more noteworthy when considered against the significant risks that Plaintiffs overcame, and would have needed to overcome, to prevail in this complex securities fraud litigation. While the case faced two motions to dismiss, Plaintiffs only partially prevailed. The Court dismissed: (i) an entire theory of liability relating to Ant Group, a fintech company in which Alibaba owned a significant equity interest (the "Ant Group IPO Claim"); (ii) Plaintiffs' loss causation allegations with respect to one of the two alleged corrective disclosure dates related to the surviving theory of liability (*i.e.*, Alibaba's alleged use of merchant exclusivity practices in violation of Chinese laws (the "Antitrust Claim")); and (iii) Alibaba founder Jack Ma from the Action. *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, 2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023). Indeed, "[t]he court needs to look no further than its own order [partially] dismissing the . . . litigation to assess the risks involved." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d

980, 1003 (D. Minn. 2005).[3]

Of course, the risks did not end at the pleading stage. For example, Plaintiffs faced an immediate material risk that the Court would deny their fully briefed motion for class certification. Defendants had forcefully argued that the one remaining alleged corrective disclosure relating to the Antitrust Claim would not survive class certification, as, according to Defendants' argument, the market was well aware of Alibaba's continued deployment of exclusivity practices and the associated regulatory risks during the putative class period. *See, e.g.*, ECF No. 107 at p.3 ("Because the market was well aware of Alibaba's use of exclusivity during the putative Class Period, the stock drop lacks the requisite 'link' to the Challenged Misstatements to create an inference of price impact."). Had Defendants prevailed on their price impact argument, it would have effectively ended the Action. And, even if Plaintiffs secured class certification, they would still have to gather enough evidence to prevail at summary judgment, prove their case at trial, and win any appeals. The risk of losing at any of these phases was very real. Plaintiffs would be litigating against a corporate defendant represented by highly skilled defense counsel. Moreover, the key documents and witnesses, including third party witnesses, were all located in the People's Republic of China, significantly complicating discovery. While China signed onto the Hague Evidence Convention in 2023, it made significant reservations, including that service of process would be valid only through China's designated central authority. In short, Plaintiffs faced years of costly litigation ahead, with a very strong possibility that the case could yield little or no recovery in the future. *See Xcel*, 364 F. Supp. 2d at 994 ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956,

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."). Given the many risks of continued litigation, there is no question that the Settlement is substantively fair.

The Settlement also was negotiated through a procedurally fair process. Prior to signing the Stipulation, Lead Counsel had, *inter alia*: (i) conducted an extensive investigation into the claims, which culminated into the detailed 147-page Amended Consolidated Class Action Complaint (the "Complaint"); (ii) opposed two separate motions to dismiss; (iii) vigorously pursued discovery, which included, among other things, serving six sets of requests for production of documents, engaging in an extensive meet-and-confer process, analyzing over 1.07 million pages of documents and spreadsheets, most of which were produced in Chinese, and preparing to take fact depositions of Alibaba witnesses; (iv) filed and fully briefed Plaintiffs' motion for class certification and, in connection with that motion, submitted two expert reports, took and defended expert depositions, defended the deposition of each proposed class representative, and prepared for a hearing in this Court on the class certification motion; (v) engaged in a mediation process conducted under the auspices of former U.S. District Court Judge Layn Phillips, a prominent mediator of complex securities cases, which involved an exchange of opening and reply mediation statements and exhibits concerning the facts of the case, liability, and damages, an unsuccessful full-day formal mediation session in May 2024, many weeks of further negotiations, extensive consultation with Plaintiffs' expert on damages and loss causation and, ultimately, a mediator's recommendation to settle the case for $433,500,000, which was accepted by the Parties. The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed further below, Plaintiffs and Lead Counsel believe that the Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II.    <u>NATURE OF THE ACTION AND PROCEDURAL HISTORY</u>

This is a securities class action brought by investors alleging that Defendants made material misstatements regarding Alibaba's alleged monopolistic "exclusivity practices," as well as regarding the planned IPO of Ant Group, a fintech company in which Alibaba owned a large equity stake. Plaintiffs alleged the prices of Alibaba ADS were artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

Beginning on November 13, 2020, three class action complaints were filed in the United States District Court for the Southern District of New York. By Order dated April 20, 2021, the Court consolidated the cases (ECF No. 43), and by Order dated February 10, 2022, the Court appointed Salem Gharsalli as Lead Plaintiff, approved Gharsalli's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel, and recaptioned the consolidated action as *In re: Alibaba Group Holding Ltd. Securities Litigation*. ECF No. 48.

