UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ALIBABA GROUP HOLDING LTD. SECURITIES LITIGATION | Master File No. 1:20-CV-09568-GBD-JW |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     HISTORY OF THE LITIGATION ...................................................................... 4

III.    ARGUMENT ........................................................................................................ 5

        A.    Lead Counsel Are Entitled To An Award Of Attorneys' Fees And Expenses From The
              Common Fund ........................................................................................... 5

        B.    The Court Should Award A Reasonable Percentage Of The Common Fund ......... 6

        C.    The Requested Attorneys' Fees Are Reasonable ...................................... 7

              1.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-
                    Fund Method ................................................................................... 7

              2.    The Lodestar "Cross-Check" Strongly Supports The Reasonableness Of The
                    Requested Fee ................................................................................ 10

        D.    Factors Considered By Courts In The Second Circuit Confirm That The Requested Fee
              Is Fair And Reasonable ........................................................................... 12

              1.    Time And Labor Expended Support The Requested Fee ......................... 13

              2.    The Risks Of Litigation Support The Requested Fee ............................. 15

              3.    The Magnitude And Complexity Of The Action Support The Fee .......... 20

              4.    The Quality Of Representation Supports The Requested Fee ................. 21

              5.    The Requested Fee In Relation To The Settlement Amount .................... 22

              6.    Important Public Policies Support The Requested Fee........................... 23

        E.    Lead Counsel's Expenses Should Be Reimbursed .............................................. 23

        F.    Plaintiffs Should Be Granted PSLRA Awards ..................................................... 24

IV.     CONCLUSION................................................................................................... 25

## **TABLE OF AUTHORITIES**

<u>CASES</u>

*Alaska Elec. Pension Fund v. Bank of America Corp.*,
  2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .......................................................................... 8

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) .................................................................................................. 2

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................................... 9

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) .............................................................................................. 19

*Atanasio v. Tenaris S.A.*,
  2019 WL 1916197 (E.D.N.Y. Apr. 29, 2019) ....................................................................... 22

*Athale v. Sinotech Energy Ltd.*,
  2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)................................................................... 6, 12

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .......................................................................... 4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)........................................................................... 7

*Benson v. DoubleDown Interactive, LLC*,
  2023 WL 3761929 (W.D. Wash. June 1, 2023)........................................................................ 9

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................................................. 5

*Burns v. Falconstor Software, Inc.*,
  2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ..................................................................... 12

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................... 7, 10

*City of Birmingham Ret. and Relief Sys. v. Credit Suisse Grp. AG*,
  2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) .................................................................. 17, 23

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................................................. 16, 17

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................. 21

*Davis v. J.P. Morgan  Chase*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ....................................................................... 12

*Edmonds v. U.S.*,
  658 F. Supp. 1126 (D.S.C. 1987)................................................................................ 22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ...................................................................................... 2

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................................................. *passim*

*Gross v. GFI Group, Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018)........................................................................ 17

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................................... 12, 24

*Hicks v. Morgan Stanley & Co.*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................................. 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .................................................................................... 2

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. Mar. 24, 2014).................................................................. 19

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................................................. 20

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................................ 2

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2008 WL 63269 (E.D. Pa. Jan. 3, 2008) .................................................................... 18

*In re Bank of Am. Corp, Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014)........................................................................................ 25

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .............................................................. 2

iii

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ................................................................ 7

*In re re Buspirone Antitrust Litig.*,
  2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) ..................................... 8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................................. 10

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................... 9

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. 2011) ........................................................ 10, 18, 19

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................................................. 12

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............................................. *passim*

*In re Credit Default Swaps Antitrust Litig.*,
  2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ..................................................... 12

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) .................................................................. 17

*In re Dell Techs. Inc. Class V S'holders Litig.*,
  300 A.3d 679 (Del. Ch. 2023) ............................................................................ 8

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) .................................................... 12

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ................................................. 12, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................... 16, 23, 24, 25

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................. 16, 19

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................. 10, 11, 16, 24

iv

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................................................ 11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................................................. 20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ........................................................................ 23

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .......................................................................... 7

*In re Marsh & McLennan Cos. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 10, 25

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................ 19

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 12, 16

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12, 2003)............................................. 8

*In re Peanut Farmers Antitrust Litig.*,
   2021 WL 9494033 (E.D. Va. Aug. 10, 2021) .............................................................. 17

*In re Pfizer Inc. Sec. Litig.*,
   2016 WL 11801285 (S.D.N.Y. Dec. 21, 2016) ............................................................ 7

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................................ 20

*In re Qudian Inc. Sec. Litig.*,
   2021 WL 2328437 (S.D.N.Y. June 8, 2021) ................................................................ 25

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)........................................................................................... 7

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   2013 WL 5505744 (D.N.J. Oct. 1, 2013).................................................................... 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................... 8, 22, 24

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................. 12

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) ................................................................. 8

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................... 3, 6

*In re Tenaris S.A. Sec. Litig.*,
   2024 WL 1719632 (E.D.N.Y. April 22, 2024) .................................................... 11

*In re Teva Sec. Litig.*,
   2022 WL 16702791 (D. Conn. June 2, 2022) ...................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ....................................................... 9

