# EXHIBIT 7



# CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

# Securities Class Action Settlements

2023 Review and Analysis

# Analysis of Settlement Characteristics

## GAAP Violations

This analysis examines allegations of GAAP violations in settlements of securities class actions involving Rule 10b-5 claims, including two sub-categories of GAAP violations—financial statement restatements and accounting irregularities.[10] For further details regarding settlements of accounting cases, see Cornerstone Research's annual report on *Accounting Class Action Filings and Settlements*.[11]

- The percentage of settled cases in 2023 alleging GAAP violations (37%) remained well below the prior nine-year average (49%).

- Contributing to the low number of GAAP cases settled in 2023 were continued low levels of cases involving financial statement restatements and accounting irregularities. In particular, 14% of settled cases in 2023 involved a restatement of financial statements, compared to 22% for the prior nine years. Only 1% of settled cases in 2023 involved accounting irregularities.

- Auditor codefendants were involved in only 2% of settled cases, consistent with the past few years but substantially lower than the average from 2014 to 2022.

*In 2023, the median settlement as a percentage of "simplified tiered damages" for cases with alleged GAAP violations increased nearly 25% from 2022.*

Figure 8: Median Settlement as a Percentage of "Simplified Tiered Damages" and Allegations of GAAP Violations 2014–2023



Note: "N" refers to the number of cases. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

Analysis of Settlement Characteristics (continued)

## Corresponding SEC Actions

- The percentage of settled cases in 2023 involving a corresponding SEC action was 12%. This represents a slight rebound from 2021 and 2022, when this percentage was less than 10%, but is still well below the prior nine-year average of 19%.

*Over the past 10 years, nearly 75% of settled cases involving SEC actions also involved a restatement of financial statements or alleged GAAP violations.*

- Historically, cases with a corresponding SEC action have typically been associated with substantially higher settlement amounts.[14] However, this pattern did not hold in 2023 when, for the third time in the past 10 years, the median settlement amount for cases with a corresponding SEC action was less than that for cases without such an action.

- Among 2023 settled cases that involved a corresponding SEC action, 70% also had an institutional investor as a lead plaintiff, up from 33% in 2022.

Figure 10: Frequency of SEC Actions
2014–2023



■ Settlements without a Corresponding SEC Action

■ Settlements with a Corresponding SEC Action

# Endnotes

1   Reported dollar figures and corresponding comparisons are adjusted for inflation; 2023 dollar equivalent figures are presented in this report.

2   "Simplified tiered damages" are calculated for cases that settled in 2006 or later, following the U.S. Supreme Court's 2005 landmark decision in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336. "Simplified tiered damages" is based on the stock-price declines associated with the alleged corrective disclosure dates that are described in the settlement plan of allocation.

3   Comparison to "all-time" refers to the inception of Cornerstone Research's database of post–Reform Act settlements beginning in 1996.

4   The "simplified tiered damages" approach used for purposes of this settlement research does not examine the mix of information associated with the specific dates listed in the plan of allocation, but simply applies the stock price movements on those dates to an estimate of the "true value" of the stock during the alleged class period (or "value line"). This proxy for damages utilizes an estimate of the number of shares damaged based on reported trading volume and the number of shares outstanding. Specifically, reported trading volume is adjusted using volume reduction assumptions based on the exchange on which the issuer defendant's common stock is listed. No adjustments are made to the underlying float for institutional holdings, insider trades, or short-selling activity during the alleged class period. Because of these and other simplifying assumptions, the damages measures used in settlement benchmarking may differ substantially from damages estimates developed in conjunction with case-specific economic analysis.

5   Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Estimating Damages in Settlement Outcome Modeling*, Cornerstone Research (2017).

6   MDL is the dollar-value change in the defendant issuer's market capitalization from its class period peak to the first trading day without inflation.

7   Catherine J. Galley, Nicholas D. Yavorsky, Filipe Lacerda, and Chady Gemayel, *Approved Claims Rates in Securities Class Actions: Evidence from 2015–2018 Rule 10b-5 Settlements*, Cornerstone Research (2020). Data on "plaintiff-estimated damages" is made available to Cornerstone Research through collaboration with Stanford Securities Litigation Analytics (SSLA). SSLA tracks and collects data on private shareholder securities litigation and public enforcements brought by the SEC and the U.S. Department of Justice (DOJ). The SSLA dataset includes all traditional class actions, SEC actions, and DOJ criminal actions filed since 2000. Available on a subscription basis at https://sla.law.stanford.edu/.

8   The statutory purchase price is the lesser of the security offering price or the security purchase price. Prior to the first complaint filing date, the statutory sales price is the price at which the security was sold. After the first complaint filing date, the statutory sales price is the greater of the security sales price or the "value" of the security on the first complaint filing date. For purposes of "simplified statutory damages," the "value" of the security on the first complaint filing date is assumed to be the security's closing price on this date. Similar to "simplified tiered damages," the estimation of "simplified statutory damages" makes no adjustments to the underlying float for institutional holdings, insider trades, or short-selling activity.

