UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ALIBABA GROUP HOLDING LTD. SECURITIES LITIGATION | Master File No. 1:20-CV-09568-GBD-JW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS DISTRIBUTION ORDER**

**TABLE OF CONTENTS**

I.      BACKGROUND ........................................................................................................ 1

II.     CLAIMS ADMINISTRATION...................................................................................... 3

III.    THE COURT SHOULD REJECT THE DISPUTED CLAIMS.......................................... 5

IV.     LATE BUT OTHERWISE ELIGIBLE CLAIMS ............................................................. 6

V.      DISTRIBUTION OF NET SETTLEMENT FUND ........................................................... 8

VI.     RELEASE OF CLAIMS............................................................................................... 10

VII.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED
        FEES AND EXPENSES................................................................................................ 11

VIII.   RECORDS RETENTION AND DESTRUCTION ............................................................ 12

IX.     CONCLUSION........................................................................................................... 12

## TABLE OF AUTHORITIES

CASES

*Hartman v. Powell*,
2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................ 8

*In re "Agent Orange" Prod. Liab. Litig.*,
689 F. Supp. 1250 (E.D.N.Y. 1988) ........................................................................... 7

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ............................................................. 8

*In re Eletrobras Sec. Litig.*,
467 F.Supp.3d 149 (S.D.N.Y. 2020) ...................................................................... 7, 11

*In re Gypsum Antitrust Cases,*
565 F.2d 1123 (9th Cir. 1977) ....................................................................... 6, 7, 8, 9

*In re Loop Industries, Inc. Sec. Litig.*,
2023 WL 6458976 (S.D.N.Y. Oct. 4, 2023) ............................................................... 9

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
2010 WL 11595033 (S.D.N.Y. Dec. 23, 2010) ..................................................... 11, 12

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001) ..................................................................................... 6, 7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ........................................................... 11

*In re Peloton Interactive, Inc., Sec. Litig.*,
2025 WL 2146059 (E.D.N.Y. July 29, 2025) ............................................................. 6

*In re Peloton Interactive, Inc., Sec. Litig.*,
2025 WL 2147041 (E.D.N.Y. May 21, 2025) ............................................................. 6

*In re Qudian Inc. Sec. Litig.*,
2022 WL 633863 (S.D.N.Y. Mar. 4, 2022) ............................................................... 11

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2025 WL 924928 (C.D. Cal. Mar. 24, 2025) ........................................................ 6, 7, 9

*In re Toyota Motor Corp. Sec. Litig.*,
2014 WL 12586787 (C.D. Cal. Aug. 4, 2014) ............................................................ 7

*Stein v. Eagle Bancorp, Inc.*,
    2022 WL 4245185 (S.D.N.Y. Sept. 15, 2022)............................................................................. 11

*Wilson v. LSB Indus., Inc.*,
    2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020)............................................................................. 11

STATUTES

15 U.S. Code § 78u-4(e) ............................................................................................................. 5

Court-appointed lead plaintiff Salem Gharsalli and additional representative plaintiffs Laura Ciccarello, Dineshchandra Makadia, and Wusheng Hu (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Walter Declaration.  *See* Walter Decl. ¶¶39(a)-(f).

## I.    BACKGROUND

On October 25, 2024, the Parties entered into the Stipulation, the terms of which established a $433,500,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons and entities that purchased or otherwise acquired Alibaba American Depositary Shares (NYSE:BABA), during the period November 13, 2019 through December 23, 2020, inclusive (the "Settlement Class Period").  Excluded from the Settlement Class are: (a) persons and entities who suffered no compensable losses; (b) Defendants; the present and former officers and directors of Alibaba at all relevant times; members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 25, 2024 (the "Stipulation"; ECF No. 136-1), or the concurrently filed Declaration of Adam D. Walter in Support of Plaintiffs' Motion for Class Distribution Order ("Walter Decl." or "Walter Declaration"), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. ("Claims Administrator").

under this subsection (b), has or had a controlling interest at any time; (c) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (d) present and former parents, subsidiaries, assigns, successors, and predecessors of Alibaba; and (e) Defendants' liability insurance carriers.  Also excluded from the Settlement Class are any persons and entities who or which excluded themselves by submitting a request for exclusion that was accepted by the Court.  *See* ECF No. 136-1.

The Court granted preliminary approval of the Settlement on October 28, 2024.  ECF No. 139 (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, a total of 1,089,127 potential Settlement Class Members and nominees were either mailed copies of (a) the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), and (b) the Proof of Claim and Release Form (the "Claim Form"; and together, with the Notice, the "Notice Packet"), or sent an email containing a link to the Notice Packet.  *See* Walter Decl. ¶5.  Moreover, the Claims Administrator published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established a case-specific website dedicated to the Settlement (www.AlibabaClassActionSettlement.com), and set up a toll-free telephone helpline. *See* Walter Decl. ¶3.  The Notice and the Settlement Website provided Settlement Class Members with information about the Settlement, including the deadlines for requesting exclusion, objecting, and filing Claims.  *Id*.  The Settlement Website also provided Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form.  *Id*.