Lead Counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Alibaba's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles about Alibaba, including many published in Chinese, (c) announcements by the Chinese State Administration for Market Regulation ("SAMR"), and (d) Alibaba's investor call transcripts; (ii) working with a private investigator to assist in the factual research and investigation relating to Plaintiffs' alleged claims, including, in particular, accessing and reviewing information filed by Alibaba and third parties with the SAMR in China; and (iii) consulting with an expert in the fields of loss causation and damages.

On April 22, 2022, based on the above investigation, plaintiffs Gharsalli, Ciccarello, Makadia, and Tongbiao filed and served the Complaint, asserting claims against Alibaba, Daniel Yong Zhang

("Zhang"), Maggie Wei Wu ("Wu"), and Jack Ma ("Ma") under Section 10(b) of the Securities

Exchange Act of 1934 (the "Exchange Act"), and against Zhang, Wu, and Ma under Section 20(a) of

the Exchange Act. ECF No. 55. On July 21, 2022, Alibaba, Zhang, and Wu together served a motion

to dismiss the Complaint (ECF No. 60), and Ma served a separate motion to dismiss (ECF No. 62).

These motions were fully briefed on December 21, 2022 (ECF Nos. 77-79), and the Court heard oral

argument on January 11, 2023. On March 22, 2023, the Court granted Ma's motion to dismiss and

granted in part and denied in part the motion to dismiss filed by Alibaba, Zhang, and Wu. *Alibaba*,

2023 WL 2601472. The Court dismissed the Ant Group IPO Claim in its entirety and dismissed Ma

from the Action, holding that Plaintiffs "lack[ed] standing to sue Ma or Alibaba based on alleged

misstatements about Ant;" that they failed to sufficiently allege an insider trading claim against Ma;

and that the Court did not have personal jurisdiction over Ma with respect to the remaining claims

against him. *Id.* at \*5-8. The Court sustained Plaintiffs' Antitrust Claim against Alibaba, Zhang, and

Wu for alleged misstatements about Alibaba's exclusivity practices, but dismissed their loss causation

allegations with respect to November 10, 2020, when the SAMR published draft e-commerce

guidelines aimed at, among other things, e-commerce platform exclusivity practices. *Id.* at \*14.

      Beginning in March 2023 and continuing for over a year-and-a-half, the Parties engaged in

extensive fact discovery. Throughout this period, the Parties engaged in ongoing and substantial efforts

to meet and confer regarding the discovery requests of both sides. In total, Plaintiffs propounded six

sets of requests for production of documents and one set of written interrogatories on Defendants, and

noticed the deposition of Alibaba pursuant to Fed. R. Civ. P. 30(b)(6). Beginning in August 2023,

Defendants made rolling productions of documents to Plaintiffs that continued through July 2024.

Each of the four Plaintiffs also produced document discovery in response to Defendants' requests for

production. On October 6, 2023, Plaintiffs Gharsalli, Ciccarello, Makadia, and Hu filed a motion for

class certification supported by, *inter alia*, an expert report of Dr. David Tabak, Ph.D. ECF Nos. 99-102. Defendants deposed each of the four proposed class representatives, as well as Plaintiffs' expert, Dr. Tabak, prior to filing their opposition to the class certification motion. ECF Nos. 107-09. Plaintiffs then deposed Defendants' expert, Dr. Glenn Hubbard, Ph.D., before filing their reply in support of class certification, which included an expert reply report by Dr. Tabak. ECF Nos. 113-14. Defendants then filed a sur-reply in further opposition to class certification (ECF Nos. 117-18), which Plaintiffs moved to strike in part. ECF Nos. 119-21. On June 11, 2024, Plaintiffs filed supplemental evidence in support of their motion in advance of the class certification hearing. ECF No. 124.

While discovery and class certification briefing was ongoing, the Parties began exploring the possibility of resolving this Action. The Parties scheduled a mediation session for May 8, 2024 with Judge Phillips, while continuing to litigate the Action. The Parties exchanged opening and reply mediation statements prior to the mediation, which ended without an agreement to settle. The Parties completed briefing on Plaintiffs' motion for class certification, and continued discovery, while simultaneously continuing to discuss the possibility of settlement with Judge Phillips. After approximately two months of additional arm's-length negotiations, which included numerous telephone calls and emails with Judge Phillips and his office, these discussions culminated in the Parties' mutual acceptance of a mediator's proposal to fully resolve the Action for $433,500,000.