*In re Under Armour Sec. Litig.*,
   2024 WL 4715511 (D. Md. Nov. 7, 2024) .......................................................... 8

*In re Urethane Antitrust Litig.*,
   2016 WL 4060156 (D. Kan. July 29, 2016) ........................................................ 8

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................. *passim*

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................. 12

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................ 3, 18, 25

*In re XL Fleet Corp. Sec. Litig.*,
   2024 WL 1884483 (S.D.N.Y. April 30, 2024) .................................................... 25

*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..................................................... 7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009) ........................................................... 20

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ..................................................... 11

vi

*Leach v. NBC Universal Media, LLC*,
    2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ........................................................................ 12

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .................................................................................................... 11

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................................... 5, 12, 23

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................................................................... 17

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................................................................................... 5

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ................................................................................................................. 11

*Monzon v. 103W77 Partners, LLC*,
    2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ............................................................................... 6

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ........................................................................ 9

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................................... 19

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999) .................................................................................................... 11

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .......................................................................... 18

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ..................................................................................................... 2

*Silverman v. Motorola, Inc.*,
    2012 WL 1597388 (N.D. Ill. May 7, 2012) ............................................................................. 17

*Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.*,
    2006 WL 8446464 (D.S.C. Aug. 15, 2006) ............................................................................... 9

*Taft v. Ackermans*,
    2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...................................................................... 20, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................... 23

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ......................................................................................... 6

*Varljen v. H.J. Meyers & Co., Inc.*,
    2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000)....................................................... 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................... 6, 11, 23

STATUTES

15 U.S.C. § 78u-4(a) .............................................................................................. 6, 24

RULES

Fed. R. Civ. P. 30.......................................................................................................... 14

## I.    INTRODUCTION

Court-appointed lead counsel Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), on behalf of all Plaintiffs' Counsel, respectfully submits this memorandum of law in support of its request for attorneys' fees of 25% of the Settlement Fund (or $108,375,000, plus interest at the same rate as the Settlement Fund).[1] Lead Counsel also seeks reimbursement of $1,025,752.68 for out-of-pocket expenses advanced by counsel, as well as an aggregate of $85,000 to Court-appointed Lead Plaintiff Salem Gharsalli ($25,000) and additional representative plaintiffs Laura Ciccarello, Dineshchandra Makadia, and Wusheng Hu ($20,000 each) (together with Lead Plaintiff, "Plaintiffs"), as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

Lead Counsel have succeeded in obtaining a $433,500,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action").  This is an outstanding result, both in the aggregate and as a percentage of potential damages.  If approved, the $433.5 million recovery will be the ***largest ever*** securities class action settlement against a China-based company (Ex. 14 (collecting cases)), and one of the 50 largest since the PSLRA was enacted thirty years ago.  Ex. 8 (ISS Securities Class Action Services, *The Top 100 U.S. Class Action Settlements of All-Time as of December 31, 2023* (2023)), at 6-7.  It also constitutes approximately 3.73% of the $11.629 billion in ***maximum*** damages ***potentially*** available in this case, which is more than ***nine times*** the median recovery of 0.4% in securities class actions of a similar magnitude.  Ex. 6 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities*

---

[1] Unless otherwise defined, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated October 25, 2024 (ECF No. 136-1), or in the concurrently-filed Declaration of Kara M. Wolke in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Wolke Declaration").  Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Wolke Declaration.  Unless otherwise indicated, all emphasis is added, and all internal quotation marks and citations are omitted.

*Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2024) ("NERA Report")) at 26 (Fig. 23), 27 (Fig. 24).  Put simply, the Settlement is an exceptional result.

Achieving the Settlement was not easy.  Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment.  These are not idle risks.  "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).  As a result, a significant number of cases—such as this one—are dismissed in whole or in part at the outset.[2]  Nor do the risks end at the pleading stage.  Even when a plaintiff is successful at trial, payment is far from guaranteed.  *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").[3]

The riskiness and expense of this Action was further exacerbated by the international dimensions of the case.  The conduct at issue took place in China, involved complex economic and regulatory issues regarding the e-commerce market and Chinese anti-trust law, and Defendants and

---

[2] *See* Ex. 6 (NERA Report) at 17 (Fig. 15) (finding motion to dismiss filed in 96% of securities class action lawsuits, with a decision reached in 74% of the cases, and stating that "[a]mong the cases in which a decision was reached, 61% of motions were granted (with or without prejudice) while 39% were denied either in part or in full.").

[3] *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds, and remanding for new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (following jury verdict in plaintiff's favor on liability, district court granted defendants' motion for judgment as matter of law because there was insufficient evidence to support finding of loss causation), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

2

witnesses were all located in mainland China.  Plaintiffs' Counsel's investigation and prosecution of the case required, *inter alia*, the use of a bilingual private investigator to conduct an investigation in China, extensive research into Chinese anti-trust law, translators, bilingual document reviewers, and a thorough understanding of a variety of political, business and legal issues unique to China.  Lead Counsel also knew that even if Plaintiffs were to prevail at trial, it would be virtually impossible to execute on a judgment against Defendants.  There was, therefore, a strong possibility that the case would yield little or no recovery after many years of costly litigation.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