9   As noted in prior reports, the March 2018 U.S. Supreme Court decision in *Cyan Inc. v. Beaver County Employees Retirement Fund* (*Cyan*) held that '33 Act claim securities class actions could be brought in state court. While '33 Act claim cases had often been brought in state courts before *Cyan*, filing rates in state courts increased substantially following this ruling. This trend reversed, however, following the March 2020 Delaware Supreme Court decision in *Salzberg v. Sciabacucchi* upholding the validity of federal forum-selection provisions in corporate charters. See, for example, *Securities Class Action Filings—2021 Year in Review*, Cornerstone Research (2022).

10  The two sub-categories of accounting issues analyzed in Figure 8 of this report are (1) restatements—cases involving a restatement (or announcement of a restatement) of financial statements, and (2) accounting irregularities.

11  *Accounting Class Action Filings and Settlements—2023 Review and Analysis*, Cornerstone Research, forthcoming in spring 2024.

12  To be considered an accompanying (or parallel) derivative action, the derivative action must have underlying allegations that are similar or related to the underlying allegations of the securities class action and either be active or settling at the same time as the securities class action.

13  *Parallel Derivative Action Settlement Outcomes*, Cornerstone Research (2022).

14  As noted in prior reports, it could be that the merits in such cases are stronger, or simply that the presence of a corresponding SEC action provides plaintiffs with increased leverage when negotiating a settlement. For purposes of this research, an SEC action is evidenced by the presence of a litigation release or an administrative proceeding posted on www.sec.gov involving the issuer defendant or other named defendants with allegations similar to those in the underlying class action complaint.

15  See, for example, *Securities Class Action Settlements—2006 Review and Analysis*, Cornerstone Research (2007); Michael A. Perino, "Have Institutional Fiduciaries Improved Securities Class Actions? A Review of the Empirical Literature on the PSLRA's Lead Plaintiff Provision," St. John's Legal Studies Research Paper No. 12-0021 (2013).

16  Although Robbins Geller is associated with a longer duration to settlement, its presence as lead or co-lead plaintiff counsel is not associated with significantly higher settlements as a percentage of "simplified tiered damages."

17  Available on a subscription basis. For further details see https://www.issgovernance.com/securities-class-action-services/. Bullet updated in July 2024 to include additional detail.

18  Movements of partial settlements between years can cause differences in amounts reported for prior years from those presented in earlier reports.

19  This categorization is based on the timing of the settlement hearing date. If a new partial settlement equals or exceeds 50% of the then-current settlement fund amount, the entirety of the settlement amount is re-categorized to reflect the settlement hearing date of the most recent partial settlement. If a subsequent partial settlement is less than 50% of the then-current total, the partial settlement is added to the total settlement amount and the settlement hearing date is left unchanged.

# About the Authors

## Laarni T. Bulan

Ph.D., Columbia University; M.Phil., Columbia University; B.S., University of the Philippines

Laarni Bulan is a principal in Cornerstone Research's Boston office, where she specializes in finance. Her work has focused on securities and other complex litigation addressing class certification, damages, and loss causation issues; mergers and acquisitions (M&A) and firm valuation; and corporate governance, executive compensation, and risk management issues. She has also consulted on cases related to insider trading, market manipulation and trading behavior, financial institutions and the credit crisis, derivatives, foreign exchange, and securities clearing and settlement.

Dr. Bulan has published notable academic articles in peer-reviewed journals. Her research covers topics in dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan had a joint appointment at Brandeis University as an assistant professor of finance in its International Business School and in the economics department.

## Laura E. Simmons

Ph.D., University of North Carolina at Chapel Hill; M.B.A., University of Houston; B.B.A., University of Texas at Austin

Laura Simmons is a senior advisor with Cornerstone Research. She has more than 25 years of experience in economic consulting. Dr. Simmons has focused on damages and liability issues in securities class actions, as well as litigation involving the Employee Retirement Income Security Act (ERISA). She has also managed cases involving financial accounting, valuation, and corporate governance issues. She has served as a testifying expert in litigation involving accounting analyses, securities case damages, ERISA matters, and research on securities lawsuits.

Dr. Simmons's research on pre– and post–Reform Act securities litigation settlements has been published in a number of reports and is frequently cited in the public press and legal journals. She has spoken at various conferences and appeared as a guest on CNBC addressing the topic of securities case settlements. She has also published in academic journals, including research focusing on the intersection of accounting and litigation. Dr. Simmons was previously an accounting faculty member at the Mason School of Business at the College of William & Mary. From 1986 to 1991, she was an accountant with Price Waterhouse.

The authors gratefully acknowledge the research efforts and significant contributions of their colleagues at Cornerstone Research in the writing and preparation of this annual update. The views expressed herein do not necessarily represent the views of Cornerstone Research.

The authors request that you reference Cornerstone Research in any reprint of the information or figures included in this report.

Please direct any questions and requests for additional information to the settlement database administrator at settlementdatabase@cornerstone.com.

## Cornerstone Research

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. Cornerstone Research has earned a reputation for consistently high quality and effectiveness by delivering rigorous, state-of-the-art analysis since 1989. The firm has over 900 staff in nine offices across the United States and Europe.

www.cornerstone.com

© 2024 by Cornerstone Research.
All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.