On March 27, 2025, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate.  ECF No. 151.  That same day, the Court entered an order approving the Plan of Allocation, which was explained in the Notice, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund.  ECF No. 150.

Lead Counsel now request that the Court authorize distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, Taxes and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than March 26, 2025.  *See* ECF No. 146-1, Ex. A (Notice).  The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  Walter Decl. ¶¶6-17.

Of the 1,215,685 Claims submitted to and fully processed by the Claims Administrator, 4,304 were paper submissions, and 8,995 were online submissions through the online filing portal on the Settlement Website.  Walter Decl. ¶9.  The remaining 1,202,386 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants.  *Id*. ¶¶9, 13.  Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf

3

the E-Claim Filer is submitting a Claim—rather than providing large volumes of paper documentation. *Id.* ¶13. This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit A to the Walter Declaration. Walter Decl. ¶¶19-21; Ex. A. The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.* ¶20. Of the 13,299 paper and online Claims, the Claims Administrator sent deficiency letters for 8,192 Claims (or approximately 61%). *Id.* ¶¶19-20. If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to each E-Claim Filer with an attached spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected, samples of which are attached as Exhibits B and C to the Walter Declaration respectively. *Id.* ¶¶22-25; Exs. B & C. Of the 1,202,386 Electronic Claims, 887,109 (or approximately 73%) were incomplete or deficient and were filed by a total of 408 E-Claim filers. *Id.* ¶22. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Walter Declaration, after the deficiency process was complete, the Claims Administrator determined that 344,941 Claims are acceptable and should receive a distribution. Walter Decl. ¶¶34-35; 37; Exs. E, F. This number includes 321,164 timely and valid claims, and 23,777 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.* ¶35. The Claims Administrator also determined that 870,744 Claims are not eligible and should be rejected for the following reasons: (i) 521,053 Claims did not result in a Recognized Claim

under the Court-approved Plan of Allocation; (ii) 188,816 Claims had no eligible transactions in Alibaba ADS; (iii) 99,675 Claims were replaced; (iv) 60,090 Claims were withdrawn; (v) 1,103 Claims were duplicates; and (vi) 7 Claims were identified as questionable. *Id.* ¶¶36, 37(c); Ex. G.

## III.    THE COURT SHOULD REJECT THE DISPUTED CLAIMS

Two Claimants (Claim Nos. 750872712 ("Disputed Claimant No. 1") and 750769315 ("Disputed Claimant No. 2")) disagree with A.B. Data's determination of ineligibility and have requested Court review of the rejection of their Claims. *See* Walter Decl., ¶28, Ex. D; *see also* ECF No. 150 (Order Approving Plan of Allocation of Net Settlement Fund). As set forth in the Walter Declaration, Disputed Claimant No. 1 did not hold his Settlement Class Period purchases of Alibaba ADS over the corrective disclosure date and, therefore, did not suffer compensable damages under the Plan of Allocation. *See* Walter Decl., Ex. D; *see also* ECF No. 146-1, Ex. A (Notice) at ¶57 (stating that "a corrective disclosure allegedly removed the artificial inflation from the price of Alibaba ADS on December 23, 2020 (the 'Corrective Disclosure Date')" and providing that "in order to have a Recognized Loss Amount, Alibaba ADS must have been purchased or acquired during the Settlement Class Period and held through the Corrective Disclosure Date."). Accordingly, the Court should reject Claim Number 750872712.

The Court should also reject Claim Number 750769315. The Claimant purchased 44 Alibaba ADS on April 9, 2020 for $198 per share, and 373 Alibaba ADS on March 26, 2020 for $191.7919 per share, and held all 417 Alibaba ADS until the close of trading on March 23, 2021 (the end of the "90-day lookback" provision of the Private Securities Litigation Reform Act of 1995 (15 U.S. Code § 78u-4(e)). Because all the Alibaba ADS were purchased at prices less than the 90-Day Lookback Value of $246.12, there would be no Recognized Loss for these shares under the Plan of Allocation. *See* ECF No. 146-1, Ex. A (Notice) at ¶62(c)(ii); Walter Decl., Ex. D; *see*

5

*also In re Peloton Interactive, Inc., Sec. Litig.*, 2025 WL 2147041, at \*3 (E.D.N.Y. May 21, 2025) (claims ineligible for distribution where "[t]he price at which four of these claimants purchased their shares of Peloton stock was less than the average closing price for stock during the 90-day lookback period, *i.e.*, they suffered no compensable loss from Defendants' alleged conduct and thus have no Recognized Loss."), *R&R adopted by In re Peloton Interactive, Inc., Sec. Litig.*, 2025 WL 2146059 (E.D.N.Y. July 29, 2025).

The Court should, therefore, affirm A.B. Data's determination that the Disputed Claims should be rejected.  *See* Walter Decl., ¶28; Ex. D.