The Parties' agreement in principle was memorialized in a term sheet that sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a non-reversionary cash payment of $433,500,000 to be paid by Alibaba on behalf of all Defendants for the benefit of the Settlement Class ("Term Sheet"). The Term Sheet was subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

### III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following in determining whether a proposed settlement is fair, reasonable, and adequate:

    (A)     have the class representatives and class counsel adequately represented the class;

    (B)     was the proposal negotiated at arm's length;

    (C)     is the relief provided for the class adequate, taking into account:

        (i)     the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)     does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919); *see also In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *5 (E.D.N.Y. Jan. 4, 2024) ("In conducting this inquiry, courts consider the substantive and procedural fairness of a proposed settlement to determine whether the terms of the settlement and the negotiation process leading up to it are fair.").

These new factors "add to, rather than displace, the *Grinnell* factors"[4] traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. Nov. 7, 2019) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).

As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the non-duplicative Grinnell factors.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2) Factors And Remaining *Grinnell* Factors And Warrants Preliminary Approval

#### 1.    Plaintiffs And Counsel Adequately Represented The Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). "Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *GSE Bonds*, 414 F. Supp. 3d at 692; *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.").

---

[4] The *Grinnell* factors are: (1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, Plaintiffs have no interests antagonistic to other class members; rather, Plaintiffs' interests are aligned with other Settlement Class Members' interests because they all suffered the same injuries—monetary losses resulting from Defendants' alleged violations of the federal securities laws. *See GSE Bonds*, 414 F. Supp. 3d at 692; *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *6 (S.D.N.Y. Nov. 30, 2021) ("Plaintiffs interests are directly aligned with the interests of the Settlement Class as they all involved purchased TAL's ADSs during the Class Period and allegedly suffered harm as a result of Defendants' alleged misdeeds."). "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *GSE Bonds*, 414 F. Supp. 3d at 692. Indeed, Plaintiffs have *demonstrated* their commitment to the litigation by, *inter alia*, overseeing the litigation and regularly communicating with their counsel; responding to document requests, producing documents, and sitting for deposition; and participating in settlement discussions with Plaintiffs' Counsel.

"Plaintiffs have [also] demonstrated their commitment to this litigation by retaining qualified and experienced counsel." *Tal Educ. Grp.*, 2021 WL 5578665, at *6. Lead Counsel has substantial experience in securities class actions, and has diligently litigated on behalf of the putative class throughout the litigation. *See* Ex. 4 (GPM firm résumé); *see also supra* Sec. II (detailing Lead Counsel's extensive investigation, briefing on the motions to dismiss and class certification, significant discovery efforts, and hard-fought mediation efforts). Plaintiffs and Lead Counsel have, therefore, adequately represented the proposed Settlement Class.

### 2.    The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). In conducting this analysis, courts recognize that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("[t]he involvement of 'an

experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" quoting *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012)).

Here, as detailed in Sec. II, *supra*, the Parties' settlement negotiations were facilitated by former federal judge Layn R. Phillips through a formal mediation session, and approximately two months of follow up negotiations, that ultimately culminated in the Parties' accepting Judge Phillips' recommendation to settle the Action for $433,500,000. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See Deutsche Bank*, 236 F.3d at 85 (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding settlement "procedurally fair" where it "was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator"—Judge Phillips). Moreover, "[t]he fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion." *Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022).

### 3. The Settlement Is A Fair And Reasonable Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking

into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[5] As discussed below, each supports preliminary approval.

### (a)    Complexity, Expense And Duration Of Litigation

Plaintiffs and Lead Counsel strongly believe the claims asserted against Defendants have merit. The complexity, expense, and duration of litigating those claims, with no guarantee of recovery, however, weighs in favor of preliminary approval. Plaintiffs' federal securities claims arise from alleged conduct that implicates complex antitrust and regulatory issues under Chinese law. Proving the merits of their claims at summary judgment and trial, and defending them through class certification and any appeals, would be a difficult, long, expensive, and risky process.

Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) appeal), and survived summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor, with a potential recovery—if any—years from now, substantially delaying payment to the Settlement Class. *GSE Bonds*, 414 F. Supp. 3d at 693 ("[E]ven if plaintiffs 'were to prevail at trial, posttrial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, eliminating the risk, expense, and delay of continued litigation.

### (a)    Risk Of Obtaining and Maintaining Class Action Status

At the time the Parties agreed to settle, Plaintiffs' class certification motion was pending. While

---

[5] Rule 23(e)(2)(C)(i) essentially incorporates six of the *Grinnell* factors: complexity, expense, and likely duration of the litigation (first factor); risks of establishing liability and damages (fourth and fifth factors); risks of maintaining class action status through trial (sixth factor); and range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also GSE Bonds*, 414 F. Supp. 3d at 693 ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

Plaintiffs believe certification was warranted, Defendants vigorously opposed that motion, and this Court has declined to certify an investor class before. *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480 (S.D.N.Y. 2011). Settlement Class members would receive nothing if the Court denied class certification, and even if the Court granted Plaintiffs' motion, the risk of decertification—in this Court or on a Rule 23(f) interlocutory appeal—was real. *See, e.g.*, *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (decertifying a class of investors); *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). The risks and uncertainty surrounding class certification further support preliminary approval of the Settlement.

### (b)    Risks Of Establishing Liability And Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *GSE*, 414 F. Supp. 3d at 694. While Lead Counsel believes Plaintiffs' claims have merit, they also recognize substantial obstacles to proving liability and class-wide damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval.

**Establishing Liability:** This Action is premised on anticompetitive "exclusivity practices" that Alibaba allegedly employed after being instructed to stop at a November 5, 2019 SAMR administrative guidance meeting, and the December 23, 2020 news that the SAMR had "started [an] investigation amid reports that Alibaba had engaged in monopolistic conduct such as placing unreasonable restrictions on merchants or other users of its platforms." ECF No. 55 (Complaint), ¶374. The Complaint also alleged a separate series of misstatements concerning the planned November 2020 IPO of Ant Group, in which Alibaba had a 33% equity stake. The Court dismissed the challenged Ant

Group IPO statements, and Defendant Ma, from the Action, substantially narrowing the case.

The surviving Antitrust Claim involves complex economic and regulatory issues regarding the ecommerce market and Chinese antitrust law. Proving these claims would present a significant challenge. Defendants argued at the pleading stage that Alibaba disclosed its "market approach with traffic resource allocation on our e-commerce platforms," in contrast to its "prior narrowly-deployed exclusive partnerships," and that "prior to and during the putative Class Period, Chinese legal scholars noted the ambiguity and vigorous debate" regarding whether "traffic resource allocation" practices violated Chinese antitrust law. ECF No. 61 at 7. While Plaintiffs strongly believe the evidence supports their allegations, a jury may nevertheless agree with Defendants' argument, putting at risk Plaintiffs' ability to prove falsity, scienter, *and* loss causation—all required elements of their claims.

Defendants would likely argue, *inter alia*, that ambiguity as to whether Alibaba's practices violated Chinese antitrust law was incompatible with a finding of scienter. While Plaintiffs believe that they could establish scienter after the development of the evidentiary record, they also recognize the difficulties in proving scienter. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("the element of scienter is often the most difficult and controversial aspect of a securities fraud claim.") *aff'd*, 634 F.3d 647 (2d Cir. 2011).

**Loss Causation and Damages:** Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation."). For example, in opposing class certification, Defendants argued that "the market believed during the putative Class Period that Alibaba's exclusivity practices were

14

ongoing," and thus the SAMR's announcement of its investigation into Alibaba on December 23, 2020—the only alleged corrective disclosure to survive the pleading stage—did not reveal any new information about Alibaba's practices. ECF No. 107 at 15. Even if the Court granted Plaintiffs' class certification motion, Defendants would likely make a similar argument at summary judgment and trial that, if accepted by the trier of fact, could fatally undermine Plaintiffs' claims.