Despite facing long odds, Plaintiffs' Counsel vigorously pursued this case for more than four years—working 58,323.45 hours and advancing $1,025,752.68 in out-of-pocket expenses, all on a fully contingent basis.  *See* ¶¶10 (summary of work), 19-69 (description of procedural history and prosecution of the Action), 111-14, 129-30 (lodestar summary), 133 (expense summary); *see also* § III.D.1, *infra* (summarizing work performed by Plaintiffs' Counsel).  As compensation for Plaintiffs' Counsel's considerable efforts on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the amount of 25% of the Settlement Fund.  The requested fee is consistent with fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Lead Counsel's lodestar.  Indeed, the requested fee represents a multiplier of 3.22 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

3

Lead Counsel also seeks reimbursement of $1,025,752.68 in out-of-pocket litigation expenses incurred in prosecuting the Action. *See* ¶133. This amount is below the $1,500,000 limit on Litigation Expenses disclosed in the Notice—which, by definition, included PSLRA awards to Plaintiffs. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Lead Counsel respectfully requests PSLRA awards in the aggregate amount of $85,000 to compensate Plaintiffs for the time and effort they have expended on behalf of the Settlement Class. The work performed by Plaintiffs is set forth in their declarations. Exs. 2-5. But for their "commitment to pursuing these claims, the successful recovery for the Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Wolke Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Fund, approve reimbursement of $1,025,752.68 in out-of-pocket litigation expenses, and grant PSLRA awards of in the aggregate amount of $85,000.

## II.    <u>HISTORY OF THE LITIGATION</u>

The Wolke Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the nature of the claims asserted in, and the history of, the Action; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check.

III.    **ARGUMENT**

A.    **Lead Counsel Are Entitled To An Award Of Attorneys' Fees And Expenses From The Common Fund**

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Id.* at *2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Plaintiffs' Counsel's efforts conferred a substantial benefit—$433.5 million in cash—on an ascertainable class, and a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F. Supp. 2d 369.

## B.     The Court Should Award A Reasonable Percentage Of The Common Fund

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees[.]" *Goldberger*, 209 F.3d at 50.  However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]'").[4]  The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class." 15 U.S.C. § 78u-4(a)(6).[5]

Use of the percentage method does not, however, render the lodestar irrelevant.  Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50).  "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel

---

[4] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[5] *See also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Telik*, 576 F. Supp. 2d at 586 ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.").

need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[,]" *id.*, or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

## C.    The Requested Attorneys' Fees Are Reasonable

### 1.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-Fund Method

The 25% fee requested by Lead Counsel is well within the range of percentage fees awarded in the Second Circuit in comparable complex class actions that involved so-called "mega-fund" recoveries of over $100 million. *See In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million, stating: "Lead Counsel's request for 25% of the Settlement Amount is consistent with, or lower than, the fee awards in other 'megafund' securities fraud actions in this Circuit."); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement fund, stating "[d]istrict courts in the Second Circuit routinely award fees upwards of 25% in securities and other complex litigation settlements of comparable size."); *In re Pfizer Inc. Sec. Litig.*, 2016 WL 11801285, at *1 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*,

671 F. Supp. 2d 467, 516 & n.354 (S.D.N.Y. 2009) (awarding 33.33% in attorneys' fees from $510 net settlement fund); *Alaska Elec. Pension Fund v. Bank of America Corp.*, 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of $504.5 million settlement fund); *In re Oxford Health Plans, Inc. Sec. Litig.*, MDL No. 1222 (CLB), ECF No. 369 at 8 (S.D.N.Y. June 12, 2003), and 2003 U.S. Dist. LEXIS 26795, at *13 (S.D.N.Y. June 12, 2003) (Ex. 17) (awarding 28% of combined $300 million settlements); *Qsberg v. Foot Locker, Inc.*, No. 07-cv-1358, ECF No. 423 (S.D.N.Y. June 8, 2018) (Ex. 18) (awarding 33% of $288.4 million settlement); *In re Teva Sec. Litig.*, 2022 WL 16702791, at *1 (D. Conn. June 2, 2022) (awarding 23.70% of $420 million settlement fund).[6]

An examination of mega-fund fee decisions in other courts further supports an award of 25% of the Settlement Fund. *See In re Urethane Antitrust Litig.*, 2016 U.S. Dist. LEXIS 99839, at *82, 2016 WL 4060156, at *6 (D. Kan. July 29, 2016) (awarding 33.33% fee on $835 million settlement, noting that "Counsel's expert has identified 34 megafund cases with settlements of at least $100 million in which the court awarded fees of 30 percent or higher"); *In re Under Armour Sec. Litig.*, 2024 WL 4715511, at *1-*2 (D. Md. Nov. 7, 2024) (awarding 25.83% of $434 million settlement fund); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., et al.*, No. 02 C-5893, ECF No. 2265 (N.D. Ill. Nov. 10, 2016) (awarding 24.68% of $1.575 billion in securities class action) (Ex. 23); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1110 (D. Kan. 2018) (awarding one-third of $1.51 billion); *In re Dell Techs. Inc. Class V S'holders Litig.*, 300 A.3d 679 (Del. Ch. 2023), as