## IV.     LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the March 26, 2025 claim filing deadline.  *Id*. ¶¶29, 35.  "There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place."  *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at \*3 (C.D. Cal. Mar. 24, 2025) (citing  *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, a cutoff date is essential and at some point the matter must be terminated.")); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001).[2]   Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of January 21, 2026—approximately nine (9) months after the Court-imposed March 26, 2025 deadline.  Walter Decl. ¶¶29, 35, 39(e).

---

[2] Unless otherwise indicated, all internal citations and quotations omitted.

Of the 1,215,685 Claims submitted, 64,802 Claims were received or postmarked after the initial March 26, 2025 deadline, but before the Claims Administrator's imposed cut-off of January 21, 2026. Walter Decl. ¶26. Of these 64,802 Claims, 23,777 are late but otherwise eligible in whole or in part ("Late But Otherwise Eligible Claims"). *Id.* ¶¶29, 35, 37(b); Ex. F. These 23,777 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Eletrobras Sec. Litig.*, 467 F.Supp.3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *In re Stable Road*, 2025 WL 924928, at *3 (accepting "Late but Otherwise Eligible Claims"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (same); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Walter Decl. ¶¶29, 35, 37(b); Ex. F.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after January 21, 2026, be included in the distribution. "Drawing a line is essential to achieve certainty and finality in such a large class

action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V.    DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more (the "Initial Distribution").  *See* Walter Decl. ¶¶39(a)(i)-(vi).  Based on the substantial experience of Lead Counsel in similar distributions, it is anticipated that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly.  To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." *Id*. ¶39(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution.  However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so.  Walter Decl. ¶39(b).  During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized

8

Claimants who participated in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*. ¶39(c).

Thereafter, if sufficient funds remain to warrant the processing of Claims received after January 21, 2026, those claims will be processed, as well as any earlier-received Claims for which an adjustment was received after January 21, 2026, that resulted in an increased Recognized Claim, and will be paid in accordance with subparagraph 39(e) of the Walter Declaration. *Id*. ¶39(d)-(e). More specifically, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks. *Id*. ¶39(e).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to "the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy." *In re Stable Road*, 2025 WL 924928, at \*4; *In re Loop Industries, Inc. Sec. Litig.*, 2023 WL 6458976, at \*2 (S.D.N.Y. Oct. 4, 2023) (same); *see also* Walter Decl., ¶39(d); Declaration of Lauren Barnes of the Public Justice Foundation ¶¶11-13 (listing securities cases in which the Public Justice Foundation received court approval as the *cy*

9

*pres* beneficiary). The proposed Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## VI.    RELEASE OF CLAIMS

To permit the full and final distribution of the Net Settlement Fund, it is necessary to bar an further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in reviewing, verifying, calculating, tabulating, or otherwise processing the submitted Claims, or in administering or handling the taxation of the Settlement Fund or Net Settlement Fund, shall be released and discharged from any and all claims arising from such involvement. Accordingly, Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any

10

other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *In re Qudian Inc. Sec. Litig.*, 2022 WL 633863, at *2 (S.D.N.Y. Mar. 4, 2022) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 4245185, at *2 (S.D.N.Y. Sept. 15, 2022) (same); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (same); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (same); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033, at *2 (S.D.N.Y. Dec. 23, 2010) (same).

## VII.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the administration for this project up to the Initial Distribution is $1,689,324.09. Walter Decl. ¶38.  To date, the Claims Administrator has received payment of $1,681,604.75. *Id.* The estimate to conduct the Initial Distribution is $92,133.90. *Id.*; Ex. H.  Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $99,853.24, consisting of $7,719.34 for fees and expenses already accrued, and $92,133.90 in anticipation of the work to be performed during the Initial Distribution.[3] *Id.*

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## VIII.    RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that: (i) no earlier than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two (2) years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) no earlier than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.* ¶39(f).

## IX.    CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Motion be granted.

Dated: April 6, 2026

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Joseph D. Cohen*
Robert V. Prongay (*pro hac vice*)
Kara M. Wolke (*pro hac vice*)
Joseph D. Cohen (*pro hac vice*)
Jason L. Krajcer (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
        kwolke@glancylaw.com
        jcohen@glancylaw.com
        jkrajcer@glancylaw.com
        mwright@glancylaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

Jeremy A. Lieberman
Jonathan D. Park
**POMERANTZ LLP**
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Email:  jalieberman@pomlaw.com
        jpark@pomlaw.com

12

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Email: pdahlstrom@pomlaw.com

Peretz Bronstein
**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email:  peretz@bgandg.com

Frank R. Cruz
**THE LAW OFFICES OF FRANK R. CRUZ**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email:  info@frankcruzlaw.com

Lesley Portnoy
**THE PORTNOY LAW FIRM**
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
Email:  lesley@portnoylaw.com

*Additional Counsel*

13

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs certifies that this brief contains 3,587 words, which complies with the word limit of L.R. 7.1(c).

*/s/ Joseph D. Cohen*
Joseph D. Cohen

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 6th day of April, 2026, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Joseph D. Cohen*
Joseph D. Cohen