Of course, to resolve all disputed issues regarding damages and loss causation, the Parties would have relied on expert testimony. This creates further risk because Plaintiffs could not be certain whether a jury would accept the view of their experts or of the well-qualified experts that Defendants would no doubt be able to present at trial. *See In re Facebook, Inc. IPO Sec. and Deriv. Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

### (c)    Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed Settlement provides $433,500,000 for the benefit of the Settlement Class. This is a fair and reasonable result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, and if the Court and jury accepted Plaintiffs'

damages theory—*i.e.*, Plaintiffs' *best case scenario*—the total *maximum* damages *potentially* available in this Action would be approximately $11.629 billion. At class certification, Defendants argued that confounding news *unrelated* to the Antitrust Claim caused or contributed to the December 24, 2020 price drop. ECF 107 at 18-20. Even if this argument did not defeat class certification, Defendants surely would continue to argue that to the extent news unrelated to the Antitrust Claim contributed to the December 24, 2020, price drop, that amount would have to be disaggregated from the amount of damages that Plaintiffs could prove. Further, as detailed in Sec. IV.A.3.(b), *supra*, if the trier of fact accepted Defendants' argument that the December 23, 2020 disclosure did not reveal anything new about Alibaba's practices, Plaintiffs would be unable to establish loss causation and would recover nothing for the Settlement Class.

Even setting aside this existential risk, the Settlement represents a recovery of 3.73% of Plaintiffs' best case damages scenario, which is more than double the median recovery of 1.8% of estimated damages in securities class actions in 2021, 2022, and 2023. Ex. 2 p. 26 (Fig. 22)). More significantly, it *vastly* exceeds the median recovery of 0.4% in settlements during the past decade of securities class actions where investor losses exceeded $10 billion. *Id.* at p. 25 (Fig. 21). The Settlement is an exceptional result.

### 4.    Rule 23(e)(2)(C) Factors Either Support Preliminary Approval Or Are Neutral

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each either supports preliminary approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23(e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and distributing the Net Settlement Fund. The Claims Administrator will process claims, under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. This proposed claims processing method is standard in securities class action settlements and has been long found to be effective, as well as necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund on a claims-free basis.

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Notice and Summary Notice, Lead Counsel will be applying for a percentage of the common fund, in an amount not to exceed 30%, to compensate them for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 30% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for 33⅓% of the class settlement fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Ex. 1 (Stipulation), ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties entered into a confidential agreement establishing certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased or acquired a specific number of Alibaba ADS validly exclude themselves from the Settlement. "This type of agreement is standard in securities class action settlements and has no

negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *7 (S.D.N.Y. Sept. 29, 2022) ("To protect the Class, the specific terms of the Supplemental Agreement are confidential 'to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement.'").

### 5. The Settlement Treats All Members Of The Settlement Class Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6. Remaining *Grinnell* Factors Weigh In Favor Of Preliminary Approval

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. Here, at the time the Settlement was reached, Plaintiffs had opposed two motions to dismiss, engaged in extensive discovery, and fully briefed Plaintiffs' hotly-contested class certification motion.

Indeed, substantial discovery was completed. In addition to Defendants' ongoing rolling productions of documents that began in August 2023, in connection with the Term Sheet, Plaintiffs sought confirmatory discovery, including document discovery and interviews with two senior Alibaba officers, and did not execute the Stipulation until after assessing that discovery. In total, Plaintiffs reviewed and analyzed approximately 1.07 million pages of documents and spreadsheets produced by Defendants, most of which were produced in Chinese, and had been preparing for months for fact depositions of Alibaba witnesses to begin in Hong Kong in September 2024.

In sum, based on the foregoing substantial efforts to obtain documents and information, as well as the briefing on the motions to dismiss and for class certification, Plaintiffs were able to develop a thorough understanding of the strengths and weaknesses of the Action which supports the fairness of the Settlement. Thus, Plaintiffs and their counsel had sufficient information to evaluate the strengths and weaknesses of the case at the time of settlement. This factor supports preliminary approval.

**The Ability of Defendants to Withstand a Greater Judgment:** "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). Here, while it may appear unlikely that Alibaba's financial condition would deteriorate to the extent of jeopardizing any significant recovery for the Settlement Class, that possibility cannot be ruled out entirely, given the significant time required to get to trial and resolve all appeals in this Action. Under these circumstances, the ability to pay weighs in favor of preliminary approval.

**B.    Certification Of the Settlement Class For Settlement Purposes Is Appropriate**

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class,

like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems. . .is not a consideration when settlement-only certification is requested."). As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

### 1.      The Settlement Class Satisfies The Requirements Of Rule 23(a)

**Numerosity:** The first element of the four-part threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class is comprised of purchasers of Alibaba ADS. During the Settlement Class Period, Alibaba ADS were actively traded on the NYSE with millions of ADS traded in that period. Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the thousands. Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied. *See id.* ("Sufficient numerosity can be presumed at a level of forty members or more.").