---

[6] *See also In re U.S. Foodservice, Inc. Pricing Litig.*, No. 07-md-1894, ECF No. 521 (D. Conn. Dec. 9, 2014) (33.33% of $297 million settlement) (Ex. 19); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16-17 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement); *Anwar v. Fairfield Greenwich Ltd.*, 1:09-cv-00118, ECF Nos. 1099 at *2, 1233 at *2, 1457 at *11, and 1569 at *11 (S.D.N.Y. Mar. 28, 2013, Nov. 22, 2013, Nov. 20, 2015 and May 6, 2016) (awarding total fees of 28.8% on $235.25 million aggregate settlement) (Ex. 20); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12-MD-2335 (LAK) (JLC), ECF No. 637 at 3 (S.D.N.Y. Sept. 24, 2015) (awarding fees equal to 25% of $335 million fund) (Ex. 21); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538, at * 11 (S.D.N.Y. Apr. 11, 2003) (33.3% of $220 million fund) (Ex. 22).

revised (Aug. 21, 2023) (awarding 26.67% of the $1 billion common fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1241 (S.D. Fla. 2006) (awarding 31.33% of $1.06 billion); *Benson v. DoubleDown Interactive, LLC*, 2023 WL 3761929, at *1-*3 (W.D. Wash. June 1, 2023) (awarding 29.3% of $415 million settlement fund); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (awarding 30% of $410 million); *Dahl v. Bain Capital Partners, LLC,* No. 07 Civ. 12388, ECF Nos. 1051-52, 1095 (D. Mass. Feb. 2, 2015) (awarding 33% of $590.5 million) (Ex. 24); *Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.,* 2006 WL 8446464, at *5 (D.S.C. Aug. 15, 2006) (awarding 25% of $468.6 million settlement value); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *20 (N.D. Cal. Apr. 3, 2013) (awarding 28.6% of $1.08 billion settlement); *In re Williams Sec. Litig.*, No. 02-cv-72-SPF, ECF No. 1638 at 2 (N.D. Okla. Feb. 12, 2007) (awarding 25% of $311 million) (Ex. 25); *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *4-5 (N.D. Cal. Sept. 26, 2023) (awarding 25% of $300 million settlement fund in securities class action).[7]

Empirical research is in accord. A statistical review of all PSLRA settlements from 2015 to 2024 reveals that 25% is the median fee award in cases with recoveries ranging from $100 million to $500 million. Ex. 6 (NERA Report) at 30 (Fig. 27). This comports with the findings of Professors Brian Fitzpatrick and Charles Silver, who conclude that a fee award of 25% "would be reasonable in light of empirical analyses of class action fees, research on economic incentives in class action litigation, and market practices." Ex. 11 (Joint Declaration of Professors Brian Fitzpatrick and Charles Silver ("Joint Decl.")), ¶6; *see also id*., at ¶¶20, 22, 40-43, 51. In fact, in some cases, courts have approved awards of 40% and higher. *See id.* at ¶50; *see also* Ex. 13 (collecting cases).

---

[7] *See also* Ex. 13 (collecting over 140 cases with recoveries of at least $100 million and fee awards of at least 25%).

Finally, the requested 25% fee *is less than* the pre-litigation fee agreement agreed to by the Court-appointed Lead Plaintiff (who lost more than $2.9 million (ECF No. 8-3)), which authorized counsel to seek up to 33%. ¶126. Each of the other three Plaintiffs (including Dr. Makadia who lost over $1.3 million) also previously authorized counsel to seek an attorneys' fee award of up to 33.3%. *Id*. These fee agreements are not outliers; rather, they are consistent with market rates. As set forth in the Joint Declaration, sophisticated business clients normally pay contingent fees in the range of 30%-40% in risky, high-stakes cases. Ex. 11, ¶¶34, 40-52. "While this Court need not adhere to that agreement, courts apply a presumption of reasonableness where a fee request is consistent with an *ex ante* agreement." *Christine Asia Co.*, 2019 WL 5257534, at *18.[8] That the Lead Plaintiff, a sophisticated businessman and investor, entered into an *ex ante* agreement to pay a 33% fee is, therefore, relevant to the inquiry, and supports the reasonableness of Lead Counsel's request.

### 2. The Lodestar "Cross-Check" Strongly Supports The Reasonableness Of The Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[9] Additionally, "[u]nder the lodestar method of fee

---

[8] *See also In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) ("Since the passage of the PSLRA, courts have found such an agreement between fully informed lead plaintiffs and their counsel to be presumptively reasonable."); *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable."); *Comverse*, 2010 WL 2653354, at *4; *In re China Sunergy Sec. Litig*., 2011 WL 1899715, at *6 (S.D.N.Y. 2011); *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001).

[9] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*,

computation, a multiplier is typically applied to the lodestar." *Global Crossing*, 225 F.R.D. at 468. "The

multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the

engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47);

*Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  Thus, "[w]here, as here, counsel has

litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the

lodestar." *Comverse*, 2010 WL 2653354, at *5.