**Common Questions:** Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, questions of law and fact regarding Plaintiffs' claims will be common to the Settlement Class, including whether Defendants' alleged misrepresentations were "materially misleading." These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all

members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**<u>Typicality:</u>** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Plaintiffs' claims are typical of the Settlement Class because they are based on the same alleged misrepresentations and omissions. Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (finding typicality where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**<u>Adequacy:</u>** As explained in Sec. IV.A.1., *supra*, Plaintiffs are adequate representatives. First, Plaintiffs and Settlement Class Members purchased Alibaba ADS during the Settlement Class Period, and they were all injured by Defendants' allegedly materially false statements and omissions. Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses. *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed.Appx. 760, 764 (2d Cir. 2020). If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, Plaintiffs demonstrated their commitment to this litigation by retaining qualified counsel. *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as lead or co-lead counsel in class action securities litigation."); Ex. 4 (Firm résumé of GPM detailing

qualifications and experience in securities class actions).

### 2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. Here, there are common questions of law and fact involving violations of the federal securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). Predominance has, therefore, been satisfied. *See id.*; *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *5 (S.D.N.Y. Apr. 6, 2006) (predominance readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3). Securities suits easily satisfy Rule 23(b)(3)'s superiority requirement because "the alternatives are either no recourse for thousands of

stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3.    The Court Should Appoint Lead Counsel As Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). GPM was appointed Lead Counsel in February 2022 (ECF No. 48), and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1., *supra*, GPM has substantial experienced prosecuting securities class actions. For these reasons, among others, Plaintiffs respectfully request that the Court appoint GPM to serve as Class Counsel.

### C.    The Court Should Approve The Proposed Form And Method Of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will send, by first-class mail, individual copies of the Notice (Ex. A-1 to the Stipulation) and Claim Form (Ex. A-2 to the Stipulation) (together, the "Notice Packet") to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerages and other nominees who regularly act as nominees for beneficial purchasers of stock and ADS. Contemporaneously with the mailing of the Notice Packet, copies of the Notice Packet will be posted on a website (www.AlibabaClassActionSettlement.com) to be developed for the Settlement. On this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. The Notice will advise Settlement Class Members of: (i) the pendency of the action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will state the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

The proposed form and manner of providing notice of the Settlement to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Accordingly, Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

## V.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Plaintiffs request that Court schedule the Settlement Hearing for a date at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Mailing of Notice Packet ("Notice Date"). | No later than 20 business days after entry of preliminary approval order (Prelim. App. Order ¶7(b)). |
| Publication of Summary Notice. | No later than 10 business days after Notice Date (Prelim. App. Order ¶7(d)). |
| Deadline for filing Claim Form. | No later than 120 calendar days after Notice Date (Prelim. App. Order ¶10). |
| Deadline for requests for exclusion. | Received no later than 21 calendar days prior to Settlement Hearing (Prelim. App. Order ¶13). |
| Deadline for objections. | Received no later than 21 calendar days prior to Settlement Hearing (Prelim. App. Order ¶17). |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan and for application for attorneys' fees and reimbursement of expenses. | 35 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶26). |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Hearing. (Prelim. App. Order ¶26). |
| Settlement Hearing. | At least 120 days after the entry of Prelim. App. Order. |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request relief.

Dated: October 25, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kara M. Wolke*
Robert V. Prongay (*pro hac vice*)
Kara M. Wolke (*pro hac vice*)
Jason L. Krajcer (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
Raymond D. Sulentic (*pro hac vice*)
Robert Yan
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
kwolke@glancylaw.com
jkrajcer@glancylaw.com
mwright@glancylaw.com
rsulentic@glancylaw.com
ryan@glancylaw.com

*Lead Counsel and Proposed Class Counsel*

Jeremy A. Lieberman
Jonathan D. Park
POMERANTZ LLP
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
jpark@pomlaw.com

Patrick V. Dahlstrom
POMERANTZ LLP
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
pdahlstrom@pomlaw.com

Peretz Bronstein
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
peretz@bgandg.com

Frank R. Cruz
THE LAW OFFICES OF FRANK R. CRUZ
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
info@frankcruzlaw.com

Lesley Portnoy
THE PORTNOY LAW FIRM
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
lesley@portnoylaw.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of October, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Kara M. Wolke*
Kara M. Wolke