Here, Plaintiffs' Counsel (including attorneys, paralegals, and professional support staff)

collectively devoted a total of 58,323.45 hours to the prosecution of this Action, resulting in a lodestar

of $33,635,813.50.  ¶130.[10]  Based on a 25% fee (equal to $108,375,000), Lead Counsel's lodestar of

yields a multiplier of 3.22.  ¶129.  This multiplier is well within the range of multipliers commonly

awarded in securities class actions and other complex litigation.  *See Wal-Mart*, 396 F.3d at 123

(upholding multiplier of 3.5 as reasonable on appeal); *Qsberg v. Foot Locker, Inc.*, No. 07-cv-1358, ECF

No. 423 at 4-5 (S.D.N.Y. June 8, 2018) (awarding 33% of $288.4 million settlement, "equat[ing] to an

implied multiplier of 4.8, which is in line with implied multipliers approved in other comparable cases

in this Circuit and elsewhere.") (Ex. 18); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10

(E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of

4.75); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within

---

491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]").

[10] Lead Counsel's rates range from $875 to $1325 for partners, and $395 to $725 for non-partners (¶132), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021); *see also* Ex. 12 (chart of rates charged by peer plaintiff and defense counsel in complex litigation); *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10 (E.D.N.Y. April 22, 2024) (finding GPM's 2023 "billing rates, which range from $675 to $1,100 for partners, and $395 to $725 for non-partners are comparable to peer law firms in recent years.").

the range awarded by courts in this Circuit and courts throughout the country[]”);  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 on lodestar of $36.2 million and noting that “multipliers of between 3 and 4.5 have become common”); *Davis v. J.P. Morgan Chase*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding fee representing a multiplier of 5.3, which was “not atypical” in similar cases).[11] Moreover, “[t]he fact that Lead Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request.” *Leach v. NBC Univ. Media LLC*, 2017 WL 10435878, at ¶49 (S.D.N.Y. Aug. 24, 2017); *see also In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015).

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit and elsewhere regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.  Additionally, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

**D.     Factors Considered By Courts In The Second Circuit Confirm That The Requested Fee Is Fair And Reasonable**

The Second Circuit set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

---

[11] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of “between four and five”); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (“multipliers of between three and four times . . . have been routinely awarded in this Circuit.”); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (awarding 27.5% fee on $134.6 million settlement and finding multipliers of 3 to 4.5 to be common); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was “large, but not unreasonable.”); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (multiplier of 6.2); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), ECF No. 117 at ¶9 (S.D.N.Y. July 18, 2011) (multiplier of 4.7) (Ex. 26); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier);  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (multiplier of 4.0).

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.      Time And Labor Expended Support The Requested Fee

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement supports the requested fee.  As set forth in greater detail in the Wolke Declaration, Plaintiffs' Counsel, among other things:

- drafted the initial complaint in the Action;

- engaged in extensive briefing related to Mr. Gharsalli's motion for consolidation and appointment as lead plaintiff pursuant to the PSLRA, and prepared for and successfully argued Mr. Gharsalli's motion;

- conducted an comprehensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Alibaba's SEC filings; (ii) public reports, blog posts, research reports prepared by securities and financial analysts, news and wire articles, and other information available on the internet concerning Alibaba, including many published in Mandarin Chinese; (iii) investor call transcripts; (iv) announcements by the Chinese State Administration for Market Regulation ("SAMR"); and (v) other publicly available material concerning Alibaba and related entities; (b) retaining and working with a bilingual private investigator based in Hong Kong to assist in the factual research and investigation relating to Plaintiffs' alleged claims, including, in particular, accessing and reviewing information filed by Alibaba and third parties with the SAMR in China, the Hong Kong Stock Exchange , and the Shanghai STAR Market; (c) having relevant documents translated from Chinese to English; and (d) consulting with experts in the fields of loss causation and damages;

- utilized the comprehensive investigation and research to draft and file the 147-page Amended Consolidated Class Action Complaint (the "Complaint"), plus exhibits, asserting claims against Alibaba, Daniel Yong Zhang ("Zhang"), Maggie Wei Wu ("Wu"), and Jack Ma ("Ma") under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and against Zhang, Wu, and Ma under Section 20(a) of the Exchange Act;[12]

- researched and drafted oppositions to the two separate motions to dismiss filed by (a) Alibaba, Zhang, and Wu; and (b) Ma; participated in oral argument on the motions;

---

[12] Exhibits 1 through 8 to the Complaint were copies of documents written in Chinese, with certified English translations.  *See* ECF No. 55.

and ultimately prevailed in part (*see* ECF No. 83);

- engaged in significant discovery efforts, which entailed, *inter alia*: (a) exchanging initial disclosures; (b) propounding six sets of requests for production of documents and one set of written interrogatories; (c) noticing the deposition of Alibaba pursuant to Fed. R. Civ. P. 30(b)(6); (d) participating in an initial Case Management Conference before Magistrate Judge Jennifer E. Willis; (e) responding to Defendants' requests for production and producing over 15,000 pages of documents; (f) meeting and conferring regarding the scope of discovery in this Action, including participating in numerous telephonic or video conferences and exchanging approximately 40 meet and confer letters, as well as dozens of e-mail;[13] (g) strategically reviewing and analyzing more than 1.07 million pages of documents produced by Defendants and third parties over the course of the Action, many of which were written in Mandarin Chinese; and (h) preparing "deposition materials," containing summaries of each potential deponent's background, relevant documents, and potential lines of questioning for depositions, which depositions were contemplated to commence in September 2024 and continue through December 2024;

- negotiated a stipulation governing the treatment of confidential information and documents and the production of ESI, which was endorsed by the Court;

- fully briefed Plaintiffs' motion for class certification, which entailed, *inter alia*: (a) assisting in the preparation and submission of expert and rebuttal reports on market efficiency by Dr. David Tabak and defending his class certification deposition; (b) preparing for and defending the four Plaintiffs' depositions; (c) deposing Defendants' expert, Dr. Glenn Hubbard, Ph.D.; and (d) moving to strike in part a sur-reply filed by Defendants;

- participated in a full-day, in-person mediation with former U.S. District Court Judge Phillips in Newport Beach, California, before which the Parties exchanged opening and supplemental mediation statements and exhibits on the issues of liability, damages and class certification, which did not result in a settlement agreement at that time;

- engaged in months of follow-up negotiations with Judge Phillips and Defendants' Counsel following the unsuccessful mediation that ultimately resulted in a mediator's recommendation to the settle the Action for $433.5 million;

- drafted and then negotiated the Term Sheet, and then drafted and negotiated the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with Plaintiffs' damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the preliminary approval motion and supporting papers;

---

[13] Following these substantial negotiations, the Parties agreed to the parameters for Defendants' search of Electronically Stored Information (or "ESI"), pursuant to which Defendants agreed to search the e-mail and DingTalk messages of 28 custodians by applying 465 search terms (155 discrete terms searched in each English, simplified Chinese, and traditional Chinese). ¶41.

- oversaw the implementation of the notice process; and

- drafted the motion for final approval. *See* ¶¶19-69.[14]

It is also important to recognize that the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. Accordingly, this factor supports the requested fee. *See Facebook*, 2015 WL 6971424, at *10 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

### 2.    The Risks Of Litigation Support The Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54. This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he

---

[14] Lead Counsel took care to control staffing and to use only those resources necessary for the successful prosecution of the Action, balancing its fiduciary duty to the Settlement Class with the demands of fast-paced and complex litigation. To strategically review and analyze the approximately 1.07 million pages of documents produced and to prepare for the anticipated depositions as efficiently as possible, Plaintiffs' Counsel employed a team of experienced project attorneys. ¶42. Many of the attorneys are graduates of top-tier law schools in China, the United States, or both, and have years of relevant experience working for either plaintiffs' firms and/or large defense firms. Ex. 15. Their work was highly substantive, crucial to the prosecution of the Action, and directly contributed to the outcome achieved. By conducting substantive review and analysis of documents, assisting in preparation for depositions, and synthesizing and assembling the documentary and testimonial evidence, the project attorneys were performing work equivalent, at least, to junior associates at a large law firm (who would be billed at much higher rates). *See, e.g.*, ¶132, Exs. 12, 16.

15

would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55).[15]  The many risks that Plaintiffs' Counsel faced in prosecuting this suit more than justify the requested 25% fee.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010).  This case was no exception.  From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [many] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011).  Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expenses since this case began more than [four] years ago." *Flag Telecom*, 2010 WL 4537550, at *27.  Plaintiffs' Counsel's commitment was substantial (*i.e.*, $33,635,813.50 in lodestar (¶130) and $1,025,752.68 in out-of-pocket hard costs (¶133)), and had they not obtained a recovery, it could have all been lost.  *See Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (GPM served as one of lead

---

[15] *See also NASDAQ Market-Makers*, 187 F.R.D. at 488 ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise).").

16

plaintiff's counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019).[16] To put it bluntly, complex litigation is not risk free, and this case was not a slam dunk.[17]

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 848 (N.D. Ill. 2015); *see also Grinnell*, 495 F.2d at 471 (factors that comprise "risk of litigation" include whether "a relevant government action [has] been instituted or, perhaps, even successfully concluded against the defendant"). This is because the risk is not uniform in all class actions, and the risk of nonpayment is higher in cases where there has been no government action. *See In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *3 (E.D. Va. Aug. 10, 2021); *see also* Joint Decl., ¶29. In the instant case, no civil or criminal charges have been filed by the SEC or DOJ—even as of today. Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).[18]

---

[16] *See also In re: Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115, ECF No. 920 (N.D. Cal. Dec. 17, 2018) (GPM lost a six-week antitrust jury trial after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs); *Veeco*, 2007 WL 4115808, at *6 ("There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.").

[17] For a discussion of the litigation, and thus contingency fee, risks inherent in this case, the Court is respectfully referred to the concurrently-filed Final Approval Memorandum and Wolke Declaration. *See* Final Approval Memorandum § III.B.3.; Wolke Declaration ¶¶51-78. While Lead Counsel believes those risks are important in assessing a reasonable attorneys' fee, for the sake of brevity, this section focuses on what made this Action riskier than other securities class actions. *See City of Birmingham*, 2020 WL 7413926, at *3 ("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage.").

[18] *See also Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged

Another indicium of risk is the fact that this was not a restatement case. *See Xcel Energy*, 364 F. Supp. 2d at 995 (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials); *see also* Joint Decl., ¶30.  When companies restate their financials, they admit to a material misstatement of their financial reporting.  A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met.  *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not involve restatement of TXU's previously issued financial statements or any other acknowledgments of wrongdoing."); *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement).

The risks inherent in the case were further magnified by the fact that Alibaba is a Cayman Islands company with its headquarters in Hangzhou, China.  All of the witnesses and documentary evidence would be located in China, with many documents written in Chinese.  As a result, the costs of litigating this case would be substantially higher and considerably more complicated and time intensive.  Documents would need to be obtained from, or reviewed in, China and translated; depositions—if they could be taken at all—would require a main interpreter and check interpreters; and third-party discovery would have been virtually impossible to obtain.  *E.g.*, ¶¶44, 80.  Plaintiffs knew from the outset they would have to surmount these significant obstacles to obtain the evidence needed to support their claims.  In short, obtaining the evidence necessary to establish liability was in

---

fraud . . . . Rather, [class counsel] investigated the facts and developed their theory of liability from scratch, involving significant time and expense."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) ("The risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by the government in a criminal action" and thus "warrants approval" of class counsel's one-third fee request.).

no way guaranteed; rather, the only certainty in this litigation was that it would be expensive, time-consuming and complicated. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the Company's location in China would have posed a barrier that would have increased the difficulty and expense of discovery, and might have made it impossible to collect some of the evidence or take depositions necessary to prove Plaintiffs' claims.").[19]

Finally, even if Plaintiffs overcame all of those risks and prevailed at trial for the full amount of damages, they would still face the risk of an adverse decision on post-trial motions or reversal on appeal,[20] and there would have been additional risks related to the collectability of any monetary judgment. Alibaba has few, if any, assets in the U.S., and Chinese courts generally do not enforce U.S. court judgments. *See* ¶85 (discussing, *inter alia*, inability of GPM and co-lead counsel to collect S.D.N.Y. securities fraud judgment against Chinese company Puda Coal); *Giant Interactive*, 279 F.R.D. at 161 ("Finally, even assuming a plaintiffs' verdict, obtaining a recovery would likely have been uncommonly difficult and time-consuming, as counsel have explained that this litigation could face unique delays because defendant Giant has no assets outside of China, and any judgment obtained in the United States would have been of uncertain enforceability overseas.").

In sum, "[t]here was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010). This is especially true where, as here, the $433.5 million Settlement far exceeded the amount of applicable D&O insurance available. ¶86.

---

[19] *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. Mar. 24, 2014) (same); *see also Giant Interactive*, 279 F.R.D. at 164 ("counsel faced the additional challenges that many documents needed translation, that evidence, witnesses and depositions were overseas, and that discovery motions were heavily contested").

[20] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and directing entry or judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (reversing 1988 verdict for plaintiffs on the basis of 1994 Supreme Court opinion).

### 3.    The Magnitude And Complexity Of The Action Support The Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Such was the case here.

As noted above and in the Wolke Declaration, this case raised a number of complex questions concerning liability and damages that required great skill and extensive efforts to litigate. *See* ¶¶19-69. The complexities were especially acute given the case's international dimension, involving foreign parties and witnesses, and foreign-language documents, in a dispute that turned in large part on foreign legal standards and the significance of actions by foreign regulators, as well as Plaintiffs' ability to collect evidence in China. Thus, this was an incredibly complex matter—even by the standards of securities class actions. *See In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *9 (E.D.N.Y. Jan. 21, 2022) ("Litigating this action is also made significantly more complex, expensive, and risky by virtue of the fact that Defendants are based in China. This facet adds complications, requiring Plaintiffs to follow international conventions to retrieve documents and elicit testimony and imposing the expense and complication of obtaining translation services and retaining bilingual or other specialized attorneys to facilitate document review.").

The magnitude of this Action was similarly unquestionable. This was hard-fought, expensive,

20

multi-year litigation, with hundreds of millions of dollars of damages at stake, and it required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4. The Quality Of Representation Supports The Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Ackermans*, 2007 WL 414493, at \*10 ; *see also Veeco*, 2007 WL 4115808, at \*7. Both factors support the conclusion that a 25% fee award in this case is reasonable under the circumstances.

The Settlement provides a cash payment of $433,500,000 for the benefit of the Settlement Class. This is a highly favorable result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages ***potentially*** available in this Action would be approximately $11.629 billion. Thus, the $433.5 million Settlement Amount equates to a recovery of approximately 3.73% of maximum potential damages. As noted above, this is ***more than nine times greater*** than the median recovery of 0.4% in securities class action settlements from 2015 through 2024, where investor losses exceeded $10 billion. Ex. 6 (NERA Report) at 26 (Fig. 23).

Moreover, Lead Counsel's significant experience in prosecuting securities class action claims, vigorous representation, and commitment to providing the Settlement Class with the best possible representation were major factors in obtaining the exceptional result. *See* Ex. 9-C (GPM firm résumé);

*Atanasio v. Tenaris S.A.*, 2019 WL 1916197, at \*8, \*10 (E.D.N.Y. Apr. 29, 2019) (noting that courts have recognized GPM "is experienced in securities class action litigation" and appointing GPM as lead counsel); *see also Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."). Indeed, "[n]ot only did [Lead] Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Veeco*, 2007 WL 4115808, at \*7.

"Courts have [also] recognized that the quality of the opposition should also be taken into consideration in assessing the quality of the counsel's performance." *Signet Jewelers*, 2020 WL 4196468, at \*20. Here, Defendants were vigorously represented by experienced, aggressive, and highly skilled counsel from Simpson, Thacher & Bartlett LLP, one of the country's most capable and renowned law firms. ¶124. Notwithstanding this capable opposition, Lead Counsel's ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action, enabled it to obtain an outstanding result for the Settlement Class. Consequently, this factor militates in favor of the requested fee. *See Veeco*, 2007 WL 4115808, at \*7 (30% fee award supported by fact that defendants were represented by "one of the country's largest law firms").

### 5.  The Requested Fee In Relation To The Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at \*3. As discussed in detail in Section III.C.1., *supra*, the requested 25% fee is consistent with percentage fees that courts in the Second Circuit and elsewhere have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.   Important Public Policies Support The Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Del Global*, 186 F. Supp. 2d at 373.  This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

Here, Plaintiffs' Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, ***and they did so on a fully contingent basis***. Accordingly, public policy considerations favor Lead Counsel's fee request.  *See City of Birmingham Ret. and Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *2 (S.D.N.Y. Dec. 17, 2020) ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (quoting *Wal-Mart*, 396 F.3d at 96) (alteration in the original).

### E.   Lead Counsel's Expenses Should Be Reimbursed

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Flag Telecom*, 2010 WL 4537550, at *30; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

As detailed in the Wolke Declaration, Plaintiffs' Counsel collectively incurred $1,025,752.68 in out-of-pocket litigation costs in the prosecution of the Action. ¶133 (expense chart). The vast majority of those expenses were incurred for services rendered by Plaintiffs' econometric experts: $609,579.25 (59.4%); followed by mediation services $110,470.00 (10.7%); translation services: $82,813.38 (8.1%); and online factual and legal research: $73,048.69 (7.1%). ¶136. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, constitute approximately 0.23% of the Settlement Amount, which is significantly below the expense ratios for other settlements of this size, and are customary and necessary expenses for a complex securities action. *See* Ex. 6 (NERA Report), at 30 fig.27 (median expenses of 1.2% for settlements of $100 to $500 million in the last decade); *see also Signet Jewelers*, 2020 WL 4196468, at *22. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

Finally, the request is below the $1.5 million limit disclosed in the Notice, and no Settlement Class Member has objected to the request. "This favorable reaction of the Class supports approval of the expense request." *Signet Jewelers*, 2020 WL 4196468, at *22.

### F.    Plaintiffs Should Be Granted PSLRA Awards

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also respectfully requests PSLRA awards to Plaintiffs in the aggregate amount of $85,000 ($25,000 to Lead Plaintiff and $20,000 to each of the other three Plaintiffs) for time spent prosecuting the Action. 15 U.S.C. § 78u-4(a)(4). "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura*, 2019 WL 6889901, at *22. Reimbursement of such costs

are allowed because they "encourage[] participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, each Plaintiff, *inter alia*, reviewed the pleadings and briefs filed in the Action, as well as court orders; regularly communicated with Plaintiffs' Counsel about the litigation and the strengths and weaknesses of the case; responded to discovery and sat for a deposition; were involved in settlement negotiations; and, after extensive discussions with Lead Counsel, authorized settlement of the case. *See* Exs. 2-5. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives[]," and the amount requested is consistent with awards in other complex cases. *Marsh & McLennan*, 2009 WL 5178546, at *21; *see, e.g.*, *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *2 (S.D.N.Y. April 30, 2024) (granting PSLRA award of $25,000 to Lead Plaintiff and awards of $15,000 to each of the other four named plaintiffs).[21] Consequently, Lead Counsel respectfully requests that the Court approve the awards.

## IV.    **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the requested relief.

---

[21] *See Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *In re Bank of Am. Corp, Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *Flag Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-5619 (SDW), ECF No. 146 at ¶19 (D.N.J. Dec. 8, 2010) (PSLRA awards to co-lead plaintiffs of $29,370, $29,205, $30,000, and $25,245 respectively, for a combined total of $113,820) (Ex. 27); *Xcel Energy*, 364 F. Supp. 2d at 1000 ($100,000 collectively awarded to lead plaintiff group); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500).

Dated: February 20, 2025

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kara M. Wolke*
Robert V. Prongay (*pro hac vice*)
Kara M. Wolke (*pro hac vice*)
Joseph D. Cohen (*pro hac vice*)
Jason L. Krajcer (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
Raymond D. Sulentic (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
         kwolke@glancylaw.com
         jcohen@glancylaw.com
         jkrajcer@glancylaw.com
         mwright@glancylaw.com
         rsulentic@glancylaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

Jeremy A. Lieberman
Jonathan D. Park
**POMERANTZ LLP**
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Email:  jalieberman@pomlaw.com
         jpark@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
         pdahlstrom@pomlaw.com

Peretz Bronstein
**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email:  peretz@bgandg.com

26

Frank R. Cruz
**THE LAW OFFICES OF FRANK R. CRUZ**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email:  info@frankcruzlaw.com

Lesley Portnoy
**THE PORTNOY LAW FIRM**
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
Email:  lesley@portnoylaw.com

*Additional Counsel*

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.



/s/ Kara M. Wolke
Kara M. Wolke

28